Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Carol Price*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL PRICE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>CONVERSE, INC., a Massachusetts company; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-08091-FLA-E<br><br>**PLAINTIFF CAROL PRICE'S OPPOSITION TO DEFENDANT CONVERSE, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date: January 31, 2025<br>Time: 1:30 pm<br>Courtroom: 6B |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .................... 1

I. INTRODUCTION .................... 1

II. RELEVANT FACTUAL BACKGROUND .................... 2

III. ARGUMENT .................... 4

A. Plaintiff Has Article III Standing .................... 4

1. Defendant violated Plaintiff's right of privacy – a constitutionally recognized injury .................... 4

2. Defendant's Article III Standing Arguments About "Contact Information" Have No Basis in the FAC .................... 5

3. Defendant's Cited Cases Are All Factually Distinguishable .................... 8

B. The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet .................... 9

1. Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute .................... 9

2. Defendant's Arguments Lack Legal Support .................... 12

C. There Are No Extraterritoriality Concerns .................... 16

IV. CONCLUSION .................... 18

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE .................... 19

CERTIFICATE OF SERVICE .................... 20

# TABLE OF AUTHORITIES

Cases

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ........ 15

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-CV-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023). ........ 9

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d ........ 11

*Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024) ........ 11

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 5, 7

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) ........ 7

*Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ........ 11

*Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024) ........ 11

*Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super., Los Angeles County Mar. 13, 2024) ........ 16

*Lightoller v. Jetblue Airways Corp*. No. 23-cv-361-H, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 8

*Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627 (2018) ........ 12, 13

*Lungren v. Deukmejian*, 45 Cal. 3d 727 (1988) ........ 11

*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 1, 2, 11, 13, 16

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ........ 5

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ........ 17

*Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024) .......... 11

*Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024) .......... 1

*Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 1, 11, 16

*TikTok, Inc. v. Garland* (24-656) .......... 6

*Vita v. New England Baptist Hospital*, 494 Mass. 824 (Mass., 2024) .......... 15

Statutes

Cal. Civ. Code § 1798.175 .......... 13

Cal. Penal Code § 629.51 .......... 10

Cal. Penal Code § 630 .......... 3

Cal. Penal Code § 638.50(a) .......... 2

Cal. Penal Code § 638.50(c) .......... 2, 10

Cal. Pen. Code, § 638.51 .......... 2, 3, 9, 10, 12, 13, 14, 15, 16

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other Defendants before it, seek the Court's assistance to bail them out of their privacy collection practices in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same). However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of a prohibited "Trap and Trace" device in California Penal Code § 638.51 because of the way it is designed to collect information from Californians without their consent. But as Judge Klausner explained in *C2*, "Defendant argues that § 638.52 indicates that a pen register or trap and trace device must be a physical device attached to a telephone line. . . . The Court disagrees." *C2*, 2024 WL 3561367, at *2. And Judge Klausner affirmed that conclusion again earlier this very week. *Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024).

Defendant relies on a series of specious and increasingly fanciful legal theories to avoid liability but tellingly never even cites to the applicable statutory definition of "electronic communication" when it argues that the term does not extend to the internet. *See* Penal Code §§ 638.50(a), (c) (defining trap and trace devices and incorporating the definition for an "electronic communication" found in Penal Code § 629.51(a)(2)); *Mirmalek*, 2024 WL 5102709, at *3 (noting the "expansive" definition used by the California Legislature). Defendant instead chooses to accuse Plaintiff of being a "serial" litigant, repeatedly, even though this accusation clearly has no bearing on Defendant's actual legal arguments. Mot. at 11, 13, 13 n.1, 18, 19. It may be because, as something of a serial defendant itself when it comes to privacy violations, Defendant is offended that someone seeks to hold it accountable for violating the privacy of potentially millions of Californians and in fact rejects the idea that anyone can hold it accountable. Defendant argues that the federal courts cannot hold Defendant accountable for its conduct because the injuries it caused by invading Plaintiff's privacy with an illegal trap and trace device are simply not cognizable under Article III. Similarly, the State of California cannot hold it accountable for violating California law because Defendant was in another state when it used the internet to violate invade the privacy of Plaintiff and potentially millions of other people in California. Fortunately, Defendant is not above the law. Privacy-based injuries like those alleged in the FAC have long been cognizable under Article III, and there are no extraterritoriality concerns with holding Defendant accountable under

California law for communicating with and violating the privacy of people within California.

## II. RELEVANT FACTUAL BACKGROUND

Defendant is a well-known footwear brand that operates a website at converse.com. (“Website”). FAC ¶ 8. On that website Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff, without their consent. *Id.* ¶¶ 8, 13-18. This was because the code acted as an illegal “Trap and Trace” device, in violation of California Penal Code § 638.51 (California’s “Trap and Trace Law), part of the California Invasion of Privacy Act, § 630 *et seq*. Defendant’s purpose in violating the privacy rights of Plaintiff and countless others was because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data. *E.g.*, FAC ¶¶ 9-10, 12, 22. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or “fingerprinting.” *Id.* ¶ 9. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. And in exchange for contributing to TikTok’s massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors’ privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted

marketing efforts. *E.g.*, FAC ¶¶ 9, 16, 20-22. If people like Plaintiff actually wanted Defendant's marketing and advertising to be more aggressive, personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. FAC ¶ 15.

## III. ARGUMENT

### A. Plaintiff Has Article III Standing

#### 1. Defendant Violated Plaintiff's Right Of Privacy – A Constitutionally Recognized Injury.

Plaintiff suffered a constitutionally cognizable injury when Defendant violated the right to privacy. As *C2 Educational Systems* explained: "there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff visited the Website after the TikTok Software was installed. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries." *C2*, 2024 WL

3561367, at *2-*6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*")).

Indeed, violations of this right fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or her person.'" *In re Facebook*, 956 F.3d at 598-99. There, Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history," and the Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599.

### 2. <u>Defendant's Article III Standing Arguments About "Contact Information" Have No Basis In the FAC</u>

Defendant's entire argument regarding Article III standing is based on its demonstrably false assertions that the only injury alleged is that Defendant identified Plaintiff's "contact information," which is insufficient to establish an Article III injury. Mot. at 18 ("Plaintiff is a serial litigant who only alleges that the software identifies basic contact information (like phone numbers or emails))."; *see also id.* at 11 ("identification of contact information, which is all Plaintiff alleges may occur through the software"); *id.* at 31 ("even if Plaintiff could identify evidence that the software collected her contact information (she cannot) that does not create a sufficiently concrete injury to satisfy Article

III standing."); *id.* at 16 ("she omits any allegation that her own information was ever identified by the software"). Defendant provides no citation to any allegations in the FAC regarding "contact information" and no such allegations exist. Indeed, the word "contact" only ever appears in the FAC in the context of personal jurisdiction. FAC ¶ 2 ("if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.).

What the FAC does allege is that "the TikTok Software gathers data including device and browser information, geographic information, and referral tracking." FAC ¶ 10. And this begins from the very first moment a visitor arrives on the Website and continues whenever a user clicks on a new page on the Website. *Id.* ¶¶ 10-12. The FAC also alleges Defendant went far beyond merely collecting "contact information," because Defendant used this information to fingerprint the data and deanonymize Plaintiff by matching it "with existing data TikTok has acquired and accumulated about hundreds of millions of Americans," presumably because Defendant found more profit in invading Plaintiff's privacy playing by the rules. *Id.* ¶ 9. Moreover, people like Plaintiff had no idea any of their data was potentially being sent to a foreign government. *Id.* ¶ 14. Indeed, this exact same concern was raised during oral arguments in the Supreme Court. "Just on the data collection, that seems like a huge concern for the future of the country," said Justice Brett Kavanaugh. He suggested that TikTok's vast trove of information on Americans could be used "to develop spies, to turn people, to blackmail people, people who a generation from now will be working in the FBI or the CIA or in the State Department." Transcript of Oral Argument, *TikTok, Inc. v. Garland* (24-656). Oyez. Retrieved at

https://www.oyez.org/cases/2024/24-656. Defendant makes no meaningful arguments on Article III standing regarding the FAC's central allegations about the scope of information collected and used for fingerprinting, de-anonymization, or even potential collaboration with a foreign government. FAC ¶ 14.

The instant action is remarkably similar to the allegations the Ninth Circuit found sufficient *In re Facebook*, where it also noted it would be simply "untenable" to think that "federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data." *In re Facebook*. (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316, 325 (3rd Cir. 2019)). And yet the inescapable conclusion of Defendant's Article III standing arguments is that federal courts are constitutionally powerless to enforce privacy laws regarding such "content information." Defendant later argues that CIPA's prohibition on trap and trace devices only applies to telephones and not the internet, but even adopting that interpretation Defendant would still conclude there could still never be a cognizable Article III injury. Imagine Defendant's hypothetical and archetypal trap and trace scenario involving a third-party installing a device on a telephone line to identify every single number someone dials for an extended period of time. In Defendant's reading of both state and federal laws this, and only this, is what trap and trace laws were designed to prohibit, but even then that would still just be a list of "contact information" which civil suits and federal courts are constitutionally powerless to stop Defendant from collecting, using, or disseminating. Apparently both California and Congress were just wrong when they concluded that such

behavior caused real and constitutionally cognizable injuries, at least in civil cases. The takeaway Defendant would leave is with is that there is no constitutional impediment to imprisoning someone who installed an illegal trap and trace device, but Article III simply will not tolerate the actual victims attempting to seek justice through a civil suit.

### 3. <u>Defendant's Cited Cases Are All Factually Distinguishable</u>

None of the cases Defendant cites help its argument. In *Lightoller v. Jetblue Airways Corp*. No. 23-cv-361-H, 2023 WL 3963823 (S.D. Cal. June 12, 2023), the defendant recorded things like mouse movements and keystrokes, but the plaintiff lacked allegations connecting those words and clicks with any category or type of information that was about her personally. *Id*. at *4. The only category of personal information she alleged was intercepted and recorded was the defendant's own information on flight prices, and "[f]light pricing information is not personal information." *Id*. That is plainly not the case here because Plaintiff has identified multiple different pieces of personal information that Defendant recorded during an anonymous visit that Defendant used to personally identify and unmask Plaintiff in order to turn Plaintiff's anonymity into Defendant's profit, all in violation of California law.

Similarly, the plaintiff in *Byars v. Sterling Jewelers, Inc*. alleged that her chat communications with the defendant through the chat feature on its website were illegally intercepted by a third-party, but the defendant made a factual challenge to the court's subject matter jurisdiction based on its unrebutted factual showing that "there is no evidence that Plaintiff engaged in any communication with Defendant's chat feature". No.

5:22-CV-01456-SB-SP, 2023 WL 2996686, at *2 (C.D. Cal. Apr. 5, 2023). No such factual challenge has been made here. Plaintiff has identified multiple categories of anonymous personal information that Defendant disclosed to TikTok. FAC ¶¶ 10, 12-18, 20.

**B. <u>The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet</u>**

It is very clear from the relevant terms and their statutory definitions that CIPA's prohibition on trap and trace devices in § 638.51 applies to the internet. The analysis is straightforward, the relevant terms are clearly defined and lack any ambiguity, and the statutory language speaks directly to the issue and indisputably shows that § 638.51 is not limited to telephone communications. Every judge who has addressed the issue has found it to be clear and straightforward, but Defendant seeks to make the issue appear complicated and confusing because it does not like that result. The analysis below will start with the statutory text and show why it is clear that § 638.51 applies to the internet and then explain why Defendant's scattershot arguments to the contrary are simply wrong, ignore dispositive provisions, or can otherwise be rejected out of hand.

**1. <u>Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute.</u>**

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.

> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> (1) To operate, maintain, and test a wire or electronic communication service.
>
> * * *
>
> (5) If the consent of the user of that service has been obtained.

Thus, to state a claim under § 638.51, a plaintiff must allege, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id*. § 638.51. California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c). Section 638.50(a) further specifies that the terms "wire communication" and "electronic communication" "have the meanings set forth in subdivision (a) of Section 629.51." The definition for "electronic communication" in § 629.51(a)(2) states that, subject to certain exceptions not relevant here, electronic communication means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Applying this definition for electronic communication to the definition of a trap and trace device in § 638.50(c) clearly shows that trap and trace devices can encompass "a wire, radio, electromagnetic, photoelectric, or photo-optical system." Defendant's argument simply has no basis in any of the above

statutory terms, and courts have repeatedly and universally rejected it. Judge Breyer in the Northern District recently explained:

> As the *Shah* and *Greenley* courts held, "the Court cannot ignore the expansive language in the California Legislature's chosen definition of pen register," which is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process").

*Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050 and *Shah*, 2024 WL 4539577, at *1) (cleaned up). "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc*., 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . ."). Moreover, numerous state court judges have also reached the same conclusion as the numerous federal court judges discussed above and their opinions have been attached to Plaintiff's accompanying Request for Judicial Notice. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc*., LASC Case No. 24STCV12891 (July 31, 2024); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 (September 17, 2024); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024).

In short, Penal Code § 638.51 unambiguously applies to internet communications and the FAC alleges the two elements necessary to establish a violation of Penal Code §

638.51: (i) Defendant installed a prohibited device (pen register or trap and trace); (ii) without a court order. *E.g.*, *Greenley v. Kochava, Inc.* (S.D. Cal. July 2023) 684 F. Supp. 3d 1024, 1050-51. Plaintiff has therefore properly stated a claim under § 638.51.

### 2. Defendant's Arguments Lack Legal Support

Notably, Defendant spends very little space addressing the actual statutory sections discussed above that every court has relied on and found central to their decisions. Defendant instead raises a hodgepodge of largely unrelated cases and arguments, all of which are either entirely irrelevant, have already been roundly rejected by the courts, or simply ignore the relevant authorities.

Defendant argues that CIPA does not apply to the internet because of the subsequently enacted California Consumer Privacy Act ("CCPA"). Obviously the CCPA did not amend CIPA and has no relevance on the plain meaning of CIPA's terms, but Defendant nonetheless argues that because the CCPA now exists interpreting CIPA's prohibition on trap and trace devices to apply to the internet would "nullify" the CCPA. Mot. at. 20. In essence Defendant is identifying reasons why it believes that the application of § 638.51 to the internet was repealed by implication when the CCPA was passed. But repeals by implication are disfavored when interpreting California statutes. *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) ("We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.") (citation omitted). In order to invoke the doctrine of implied repeal there must be no rational basis for harmonizing the two

statutes, and the statutes must "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Id.* (cleaned up). None of that applies here. Moreover, Defendant's argument is expressly foreclosed by the plain text of the CCPA. Defendant plainly ignores the provision of the CCPA stating that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. The CCPA also explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.* As one court noted, the CCPA and CIPA are complementary, but even if they were not and the CCPA controlled then this provision of the CCPA itself requires that CIPA be applied in this case because it would afford greater privacy protections. *Mirmalek*, 2024 WL 5102709, at *5.

Defendant next argues that the CIPA's provisions for court orders authorizing law enforcement authorizing trap and trace devices in §§ 638.52, and 638.53 requires interpreting § 638.51 as limited to telephones. Mot. at 21-22. Under § 638.51(d)(3) a court order authorizing a trap and trace device must specify "the number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached." But Defendant is plainly wrong when it asserts that this sentence is somehow a "clear indication of the Legislature's view" that the trap and trace prohibitions are limited to telephone lines and simply do not apply to the internet. Mot. at 21. Even by its own terms it's unclear how Defendant concluded that this provision could not be harmonized

and read as also applying to the internet and simply allowing a court order that does not specify a telephone line when one does not exist.

Defendant however goes the opposite way and instead concludes that § 638.51(d)(3) creates "absurd result" because it must mean that "law enforcement could never obtain the requisite court order permitting them to install and use a trap and trace device on a website to track Internet activity as part of a criminal investigation." Mot. at 22. And while is this an unfounded and difficult reading of the statute, there is nothing inherently absurd about that conclusion, if it were correct. Defendant may disagree with it as a matter of policy, but Defendant's policy disagreement with a statute does not make it absurd. A far more reasonable conclusion than absurdity could instead be that it was an intentional decision by the Legislature to limit the scope of trap and trace devices that law enforcement could use. Another reasonable conclusion could be that the Legislature determined that law enforcement doesn't need to be using trap and trace devices for internet communications. Perhaps the Legislature believed that law enforcement can already get much this information directly from other entities like internet service-providers without even needing to use a trap and trace device. Perhaps law enforcement official never even wanted trap and trace devices for internet communications because they provide minimal investigative value, unlike when used with telephone communications. Perhaps the most reasonable conclusion could be that such orders cannot be authorized under CIPA because entities like LAPD have no business running massive social media platforms affiliated with foreign governments that collect vast amounts of data on millions of Americans in order

to fingerprint and de-anonymize their web traffic, all so that LAPD can know what websites they are visiting.

Defendant also makes an argument based on the federal trap and trace law that is equally incorrect. Mot. at 22 (citing to A*pplication of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995)). As explained in *C2*, that case and Defendant's argument involve a federal law which is at best persuasive and the few lines from the opinion quoted by Defendant do little to even establish that. *C2*, 2024 WL 3561367, at *2. Most significantly, and perhaps reflective of Defendant's legal analyses throughout its Motion, the language from the case cited above that Defendant relies on is from the federal statute referencing the physical attachment of pen registers, not trap and trace devices, and appears to have been repealed by the Patriot Act over two decades ago. Pub.L. 107-56, Title II, § 216(c)(1) to (4), Oct. 26, 2001, 115 Stat. 290 (amending 18 U.S.C. § 3127).

Defendant also cites to apparently irrelevant decisions. Defendant quotes from "a recent controlling decision" by the Massachusetts Supreme Judicial Court in *Vita v. New England Baptist Hospital*, 494 Mass. 824, 826 (Mass., 2024). Mot. at 19. But this decision was interpreting Massachusetts's version of a wiretap act and so cannot control on any issue raised in this case. Defendant also incorrectly argues that *Licea v. Hickory Farms LLC*, rejected the application of the Penal Code § 638.51 to the internet by misleadingly quoting the opinion and simply ignoring the court's own explanation in the immediately preceding the sentence. Mot. at 19. When read in context the language Defendant quoted

from the court about rejecting the plaintiff's "broad based" and potentially disruptive interpretation concerned the plaintiff's argument that collecting only an IP was sufficient to plead the existence a trap and trace device and had nothing to do with the application of Penal Code § 638.51 to the internet. *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super., Los Angeles County Mar. 13, 2024). The court even explained that one of the reasons it found "validity in the argument that nothing in the complaint establishes an IP address as equivalent to the 'unique fingerprinting,'" was specifically because an IP address alone could not provide unique information more often associated with law enforcement warrants. *Id.* at 5. This holding is entirely irrelevant because the FAC contains no allegations specifically involving or limited to IP addresse and the basis for Plaintiff's fingerprinting and de-anonymization allegations are that "the TikTok Software gathers data including device and browser information, geographic information, and referral tracking." FAC ¶ 10. This information is far more invasive and personal than just an IP address and explains why every federal court confronted with allegations similar to those in the FAC has found them sufficient on at the motion to dismiss stage. *E.g.*, *C2*, 2024 WL 3561367, at *2; *Mirmalek*, 2024 WL 5102709, at *3; *Shah*, 2024 WL 4539577.

**C. <u>There Are No Extraterritoriality Concerns</u>**

Defendant's final arguments involving extraterritoriality similarly lack merit. As an initial matter it is based entirely on Defendant's counsel's unsworn factual representations in its brief about the locations of its servers, none of which is in the complaint. Mot. at 28 ("A website is 'located' where the servers that host it are located, and the servers that host

Converse's website are not located in California."). It is also based on the unsupported assertion that for extraterritoriality purpose a website is "located" wherever its servers are located. Defendant argues that "[f]or purposes of determining where a website itself is located, courts thus look to where the servers hosting the website are physically located" and cites to the Ninth Circuit's decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, but Defendant cites to a page in the background section of the opinion and nothing on that page supports Defendant's argument. Mot. at 29 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007)). The suggestion that Defendant can evade all liability from the laws of a state in which it conducts business and causes injuries to consumers by invading their privacy merely by storing some code on a server in a different state is ludicrous, particularly because even if Defendant's assertions about server locations are true, those servers were actively communicating with Plaintiff in California.

Defendant's suggestion that Plaintiff was obligated to plead the location of Defendant's servers to avoid dismissal due to "territorial silence" is similarly absurd and has no basis in the Federal Rules of Civil Procedure. Moreover, there is no way for Plaintiff to obtain this information except through discovery, and such a requirement would make it virtually impossible to file lawsuits over internet transactions. Mot. at 29. Defendant improperly seeks to conflate extraterritoriality, choice of law, and personal jurisdiction to justify its conclusion that it can only be held accountable for its online activities in the jurisdiction where its servers are physically located. Notably, at this stage there are no facts helpful to Defendant regarding extraterritoriality, and the only relevant location known to

Plaintiff is their own location during the relevant events which is already clearly alleged. FAC ¶ 4. Defendant is therefore not seeking dismissal because the cognizable facts before the Court establish there would be any extraterritorial application of California law, or that such an application here would be legally invalid. Defendant instead seeks dismissal because of Plaintiff's purported "territorial silence," that is, Plaintiff's failure to allege facts *disproving* extraterritoriality. Finally, Defendant's complaints about the challenges applying CIPA to its conduct would create for law enforcement are both legally baseless and irrelevant to Plaintiff's claim. At this stage and based on the allegations before the Court Defendant's extraterritoriality concerns cannot be addressed and do not give Defendant such an absolute immunity from civil liability.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: January 11, 2025 **TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Carol Price

# LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Carol Price, certifies that this brief contains 4,775 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 11, 2025

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Carol Price

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certified that I served the foregoing document on all parties of record by CM/ECF.

DATED: January 11, 2025 **TAULER SMITH LLP**

By: *<u>/s/ Robert Tauler</u>*
Robert Tauler, Esq.
Attorneys for Plaintiff
Carol Price