Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270
*Attorneys for Plaintiff*
*Carol Price*

Livia M. Kiser (SBN 285411)
lkiser@kslaw.com
Michael D. Roth (SBN 217464)
mroth@kslaw.com
Lennette W. Lee (SBN 263023)
llee@kslaw.com
Samuel C. Cortina (SBN 310778)
scortina@kslaw.com
King & Spalding LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355

*Attorneys for Defendant*
*Converse, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL PRICE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>CONVERSE, INC., a Massachusetts corporation; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:24-cv-08091-FLA(Ex)<br><br>**JOINT STIPULATION RE: PLAINTIFF CAROL PRICE'S MOTION TO COMPEL FURTHER RESPONSES TO SPECIAL INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**<br><br>Date: Friday, May 23, 2025<br>Time: 9:30 am<br>Courtroom: 6B<br>Discovery Cutoff: May 22, 2026<br>Pretrial Conference: Not Set<br>Trial: Not Set |

# TABLE OF CONTENTS

**I. PLAINTIFF'S PRELIMINARY STATEMENT ........ 1**

**II. DEFENDANT'S PRELIMINARY STATEMENT ........ 3**

**III. ISSUE 1: DEFENDANT REFUSES TO PRODUCE RESPONSIVE DOCUMENTS WITHIN A REASONABLE PERIOD (RFPS 1, 2, 5, 6, 8, 9, 10, AND 11) ........ 6**

A. Text of the Requests and Defendant's Responses ........ 6

B. Plaintiff Carol Price's Position ........ 13

C. Defendant Converse Inc.'s Position ........ 18

**IV. ISSUE 2: DEFENDANT REFUSES TO EVEN IDENTIFY A REASONABLE COMPLETION DATE FOR ITS DOCUMENT PRODUCTION (RFP 3) ........ 20**

A. Text of the Requests and Defendant's Responses ........ 20

B. Plaintiff Carol Price's Position ........ 23

C. Defendant Converse Inc.'s Position ........ 24

**V. ISSUE 3: DEFENDANT REFUSES TO PRODUCE DOCUMENTS RELATED TO ITS AFFIRMATIVE CONSENT DEFENSE UNLESS AND UNTIL PLAINTIFF ANSWERS ITS IMPROPER DISCOVERY REQUESTS (RFP 7) ........ 24**

A. Text of the Requests and Defendant's Responses ........ 24

B. Plaintiff Carol Price's Position ........ 27

C. Defendant Converse Inc.'s Position ........ 29

**VI. ISSUE 4: DEFENDANT MUST PROVIDE VALID AND COMPLETE INTERROGATORY RESPONSES (ROGS 1, 4, 5, AND 7) ........ 31**

A. Text of the Requests and Defendant's Responses ........ 31

B. Plaintiff Carol Price's Position ........ 35

C. Defendant Converse Inc.'s Position ........ 36

**VII. ISSUE 5: DEFENDANT MUST PROVIDE SUPPLEMENTAL RESPONSES WITHOUT ITS GENERAL, BOILERPLATE, UNSUPPORTED, OR LEGALLY INVALID OBJECTIONS (RFPS 1, 2, 3, 5, 6, 7, 8, 9, 10, AND 11 & ROGS 1, 4, 5, AND 7) ........ 40**

A. Text of the Requests and Defendant's Responses ........ 40

B. Plaintiff Carol Price's Position ........ 53

C. Defendant Converse Inc.'s Position ........ 57

# JOINT STIPULATION

Pursuant to Local Rule 37-2.1, Plaintiff Carol Price ("Plaintiff") and Defendant Converse Inc. ("Converse"), submit the following Joint Stipulation containing all issues in dispute with respect to Plaintiff's Requests for Production.

## I. PLAINTIFF'S PRELIMINARY STATEMENT

Plaintiff Carol Price brings this Motion because Defendant Converse has refused to provide responsive documents, substantive responses, or meaningfully cooperate in the discovery process. Defendant has instead decided to pursue a self-help stay of discovery while the Court decides its motion to dismiss. At every opportunity Defendant has taken as much time as possible to drag out this process, including taking multiple weeks to respond to basic emails, and refusing to acknowledge or discuss issues raised in discussions. Defendant has absolutely no basis for repeatedly insisting it can simply do whatever it wants, make its productions months after they were due just because it wants to, and suddenly become unable to understand basic sentences in order to make incomplete responses and bad-faith requests to meet and confer after which it continued to simply refuse to provide responses. Indeed, this Motion concerns Plaintiff's first set of discovery consisting of RFPs and Interrogatories that were served on January 13, 2025. Defendant's current position is that for some RFPs where it agreed to provide responsive documents it apparently needed two and have months to even conclude that it would need a total of four or five *months* to even provide "substantial completion" for some of those RFPs.

In simpler terms, Defendant's first set of discovery requests were served on January 13 and had a modest 9 Interrogatories and 11 RFPs, yet as of April 18 *not a single document has been produced*. Defendant agreed to produce responsive documents for 10 of those 11 RFPs (subject to invalid limitations and caveats, discussed below), but for 4 of them it will apparently take four months from service to provide "substantial completion" (January 13 to May 15), for another 4 it will take over five months (January 13 to June 15), and for the remaining 2 Defendant has still refused to identify *any* date for the completion of its productions. And for Plaintiff's 9 Interrogatories it answered 1, did not possess the

information on 3, and for the remaining 5 Interrogatories Defendant's lawyers found them so unintelligible they were somehow unable to provide any response at all without first meeting and conferring with Plaintiff to better understand the requests. Curiously, somehow even after having them explained by Plaintiff and failing to identify or express and specific or meaningful confusion Defendant has since agreed still declined to state when or if it will supplement its responses because it now understands those Interrogatories.

Perhaps most egregiously, for Interrogatory 1 the parties actually agreed on compromise language but when Plaintiff asked when to expect a supplemental response Defendant asserted that it would only "be able to provide an ETA on a supplemental response when the meet and confer on the remaining discovery requests is complete." Ex. 25. Yes, Defendant expressly stated that even when it agrees to supplement a discovery response as part of a compromise during the meet and confer process it will choose whenever it feels like it to live up to its end of the bargain and add whatever conditions its feels like, including making it contingent on the resolution of completely unrelated discovery disputes. It's hard to see what's more bad faith than actually agreeing to a compromise and then afterwards stating that you refuse to even tell the other side when to expect you to live up to your end up of the bargain. Ex. 26. Plaintiff explained in extensive detail in an April 11 email how this was clearly bad faith and how it is impossible to negotiate discovery disputes with an opposing party that expressly states that it will only comply with its own agreements when it feels like doing so. Id. To date Defendant has not responded. Indeed, the practical impact Defendant seeing itself as above the rules is that, while Plaintiff proposed alternative language for Interrogatory 7 based on the parties' discussions, Ex. 18, Plaintiff had to make clear that it would not be able to agree to any discovery compromises without Defendant committing to providing dates for when it would comply with its agreements. Ex. 26. That is if Defendant ever even responds. Plaintiff proposed compromise language for Interrogatory 7 on April 9, Ex. 18, and was told the following day that "[w]e will review your additional revision with our clients and

revert," Ex. 25, and Plaintiff has not heard anything since then.

Defendant had a simple goal in mind when it has refused to comply with its basic discovery obligations and continues to drag out the process as long as possible, Defendant itself explained it in the parties' Joint Rule 26(f) Report – "Defendant should not be subjected to intrusive discovery unless and until it is adjudicated that Plaintiff can utilize California's Penal Code in the circumstances of this case." Ex. 5 at 8, dkt. 27. Defendant even requested a stay of discovery in the Joint Rule 26(f) Report. Ex. 5 at 8 ("discovery should be stayed until Defendant's Motion to Dismiss has been ruled upon") (citation omitted). Unfortunately for Defendant the Court rejected this request and issued a scheduling order which did not grant its request. Ex. 6 at 3, dkt. 33. But just because the Court decided otherwise wouldn't be enough to deter Defendant, Defendant didn't even feel it was necessary to formally request a stay from the Court by separate motion. Defendant instead decided that it didn't matter what the Court had said or done, it had the right and authority to give itself whatever stay it wanted because in its America big corporations with big law attorneys shouldn't have to be subjected to the pesky obligations of the Federal Rules of Civil Procedure or any "intrusive" discovery unless and until it says so. And definitely not to the petty privacy claims brought by a "serial litigant" represented by a firm that has separately sued Converse for entirely unrelated violations of different provisions of the California Invasion of Privacy Act. Cal. Penal Code § 630 *et. seq.* ("CIPA").

## II. DEFENDANT'S PRELIMINARY STATEMENT

This case involves a single, narrow claim: that Defendant Converse Inc. ("Converse") allegedly violated the trap and trace provision of the California Invasion of Privacy Act ("CIPA"), which criminalizes surveilling incoming calls to a person's telephone without a warrant by installing a device on it that captures the originating phone numbers of those calls. Cal. Penal Code § 638.51. There is no allegation that occurred here. Instead, Plaintiff's theory is that by installing software created by third party TikTok, called a pixel, on Converse's own website, Converse has impermissibly installed a "trap

and trace" device—i.e. "a device or process that ***captures the incoming*** electronic or other ***impulses*** that ***identify the originating number*** or other dialing, routing, addressing, or signaling information reasonably ***likely to identify the source*** of a wire or electronic communication, ***but not the contents of a communication***." Cal. Penal Code § 638.50(c) (emphasis added). Plaintiff's action seeks to apply this telephonic surveillance statute to the Internet on behalf of a class of all California consumers to have visited Converse's website.

Notwithstanding Converse's pending motion to dismiss, including for lack of Article III jurisdiction because she fails to identify any injury-in-fact and because her claim would impermissibly apply California law to criminalize Converse's "extra-territorial" out-of-state conduct, ECF Nos. 22 & 29, Converse has engaged in merits discovery in good faith. Converse has agreed to substantially complete its production of documents responsive to ten of eleven RFPs by May 15, or June 15, at the latest (Plaintiff dropped the one to which Converse objected), and provided substantive responses to four of nine interrogatories, while engaging in a good-faith effort to clarify the scope of the remaining five.

Apparently determined to file a motion to compel, however, Plaintiff propounded vastly overbroad discovery (some of which Plaintiff abandoned rather than justify during the meet and confer process), sent a boilerplate LR 37-1 letter purporting to raise issues with every single response, repeatedly injected unprofessional personal attacks into the meet and confer process (Declaration of Samuel C. Cortina ("Cortina Decl."), ¶ 13, Ex. C), and then cut the meet-and-confer process short with a premature motion to compel, asking the Court to order relief the majority of which Converse has already agreed to.

Plaintiff's inflammatory accusations aside, the discovery process is working as it should with no need for Court intervention. Plaintiff's overbroad requests are being narrowed or withdrawn,[1] and Converse is diligently performing searches for documents

[1] During the meet and confer process, Plaintiff agreed no longer to pursue Interrogatory No. 6 as propounded. *See* Cortina Decl., ¶ 7; Declaration of Narain Kumar ("Kumar

responsive to the narrowed requests. The Court should thus deny Plaintiff's motion as to each of the four issues Plaintiff raises.

*First*, Plaintiff's request that the Court order Converse to "promptly" produce the documents it has already agreed to begin producing on May 15 (i.e. ***before*** the motion to compel hearing) and substantially complete its production by June 15, is a waste of the Court's and parties' time and resources. Not only will Plaintiff's requested relief be moot by the time the Court considers it, but it is also unwarranted. There is nothing unreasonable about Converse's production timeline for documents that will require custodial collections, searches, and reviews—particularly when the case is not yet at issue, and no trial date has been set.

*Second*, as a stark example of Plaintiff's rush to file a motion rather than constructively meet and confer to resolve issues, Plaintiff accuses Converse of "refusing" to provide a date certain by which it will produce documents it agreed to produce in response to RFP 3. But the omission of RFP 3 from Converse's confirmatory email was plainly an oversight that could have been cleared up with a simple request from Plaintiff's counsel for clarification. Converse will produce documents responsive to RFP 3 by June 15. Thus, as with the first issue, there is nothing to compel.

*Third*, notwithstanding Converse's unequivocal agreement to produce documents demonstrating Plaintiff's consent to the conduct at issue, Plaintiff has refused to provide the information about Plaintiff that Converse needs to search for and produce such documents. These records cannot be identified based solely on Plaintiff's name. Rather, the applicable consents depend on whether Plaintiff had a Converse account, what date(s) she accessed Converse's website, and whether she made in-store or online purchases.

---

Decl."), Ex. 17 at 2. Converse also objected to responding to RFP No. 4, and discussed the issues with the scope of that RFP at length with Plaintiff. *See* Cortina Decl. ¶ 7; Kumar Decl., Ex. 17 at 2. Plaintiff did not include that request in this Joint Stipulation. Converse therefore understands that Plaintiff has also agreed no longer to pursue RFP No. 4.

Plaintiff has not explained why she cannot provide this information in order to obtain the discovery she seeks, or how Converse could possibly identify Plaintiff's specific information without it.

*Fourth*, Plaintiff criticizes Converse for objecting to five of the interrogatories as vague and for requesting a meet and confer to clarify the meaning of the requests. According to Plaintiff, Converse should have guessed at Plaintiff's meaning and responded to the interrogatories as *Converse* construed them rather than reaching out to Plaintiff to determine what information *she* actually sought. Plaintiff does not explain why that approach would be preferable. More importantly—apart from the interrogatory she proposed to modify rather than even try to justify—she has not yet explained what these interrogatories are meant to seek nor why that information is relevant to her claims. Converse remains willing to consider any proposed clarifications or narrowing of the requests, just as it has been throughout the meet and confer process and would have continued to do had Plaintiff not filed her premature motion.

*Fifth*, Plaintiff contends it was improper for Converse to assert "general objections," but she does not identify any categories of documents that Converse has withheld based purely on a general objection. To the contrary, as Converse explained, its general objections are intended to preserve its objections to Plaintiff's improper instructions and definitions (and Plaintiff's attempts to construe her requests in unpredictable ways), but unless specifically stated in the specific response to each Request, Converse is not withholding any documents or information based on the general objections. Rather than respond to this explanation, however, Plaintiff simply filed this Motion without any clear request for relief on this ground.

For all of these reasons, Plaintiff's motion to compel should be denied.

## III. ISSUE 1: DEFENDANT REFUSES TO PRODUCE RESPONSIVE DOCUMENTS WITHIN A REASONABLE PERIOD (RFPS 1, 2, 5, 6, 8, 9, 10, AND 11)

### A. Text of the Requests and Defendant's Responses

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Carol Price ("Plaintiff") hereby requests that Defendant Converse Inc. ("Defendant") respond in writing to the following requests for documents and things and produce and permit the inspection and photocopying of documents and tangible things hereinafter designated at the offices of Plaintiff's counsel within thirty (30) days of service of these demands. In responding to these requests, Defendant is required by the Federal Rules of Civil Procedure to produce all responsive and non-privileged documents and tangible things in its possession, custody, or control, including those in the possession, custody, or control of its attorneys, agents, or other representatives.

**DEFINITIONS AND INSTRUCTIONS**

1. "YOU" or "YOUR" shall mean Defendant Converse Inc., and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents, subsidiaries, agents or representatives.

2. The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3. The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded communication, representation or writing as defined by Rule 34 of the Federal Rules of Civil Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise). It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings, memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs, charts, screenplays, treatments, business records of all kinds, and similar writings, whether

or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies, written memoranda, e-mail messages, message board postings, and face-to-face conversations.

5. The term "WEBSITE" shall mean and refer collectively to the website www.converse.com referenced in the operative complaint for this action. The term TIK TOK SOFTWARE shall mean and refer to the software referenced and described in the operative complaint for this action.

6. The term "USER DATA" shall mean any and all identifying or potentially identifying information of users of your website, including, but not limited to, IP address, location, email address, first name and last name, address, title, device information, contact details, username, chat history, network information, purchase history, financial information (credit card details, account details, payment information); employment details (employer, job title); geo-location data, and any other data linked to a specific user.

7. "RELEVANT PERIOD" shall mean and refer to September 22, 2022, through the present.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; the past tense shall include the present tense where the clear meaning is not distorted; the word "including" shall not be used to limit any general category description that precedes it; and the term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this

definition.

9. If one email in a chain is response to a request then the entire email chain must be produced. Similarly, if a responsive DOCUMENT is an attachment to an email then the entire email chain must be produced. In addition, any DOCUMENT attached to another DOCUMENT must not be separated. All DOCUMENTS requested herein should be produced in the file, folder, envelope, or other container in which the DOCUMENTS are kept or maintained. This includes email foldering structure maintained by the original custodian. If for any reason the container cannot be produced, please produce copies of labels or other identifying markings.

10. The terms "RELATING TO" or "CONCERNING" shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS which refer to, evidence or reflect all agreements and/or contracts between YOU and TikTok for the WEBSITE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 1:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all agreements and/or contracts" between Converse and TikTok that are unrelated to the allegations in the Complaint. Converse further objects to this Request on the ground that the phrase "[a]ll DOCUMENTS which refer to, evidence or reflect all agreements and/or contracts" is overbroad, unduly burdensome, vague, ambiguous, and capable of various interpretations. Converse also objects to this Request on the ground that the terms "evidence" and "reflect" are undefined, vague, ambiguous, and subject to multiple

meanings.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search for and produce responsive, non- privileged contracts between Converse and TikTok related to the use of the TikTok software on Converse's website.

**REQUEST FOR PRODUCTION NO. 2:**

All COMMUNICATIONS RELATED TO the installation of the TIKTOK SOFTWARE on YOUR site.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 2:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "[a]ll COMMUNICATIONS RELATED TO the installation of the TIKTOK SOFTWARE," including communications that are unrelated to the allegations in the Complaint. Converse further objects to this Request on the ground that the phrase "RELATED TO the installation" is vague, ambiguous, and capable of various interpretations. Converse further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged communications related to the installation of the TikTok software on Converse's website.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS RELATED TO YOUR decision to install the TIKTOK SOFTWARE on YOUR WEBSITE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 5:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse further objects to this Request as vague and ambiguous as to "YOUR decision to install." Converse also objects to this Request to the extent it seeks

information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search for and produce non-privileged documents that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 6:**

All code YOU added to YOUR WEBSITE RELATED TO the TIKTOK SOFTWARE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 6:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse further objects to this Request on the ground that the phrases "[a]ll code" and "RELATED to the TIKTOK SOFTWARE" are overly broad, vague, ambiguous, and subject to multiple interpretations. Converse further objects to the extent that this Request seeks information not within Converse's possession, custody, or control. Converse further objects to the extent this Request seeks documents protected by the attorney-client and/or work product privileged.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce source code from the converse.com website that is in Converse's possession, custody, or control used to operate the TikTok software on converse.com, subject to the parties' agreement to appropriate protocols for the production of source code as required by the Protective Order.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATED TO members of the proposed class consenting to any of the actions described in the First Amended Complaint.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 8:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as unintelligible, compound, vague, ambiguous, and capable of various interpretations as to the term "consenting" and the phrase "any of the actions described in the First Amended Complaint." Converse also

objects to this Request as it seeks information equally or exclusively in Plaintiff's or other third parties' possession, custody, or control. Converse further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged documents including the Converse's operative privacy policies.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to show which pages on YOUR WEBSITE contained the TIKTOK SOFTWARE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 9:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as vague, ambiguous, and capable of various interpretations as to the undefined terms "pages" and "contained."

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show the location of the servers hosting YOUR WEBSITE during the RELEVANT PERIOD.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 10:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, not relevant, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse objects to the extent this Request seeks communications or documents protected by the attorney-client and/or work product privileged.

Subject to and without waiving the foregoing objections, Converse states that it will

conduct a reasonably diligent search and produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 11:**

ALL DOCUMENTS RELATED TO YOUR privacy policies, practices, and procedures for visitors to YOUR WEBSITE during the RELEVANT PERIOD, including but not limited to DOCUMENTS such as any privacy policies or website terms of use.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 11:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, not relevant, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse further objects to this Request as overly broad, vague, and ambiguous as it seeks documents "RELATED TO" Converse's "privacy practices, policies, and procedures." Converse further objects to this Request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged documents including Converse's operative privacy policies and terms of use for the converse.com website.

**B. Plaintiff Carol Price's Position**

Defendant agreed to produce documents for RFPs 1, 2, 5, 8, 9, 10, and 11, but Defendant failed to comply with Rule 34(b)(2)(B)'s requirement to complete each production no later than either the 30 days specified in each request, or another reasonable time it specified in each response. Ex. 1 at 1; Ex. 2.

Plaintiff gave Defendant so many opportunities to comply with Plaintiff Rule 34(b)(2)(B), and at every opportunity Defendant chose to ignore its obligations and instead do whatever it wanted whenever it felt like it regardless of the Federal Rules of Civil Procedure or the Local Rules. Plaintiff specifically identified Defendant's failure to serve

valid responses under Rule 34(b)(2)(B) on March 12, just a few days after Defendant served its deficient responses. Ex. 8. Defendant responded the next day but refused to address this deficiency and only stated it was willing to meet and confer on March 24. Ex. 9. Plaintiff then replied agreeing to meet and confer on March 24 and sending Defendant a more detailed letter identifying Defendant's discovery deficiencies consistent with Local Rule 37-1. Exs. 10-11. Defendant instead decided to effectively cancel its own meet and confer on March 24. Ex. 12 (saying Defendant will review and revert with availability); Ex. 13 (Defendant not responding or providing availability until March 26). Defendant then waited until the evening of day 9 of 10 to send Plaintiff an email asking to meet and confer the following day, which was also the final day allowed to it under LR 37-1. Ex. 13. That email also **demanded** Plaintiff make multiple disclosures and clarifications before the parties spoke the next day and falsely asserted Plaintiff was **required** to do so under the Local Rules. Exs. 13, 14. That email also included a letter from Defendant that, for the first time, provided any dates whatsoever regarding its document production, but this response was still insufficient and failed to correct Defendant's failure to comply with Rule 34(b)(2)(B). Ex. 14 at 8.

Defendant's proposed dates in its letter were plainly deficient under Rule 34(b)(2)(B) because Defendant still refused to commit to providing its complete production for any RFP and instead unilaterally gave itself unreasonable dates multiple months in the future to provide only "substantial completion" of its productions which was further subject to multiple invalid limitations. Ex. 14 at 5. Plaintiff will first address why the dates chosen by Defendant are unreasonable and then explain why Defendant providing dates for "substantial completion" that are further subject to multiple invalid limitations is still deficient under Rule 34(b)(2)(B).

Rule 34(b)(2)(B) required Defendant to complete the full production of responsive documents within 30 days of receiving Plaintiff's RFPs. After Defendant represented that "[w]e are working in earnest with the clients to identify the information requested in plaintiffs' discovery requests but need additional time to do so, particularly as availability

is limited with this week's holidays" Plaintiff agreed to provide Defendant an extension on its RFP responses until March 7, but, needless to say, no production had even begun by March 7. Alternatively, Defendant's responses could have specified another reasonable time it would complete each production. Fed. R. Civ. P. 34(b)(2)(B) ("The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."); *see also* 2015 Adv. Comm. Note to Fed. R. Civ. P. 34(b)(2)(B) (explaining that the reasonable time must be "specifically identified in the response."). Defendant failed to do either.

Defendant instead chose to do exactly what has been prohibited since 2015 amendments to Rule 34, which "an open-ended promise to produce responsive documents if and when they are found because 'discovery is ongoing,' are no longer allowed. Responses must also include deadlines for productions. *Hicks v. Bahadori*, No. 219CV05360MWFSK, 2020 WL 13590859, at *1 (C.D. Cal. Jan. 21, 2020) (citation omitted); *Evox Prods. v. Kayak Software Corp.*, 2016 WL 10586303, at *4 (C.D. Cal. June 14, 2016) (responses that do "not specify the date for completion of [ ] production" violate amended Rule 34).

Defendant will likely assert that its March 7 failure to provide responses compliant with Rule 34 was effectively "cured" by its March 26 letter that identified dates of "substantial completion" of some (but not all) productions by either May 15 or June 15. There might have been some validity to that argument had Defendant done so promptly, but Defendant's decision to instead drag its feet as much as it possibly could demonstrates that its delays were clearly an intentional and strategic decision to give itself a self-help stay of discovery and compelling evidence that it has been acting in bad faith throughout the discovery process. Plaintiff first raised this exact issue with Defendant on March 12. Ex. 8. As the attached correspondence shows, getting anything from Defendant has been like pulling teeth with literally weeks in between emails and issues raised by Plaintiff simply ignored by Defendant whenever convenient. Defendant may also assert that it complied with Rule 34 because it stated in a subsequent email that it expects to make a

"rolling production," but Defendant has still refused to produce a single document, it has not identified any reason or need for a rolling production, it never even discussed the idea with Plaintiff prior to the parties March 27 meet and confer discussion, and Defendant's "responses that it will be producing additional documents is insufficient under Rule 34(b)(2)(B)," because rolling productions must also be complete within the 30-day rule, unless the parties previously agreed otherwise. *Maiorano v. Home Depot USA, Inc.*, No. 16CV2862-BEN-MDD, 2017 WL 4792380, at *2 (S.D. Cal. Oct. 24, 2017). Invoking the phrase "rolling production" is not some secret phrase that allows a party to violate Rule 34(b)(2)(B) and provide responsive documents whenever it feels like doing so.

**Most importantly, the May 15 and June 15 dates Defendant unilaterally chose for its "substantial completion" are themselves unreasonable**. Strong evidence for this is provided by Plaintiff's difficulty and efforts required to get Defendant to even provide those dates, particularly when Defendant had already asked for and received an extension for its responses but did not even seek any such further extension. Further evidence is Defendant's inability to justify or explain why those dates were reasonable during the parties' meet and confer discussion on March 27. When asked why document productions that should have been completed on February 18, or March 7 after the agreed-upon extension, would still take multiple additional months Defendant's counsel refused to provide any explanation. Defendant's counsel's instead bizarrely asserted that this information was protected "work product" and then refused to explain how that information was possibly covered under the work product doctrine. Ex. 18. It is particularly telling that Defense counsel's "contemporaneous summary" of the meet and confer provided a week later omits any mention of this assertion and misstates the contents of that discussion. Ex. 17.

An additional reason why Defendant has failed to specify a "reasonable time" to complete its productions under Rule 34 is that Defendant's interpretation of Rule 34(b)(2)(B) in this case empowers parties to avoid or unreasonably delay producing documents despite the fact that the 2015 amendments were expressly intended to do the

opposite. It also means that parties never even need to speak with the opposing side to obtain extensions of time to produce documents. Parties can instead just follow Defendant's lead and simply refuse to provide any dates whatsoever until the very end of the meet and confer under Local Rule 37-1, and then, without even seeking an extension, just unilaterally declare how much extra time they have decided to give themselves while refusing to provide any facts or explanation for why that date is reasonable.

The final reason why Defendant's proposed dates for "substantial completion" are unreasonable is Defendant's conduct in responding to the relevant RFPs and ultimately providing dates months entirely consistent with Defendant trying to effectively grant itself a self-help stay of discovery by delaying everything as long as possible, as is the rest of Defendant's conduct during discovery in this case.

Stated simply, the "Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Infazon*, 335 F.R.D. at 312 (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011), and Defendant "may not impose a unilateral 'self-help' stay by simply objecting and refusing to provide substantive discovery responses while the Motions to Dismiss are pending." *Gold v. Kaplan*, No. 221CV03204FLAJDE, 2021 WL 6618643, at *4 (C.D. Cal. Dec. 2, 2021) (emphasis added); *see also Goro v. Flowers Foods, Inc.*, 334 F.R.D. 275, 286 (S.D. Cal. 2018) ("The Federal Rules of Civil Procedure do not provide for an automatic stay of discovery when a motion to dismiss is pending."); Dean v. Gonzales, 2013 WL 4647968, at *2 (E.D. Cal. Aug. 29, 2013) ("Defendants are not relieved from their obligation to respond to plaintiff's [discovery requests] solely because a motion to dismiss was pending."). Defendant has clearly tried to apply a thin veneer of plausibility paper over its actions to try to defend itself, but Defendant is clearly trying to get the self-help stay that it is not allowed to get and which the Court, if asked, would have clearly rejected. This isn't a question around which there can be a meaningful debate, in the minute order taking Defendant's motion to dismiss the FAC under submission the Court expressly stated "[t]he court expects the parties to continue litigating this action diligently, while

awaiting the court's ruling on this motion." Dkt. 34. By any measure imaginable Defendant has failed to do this. For these reasons Defendant must promptly produce all responsive documents for RFP Nos. 1, 2, 5, 6, 8, 9, 10, and 11, and pay Plaintiff's attorneys fees as required by Rule 37.

**C. Defendant Converse Inc.'s Position**

Plaintiff concedes that Defendant agreed to produce documents for RFPs 1, 2, 5, 8, 9, 10, and 11 *and* that Defendant has provided a date certain by which it will complete its production under Rule 34(b)(2)(B). As Plaintiff acknowledges, Defendant has agreed to substantially complete its production of documents responsive to certain RFPs by May 15 (i.e. less than three weeks from this filing and *before* her motion to compel will be heard) and the remaining RFPs by June 15. *See* Kumar Decl., Ex. 14 at 5.

Plaintiff nonetheless complains that these production dates are not "within a reasonable period." *See supra* Section III.B; Kumar Decl., Ex. 18 at 1-2. But Plaintiff does not explain—either with citation to authority or evidence—why it is unreasonable for Converse to substantially complete its production within four and eight weeks after agreeing to the scope of production and while the parties are still negotiating a proposed protective order, Cortina Dec. ¶¶ 3, 10, nor does she offer a date by which *she* thinks production would be reasonable. *See, e.g.*, *supra* Section III.B; Kumar Decl., Ex. 11 at 4 (requesting that Defendant be ordered to produce documents "promptly"). Despite the narrow scope of Plaintiff's single claim, she has sought wide-reaching discovery, including *all* communications with TikTok related to the vastly overbroad category of "USER DATA" (RFP 3) and *all* communications about Defendant's decision to install, and about the installation of, the TikTok pixel on Defendant's website (RFPs 2, 5). Unlike requests that will require targeted searches for known responsive documents, *see, e.g.* RFP 11 (seeking a copy of Defendant's privacy policies), these broad requests for communications require custodial collections, the development and application of search terms, review of every document for responsiveness, confidentiality, and privilege, and arranging for production with an e-discovery vendor. Plaintiff does not and cannot explain why

production deadlines of May 15 and June 15 are unreasonable in these circumstances.

Nor can Plaintiff argue that Defendant's production deadlines will prejudice her in any way. There is no trial date yet set in this case. Nor is there any other impending deadline Plaintiff has identified with which Defendant's production timeline would interfere. And while Defendant has nonetheless engaged in discovery in earnest, the case is not yet (and may never be) at issue, with a motion to dismiss for lack of subject matter jurisdiction pending.[2] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle,* 7 Wall. 506, 514, 19 L.Ed. 264 (1868)); *see also, e.g.*, *McCoy v. Trate*, No. 122CV00031HBKHC, 2022 WL 1490620, at *1 (E.D. Cal. May 11, 2022) ("Respondent's motion to dismiss for lack of jurisdiction is currently pending before the Court; thus, Petitioner's motion to compel [discovery] will be denied without prejudice as premature."); *Kennedy-Burdick v. Czarnecki*, No. CIV.01-898 PHX, 2002 WL 511484, at *5 (D. Ariz. Feb. 14, 2002) (denying motion to compel discovery responses on the ground that "discovery is not appropriate at this time" "considering there has been no Answer and a motion to dismiss for lack of jurisdiction has been pending before the Court.").

Defendants have agreed to produce responsive non-privileged documents within a reasonable timeframe. Plaintiff not only fails to show otherwise, but her decision to move on this issue even though the date by which Defendant has already agreed to produce documents is *before* this motion will even be heard, suggests that Plaintiff has not brought

[2] *See Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996) ("Subject matter jurisdiction is a threshold issue in the absence of which the court cannot proceed to hear other issues. 'It is a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters.'" (quoting *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79–80 (1988)).

this motion in good faith to resolve disputed issues.

## IV. ISSUE 2: DEFENDANT REFUSES TO EVEN IDENTIFY A REASONABLE COMPLETION DATE FOR ITS DOCUMENT PRODUCTION (RFP 3)

### A. Text of the Requests and Defendant's Responses

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Carol Price ("Plaintiff") hereby requests that Defendant Converse Inc. ("Defendant") respond in writing to the following requests for documents and things and produce and permit the inspection and photocopying of documents and tangible things hereinafter designated at the offices of Plaintiff's counsel within thirty (30) days of service of these demands. In responding to these requests, Defendant is required by the Federal Rules of Civil Procedure to produce all responsive and non-privileged documents and tangible things in its possession, custody, or control, including those in the possession, custody, or control of its attorneys, agents, or other representatives.

**DEFINITIONS AND INSTRUCTIONS**

1. "YOU" or "YOUR" shall mean Defendant Converse Inc., and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents, subsidiaries, agents or representatives.

2. The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3. The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded communication, representation or writing as defined by Rule 34 of the Federal Rules of Civil Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise). It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings,

memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs, charts, screenplays, treatments, business records of all kinds, and similar writings, whether or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies, written memoranda, e-mail messages, message board postings, and face-to-face conversations.

5. The term "WEBSITE" shall mean and refer collectively to the website www.converse.com referenced in the operative complaint for this action. The term TIK TOK SOFTWARE shall mean and refer to the software referenced and described in the operative complaint for this action.

6. The term "USER DATA" shall mean any and all identifying or potentially identifying information of users of your website, including, but not limited to, IP address, location, email address, first name and last name, address, title, device information, contact details, username, chat history, network information, purchase history, financial information (credit card details, account details, payment information); employment details (employer, job title); geo-location data, and any other data linked to a specific user.

7. "RELEVANT PERIOD" shall mean and refer to September 22, 2022, through the present.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; the past tense shall include

the present tense where the clear meaning is not distorted; the word "including" shall not be used to limit any general category description that precedes it; and the term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

9. If one email in a chain is response to a request then the entire email chain must be produced. Similarly, if a responsive DOCUMENT is an attachment to an email then the entire email chain must be produced. In addition, any DOCUMENT attached to another DOCUMENT must not be separated. All DOCUMENTS requested herein should be produced in the file, folder, envelope, or other container in which the DOCUMENTS are kept or maintained. This includes email foldering structure maintained by the original custodian. If for any reason the container cannot be produced, please produce copies of labels or other identifying markings.

10. The terms "RELATING TO" or "CONCERNING" shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

**REQUEST FOR PRODUCTION NO. 3:**

All COMMUNICATIONS between YOU and TIKTOK during the RELEVANT PERIOD related to USER DATA.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 3:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "[a]ll COMMUNICATIONS" "related to USER DATA" irrespective of whether the communications are related to any claims or defenses in the case. Converse further objects

to the definition of "USER DATA" as overly broad to the extent it seeks information unrelated to the allegations in the Complaint. As defined, this term would necessarily capture an enormous volume of irrelevant material, and/or material of only marginal relevance and not proportional to the needs of the case. Converse further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged communications between Converse and TikTok related to user data identified or gathered by the TikTok software on Converse's website and Converse's compliance with California privacy laws.

**B. Plaintiff Carol Price's Position**

For the exact same reasons discussed above, Rule 34(b)(2)(B) applies with even more force to Defendant's Response to RFP 3 because Defendant has still failed to even specify *any* date for the completion of its production. Rule 34(b)(2)(B) required Defendant to complete its production by the end of the agreed upon extension on March 7, or by a reasonable date specified in its discovery response. *See also* 2015 Adv. Comm. Note to Fed. R. Civ. P. 34(b)(2)(B) ("The response to the request must state that copies will be produced. The production must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response."). Since Rule 34 was amended in 2015 "an open-ended promise to produce responsive documents if and when they are found because 'discovery is ongoing,' are no longer allowed. Responses must also include deadlines for productions. *Hicks v. Bahadori*, No. 219CV05360MWFSK, 2020 WL 13590859, at *1 (C.D. Cal. Jan. 21, 2020) (citation omitted); *Evox Prods. v. Kayak Software Corp.*, 2016 WL 10586303, at *4 (C.D. Cal. June 14, 2016) (responses that do "not specify the date for completion of [ ] production" violate amended Rule 34). Defendant has necessarily waived any opportunity to provide a reasonable date for production and must now simply comply with the Response it served.

Defendant must be ordered to promptly provide all documents responsive to RFP 7 and pay Plaintiff's attorneys' fees as required by Rule 37.

**C. Defendant Converse Inc.'s Position**

Plaintiff's second issue turns on an inadvertent omission of reference to a single RFP in Converse's agreement to produce documents by a date certain. *See supra* Section IV.B; Cortina Decl. ¶ 3. Rather than reach out to clarify the omission, however, Plaintiff has deemed Converse's oversight a "refus[al] to even identify a completion date" and sought Court intervention on that ground. Had Plaintiff simply raised this issue during the meet and confer, as Local Rule 37-1 expressly contemplates, Defendant could easily have clarified that its agreement to produce documents extended to RFP 3, too. Plaintiff's rush to file instead further highlights Plaintiff's failure to engage in a good-faith meet and confer with a goal of resolution. In any event, Defendant will substantially complete production of documents responsive to this request by June 15. Cortina Decl. ¶ 3. There is thus nothing to compel.

**V. ISSUE 3: DEFENDANT REFUSES TO PRODUCE DOCUMENTS RELATED TO ITS AFFIRMATIVE CONSENT DEFENSE UNLESS AND UNTIL PLAINTIFF ANSWERS ITS IMPROPER DISCOVERY REQUESTS (RFP 7)**

**A. Text of the Requests and Defendant's Responses**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Carol Price ("Plaintiff") hereby requests that Defendant Converse Inc. ("Defendant") respond in writing to the following requests for documents and things and produce and permit the inspection and photocopying of documents and tangible things hereinafter designated at the offices of Plaintiff's counsel within thirty (30) days of service of these demands. In responding to these requests, Defendant is required by the Federal Rules of Civil Procedure to produce all responsive and non-privileged documents and

tangible things in its possession, custody, or control, including those in the possession, custody, or control of its attorneys, agents, or other representatives.

**DEFINITIONS AND INSTRUCTIONS**

1. "YOU" or "YOUR" shall mean Defendant Converse Inc., and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents, subsidiaries, agents or representatives.

2. The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3. The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded communication, representation or writing as defined by Rule 34 of the Federal Rules of Civil Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise). It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings, memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs, charts, screenplays, treatments, business records of all kinds, and similar writings, whether or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies,

written memoranda, e-mail messages, message board postings, and face-to-face conversations.

5. The term "WEBSITE" shall mean and refer collectively to the website www.converse.com referenced in the operative complaint for this action. The term TIK TOK SOFTWARE shall mean and refer to the software referenced and described in the operative complaint for this action.

6. The term "USER DATA" shall mean any and all identifying or potentially identifying information of users of your website, including, but not limited to, IP address, location, email address, first name and last name, address, title, device information, contact details, username, chat history, network information, purchase history, financial information (credit card details, account details, payment information); employment details (employer, job title); geo-location data, and any other data linked to a specific user.

7. "RELEVANT PERIOD" shall mean and refer to September 22, 2022, through the present.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; the past tense shall include the present tense where the clear meaning is not distorted; the word "including" shall not be used to limit any general category description that precedes it; and the term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

9. If one email in a chain is response to a request then the entire email chain must be produced. Similarly, if a responsive DOCUMENT is an attachment to an email then the entire email chain must be produced. In addition, any DOCUMENT attached to another DOCUMENT must not be separated. All DOCUMENTS requested herein should be produced in the file, folder, envelope, or other container in which the DOCUMENTS are kept or maintained. This includes email foldering structure maintained by the original custodian. If for any reason the container cannot be produced, please produce copies of

labels or other identifying markings.

10. The terms "RELATING TO" or "CONCERNING" shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATED TO the Plaintiff consenting to any of the actions described in the First Amended Complaint.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 7:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as unintelligible, compound, vague, ambiguous, and capable of various interpretations as to the term "consenting" and the phrase "any of the actions described in the First Amended Complaint." Converse also objects to this Request as it seeks information equally or exclusively in Plaintiff's or other third parties' possession, custody, or control. Converse further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged documents including the Converse's operative privacy policies.

**B. Plaintiff Carol Price's Position**

The night before the parties were required to meet and confer on Plaintiff's discovery disputes Defendant sent a letter to Plaintiff stating:

> **Plaintiff must provide the following information before Defendant can identify responsive documents**: (i) whether Plaintiff has an online account with Defendant and, if so, what

> email address Plaintiff used to create that account, (ii) each date that Plaintiff has visited the website, and (iii) whether Plaintiff has ever made any in-store or online purchases of Defendant's products (including when, which products, and the receipt or other identifying information for the purchase). **Defendant can provide an estimated time of production after receiving this information** from Plaintiff.

Ex. 14 at 6 (emphasis added). Defendant again rewrites the rules of discovery to allow it to **demand** documents without making any actual discovery request, and affirmatively stating it will not comply with its obligations under Rule 34 to provide its complete production in a reasonable time and refusing to produce responsive documents despite the absence of any cognizable objection. Moreover, this statement is completely untethered from the Response to RFP 7 that Defendant actually served and calls into question whether it actually intends to honor its original response.

As Plaintiff noted in its April 11 letter to which Defendant never responded, Ex. 26, it is particularly odd to see such a demand in Defendant's response to *Plaintiff's* letter about the disputes she had with Defendant's discovery responses because it was a brand new demand that obviously wasn't responding to anything specific in Plaintiff's letter, it was sent the last night before Defendant was required to meet and confer on the discovery issues Plaintiff had previously identified, and it came 19 days after Defendant served the RFP responses at issue to our January discovery requests. This is simply no basis to refuse to produce responsive documents, object to an RFP, or make a discovery request.

Defendant is obviously required to provide responsive documents to RFP 7 and Defendant's affirmative defense of consent, particularly because *it has already agreed to do so*. Defendant may be allowed to obtain all of the information it requests, but it is only entitled to do so through the discovery process. Defendant would certainly never entertain a request like from Plaintiff like this – essentially multiple new requests for documents and interrogatories propounded at the end of a letter regarding different discovery disputes and

without any of the information normally provided or required in RFPs or interrogatories. Ex. 26.

Defendant is required to provide responsive documents and it has failed to complete its production within 30 days or specify a reasonable time when that will occur. The parties met and conferred, but Defendant not only failed to identify any specific time, Defendant actually affirmatively stated it was not going to comply with its obligations under Rule 34 unless Plaintiff acquiesced to its improper, invalid, and inappropriate demands for information and documents. Defendant must be ordered to promptly provide all documents responsive to RFP 7, pay Plaintiff's attorneys' fees as required by Rule 37, and any other relief the Court deems appropriate.

**C. Defendant Converse Inc.'s Position**

Plaintiff's articulated dispute regarding Converse's response to RFP 7—which seeks all documents regarding *Plaintiff's* consent to conduct alleged in her complaint—is manufactured and should be rejected for at least three independent reasons:

*First*, at no time before serving her portion of this Joint Stipulation did Plaintiff properly meet and confer about this "dispute." Indeed, Plaintiff's L.R. 37.1 Letter did not identify any specific dispute about Converse's response to RFP 7. *See* Kumar Decl., Ex. 11. On March 26, in response to Plaintiff's demand that Converse provide a date certain by when its *entire* production will be completed, Converse asked for basic information from Plaintiff—*e.g.*, email addresses she used to create accounts on Converse's website, and dates/times when Plaintiff accessed Converse's website—so that Converse can identify all documents responsive to RFP 7 and provide an estimated time for production. Kumar Decl., Ex. 14 at 5-6. Plaintiff's counsel did not raise or respond to Converse's request for this information during the parties' meet and confer teleconference the following day, on March 27. Cortina Decl., ¶ 9. On April 10, Converse again requested this information so that it could provide the requested timing for production. Kumar Decl., Ex. 25 at 2. Plaintiff's counsel responded, without explanation or support, that Converse's response to RFP 7 was deficient and any production of documents responsive to RFP 7

would be untimely. *Id.* Plaintiff's counsel neither provided the information Converse requested to enable its search and production, nor further engaged with Converse's counsel to resolve the issue. Instead, Plaintiff seeks an order compelling Converse to produce documents responsive to RFP 7 and awarding Plaintiff attorneys' fees—all without ever explaining how Converse could possibly identify all responsive documents without being able to verify Plaintiff's identify or why Plaintiff cannot provide this basic information about herself to facilitate the very discovery she seeks. Plaintiff's refusal to engage in the mandatory meet and confer process and premature resort to motion practice warrants denial of her requested relief. *See* L.R. 37-1.

*Second*, had Plaintiff properly met and conferred regarding this dispute, it would have been apparent that her complaints about Converse's reasonable request are baseless. Converse agreed to produce non-privileged documents responsive to RFP 7 *that can be identified through a "reasonably diligent search."* Kumar Decl., Ex. 2 at Response to RFP 7. At no time has Converse withdrawn its stated commitment to do so; it simply requires more information from Plaintiff in order to conduct a search specific to Plaintiff. There is nothing improper about such a request. Parties frequently exchange information informally, particularly when it is non-substantive information needed to help facilitate discovery. In fact, Rule 26 contemplates an early exchange of such information—though Plaintiff provided no substantive information in hers. *See* Fed. R. Civ. Proc. 26(1)(A)(i); *see* Cortina Decl., Ex. B at 2-3. Converse thus asked for basic information about Plaintiff that is exclusively in her possession because it will facilitate Converse's ability to search for, and significantly improve its ability to identify, documents responsive to RFP 7. Converse otherwise has no way of accurately searching for and identifying records regarding Plaintiff's consent based solely on her name. Converse will still conduct a reasonably diligent search, but any inability to promptly locate records responsive to Plaintiff's request—let alone complete production by a date certain—will be the fault of Plaintiff, not Converse.

*Third*, there is simply no live dispute regarding Converse's response to RFP 7 that

is ripe for adjudication. Converse has agreed to search for and produce non-privileged documents responsive to RFP 7, and will do so. Plaintiff has no justification for an order compelling Converse to do exactly what it has already agreed to do.

## VI. ISSUE 4: DEFENDANT MUST PROVIDE VALID AND COMPLETE INTERROGATORY RESPONSES (ROGS 1, 4, 5, AND 7)

### A. Text of the Requests and Defendant's Responses

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Carol Price ("Plaintiff") hereby requests that Defendant Converse Inc. ("Defendant") respond in writing and under oath each of the following interrogatories, within the time provided by Rule 33.

**DEFINITIONS AND INSTRUCTIONS**

1. "YOU" or "YOUR" shall mean Defendant Converse Inc., and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents, subsidiaries, agents or representatives.

2. The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3. The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded communication, representation or writing as defined by Rule 34 of the Federal Rules of Civil Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise). It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings, memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs,

charts, screenplays, treatments, business records of all kinds, and similar writings, whether or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies, written memoranda, e-mail messages, message board postings, and face-to-face conversations.

5. The term "IDENTIFY" means to state:

1. in the case of a natural person, his or her name, business address, telephone number, cellphone number, all known email addresses, employer, and job title or position;

2. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer;

3. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person present when it was made, and the subject matter discussed; and

4. in the case of a DOCUMENT, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, its number of pages, it's bates number (if any), the geographic location where it is physically or electronically stored, and IDENTITY of the person who

presently has custody of the DOCUMENT.

6. To DESCRIBE means to state all the relevant facts, characteristics, qualities, or events including what occurred, when it occurred, the location of all individuals, files, and objects involved, the IDENTITY of the person who presently has custody over any related DOCUMENTS, the type of information involved, and the purpose or goal.

7. The term "WEBSITE" shall mean and refer collectively to the website www.converse.com referenced in the operative complaint for this action. The term TIK TOK SOFTWARE shall mean and refer to the software referenced and described in the operative complaint for this action.

8. The tern "USER DATA" shall mean any and all identifying or potentially identifying information of users of your website, including, but not limited to, IP address, location, email address, first name and last name, address, title, device information, contact details, username, chat history, network information, purchase history, financial information (credit card details, account details, payment information); employment details (employer, job title); geo-location data, and any other data linked to a specific user.

9. "RELEVANT PERIOD" shall mean and refer to September 22, 2022, through the present.

10. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; the past tense shall include the present tense where the clear meaning is not distorted; the word "including" shall not be used to limit any general category description that precedes it; and the term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

**SPECIAL INTERROGATORY NO. 4:**

State the number of known sales you made through or as a result of TIKTOK during the RELEVANT PERIOD.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 4:**

Converse incorporates its General Objections into its Response to this Interrogatory

as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse further objects to this Interrogatory on the ground that the phrase "made through or as a result of TIKTOK" and is overly broad, vague, ambiguous, and subject to multiple interpretations. Converse objects on the ground that the burden or expense of responding to this Interrogatory would substantially outweigh its likely benefit.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY all employees and third parties who have knowledge about the number of known sales you made through or as a result of TIKTOK during the RELEVANT PERIOD.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 5:**

Converse incorporates its General Objections into its Response to this Interrogatory as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse further objects to this Interrogatory on the ground that the phrase "made through or as a result of TIKTOK" is overly broad, vague, ambiguous, and subject to multiple interpretations. Converse objects on the ground that the burden or expense of responding to this Interrogatory would substantially outweigh its likely benefit. Converse further objects to the extent the Interrogatory seeks information not in Converse's possession, custody, or control, including but not limited to identification of third parties.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY all employees and third parties who have knowledge about databases or other electronic storage containing USER DATA of people within California that visited the WEBSITE during the RELEVANT PERIOD.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 7:**

Converse incorporates its General Objections into its Response to this Interrogatory as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, unintelligible, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse objects to the defined term "USER DATA" as overbroad and ambiguous in scope. Converse further objects to this Interrogatory on the grounds that the undefined phrases "databases or other electronic storage" and "containing USER DATA of people within California" are vague, ambiguous, and capable of various interpretations. Converse objects on the ground that the burden or expense of responding to this Interrogatory would outweigh its likely benefit, as there is no readily available mechanism to determine the location of any individual that engages with Converse's website.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**B. Plaintiff Carol Price's Position**

Defendant described each of these Interrogatories as "unintelligible," Ex. 14, and responded by saying it was "unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory." Plaintiff addressed each of these during the March 27 meet and confer and Defendant has had weeks since then but failed to provide supplemental responses or

stated that it would ever even provide supplemental responses. Defendant's initial responses were entirely deficient because none of the identified Interrogatories are remotely "unintelligible" by any standard, and Defendant proffered no explanation for how it possibly concluded any response was "unintelligible" and so difficult to comprehend that it could not even provide a coherent response. Defendant simply did not want to respond, but "a statement that [the responding party] is 'willing to meet and confer,' is tantamount to no response at all." *Bragel Int'l, Inc. v. Kohl's Dep't Stores*, No. CV 17-7414 RGK (SSX), 2018 WL 7890682, at *5 (C.D. Cal. Nov. 14, 2018) (citations omitted).

Even if Defendant had some confusion on how to interpret these Interrogatories, "a party responding to discovery should use common sense and attribute ordinary definitions to terms in discovery requests." *Fed. Trade Comm'n v. Student Advocs. Team, LLC*, No. 819CV01728JWHJDEX, 2020 WL 7094082, at *2 (C.D. Cal. Oct. 28, 2020). Defendant cannot avoid responding to Interrogatories by feigning a sudden inability to understand fairly unchallenging requests. Parties have an "obligation to construe ... discovery requests in a reasonable manner." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 618-19 (D. Colo. 2007); *see also King-Hardy v. Bloomfield Bd. of Educ.*, 2002 WL 32506294, at *5 (D. Conn. Dec. 8, 2002) (finding the responding party must give discovery requests a reasonable construction, rather than strain to find ambiguity); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized ...." (internal quotation marks omitted)).

Defendant must promptly provide complete and compliant responses to Interrogatories 1, 4, 5, and 7, and pay Plaintiff's attorneys' fees each of the above Interrogatories according to Rule 37.

**C. Defendant Converse Inc.'s Position**

Plaintiff's Issue 4 contains multiple misstatements, all of which require correction and demonstrate that the motion is without merit.

Special Interrogatory 1:

Notwithstanding Plaintiff's identification of Special Interrogatory 1 in the header and last sentence of her position for Issue 4, there is no present dispute between the parties regarding this interrogatory. Plaintiff fails to set forth verbatim Special Interrogatory 1 and Converse's response thereto, as she is required to do under L.R. 37-2.1. Nor does she discuss the meet and confer efforts regarding Special Interrogatory 1, in which Converse explained why the request was impermissibly overbroad and proposed narrower language (Kumar Decl., Ex. 17 at 2), and Plaintiff responded "**That compromise is acceptable to us**" (Kumar Decl., Ex. 18 at 2 (emphasis added).). To the extent Plaintiff contends that the Motion is necessary to compel a date certain as to when Converse will respond to the agreed-upon version of Special Interrogatory 1, that argument should be rejected out of hand. Plaintiff has not met and conferred about this scheduling question or articulated this supposed concern in the Joint Stipulation. The parties can and should meet and confer to determine a response date; it is not properly presented for the Court to resolve at this juncture.

Special Interrogatories 4 and 5:

Plaintiff's sole argument to compel responses to Special Interrogatories 4 and 5—that Converse may not avoid responding on grounds that these requests are "unintelligible"—can be dispensed with quickly; Converse did not object on this ground.

Rather, in response to Special Interrogatory 4 (seeking the number of sales "made through or as a result of TIKTOK") and Special Interrogatory 5 (seeking identification of all "employees and third parties who have knowledge" about the number of sales "made through or as a result of TIKTOK"), Converse asserted multiple other valid objections due to two overarching concerns, none of which are addressed by Plaintiff (which alone is reason to deny this part of her motion).

*First*, Converse objected because the requests are patently overly broad, vague, and ambiguous as phrased. As one example, it is unclear what a sale made "as a result of TIKTOK" means—TikTok is a social media platform unaffiliated with Converse that publishes third party content from billions of users around the world, the vast majority of

whom have no relationship to Converse. Plaintiff's confusing explanation that these requests seek information regarding sales "attributable to [Converse's] use of the TikTok social media application" (Kumar Decl., Ex. 17 at 2) only confirms the overbreadth and ambiguity. It remains unclear how Plaintiff would "attribute" a sale to Converse's use of TikTok's social media application—even if the TikTok social media application (as opposed to a pixel on Converse's website) were even at issue in this litigation. It is not. Plaintiff has refused to provide greater clarity or meaningfully narrow the scope of these requests.

*Second*, Converse objected because these requests seek sweeping amounts of information that have *no* relevance to the claims or defenses at issue and thus impose an undue burden on Converse and are not proportional to the needs of the case. Plaintiff alleges that Converse installed a pixel on its *own website* to improperly *obtain personal identifying information* of Plaintiff and other California-based individuals who visited Converse's website. Based on these allegations, Plaintiff asserts a single claim for violation of California's trap and trace law, which prohibits the unauthorized "capture[]" of certain electronic information using a trap and trace device, *see* Cal. Penal Code §§ 638.50(c), 638.51. Converse's use of a separate online platform (the TikTok social media app) has no relevance to the supposed trap and trace device that it installed on its own website to allegedly capture Plaintiff's data. Information regarding "the number of known sales" "made as a result of" or "attributable to Converse's use" of the TikTok social media app is even further afield from this action. Converse's *global* sales over a multi-year period having some undefined connection to the TikTok social media application have nothing to do with Plaintiff's claim based on a *California* trap and trace statute that does not apply extraterritorially and focuses only on Converse's alleged capture of information on its own website. Plaintiff's assertions of the relevance of these interrogatories in meet and confer communications—speculating that Interrogatories 4 and 5 could reveal Converse's "motives" for collecting Plaintiff's information, prove what Converse did with Plaintiff's information after alleged collection, and/or establish Plaintiff's injury from the CIPA trap

and trace claim—are notably absent in this Joint Stipulation and unavailing in any event. *See* Kumar Decl., Ex. 26 at 3. Even assuming that motive or use of Plaintiff's data somehow could be divined from disclosure of "the number of known sales," neither motive nor use of collected information are elements of CIPA's trap and trace law. Finally, Plaintiff is not entitled to clearly irrelevant and unduly burdensome discovery responses based on the mere assertion that she "[doesn't] understand how the pixel works." Kumar Decl., Ex. 18 at 2. Plaintiff, through her counsel, presumably had sufficient understanding and evidentiary support to ensure that the class action complaint she filed was in compliance with Rule 11. In any event, Special Interrogatories 4 and 5 do not even refer to the pixel—instead they are about the social media application (which is self-evidently not a "trap and trace device" installed or used on Converse's website)—so it is hard to imagine how Defendant's response will help dispel Plaintiff's stated lack of understanding about the pixel.

Special Interrogatory 7:

As with Special Interrogatory 1, there is no live dispute regarding Special Interrogatory 7. Preliminarily, Converse did not object to Special Interrogatory on grounds that it is "unintelligible." Plaintiff's arguments regarding that non-existent objection should be disregarded altogether.

Plaintiff also fails to disclose that she *agreed* to narrow Special Interrogatory 7, and that the parties' meet and confer efforts to modify language for Special Interrogatory 7 were *still in progress* when she served her portions of the Joint Stipulation. *See* Kumar Decl., Ex. 17 at 2-3; Ex. 18 at 2; Ex. 25 at 2; Ex. 26 at 1, 4-5. Indeed, in the last communication before Plaintiff served the Joint Stipulation, Plaintiff's counsel acknowledged "that the parties are still actively discussing a potential compromise [for] Rog 7." Kumar Decl., Ex. 26 at 1. Plaintiff's abandonment of a productive meet and confer process and resort to motion practice is unwarranted. Her motion should therefore be denied.

To the extent the Court is inclined to entertain whether Interrogatory 7 is sufficient

as written, the motion should also easily be denied. Quite literally, the interrogatory asks Converse to identify employees and third parties who have knowledge about any database or electronic storage containing "USER DATA" of anyone within California that visited the Converse website over many years. Significantly, the definition of "USER DATA" itself is patently objectionable and untethered to the single "trap and trace" claim at issue. Instead, it encompasses things as broad as names, addresses, email addresses, financial information (credit card details, account details, payment information); and employment details (employer, job title). Converse appropriately sought to meet and confer with Plaintiff about what was really being sought, because as written, Interrogatory 7 is patently objectionable.

## VII. ISSUE 5: DEFENDANT MUST PROVIDE SUPPLEMENTAL RESPONSES WITHOUT ITS GENERAL, BOILERPLATE, UNSUPPORTED, OR LEGALLY INVALID OBJECTIONS (RFPS 1, 2, 3, 5, 6, 7, 8, 9, 10, AND 11 & ROGS 1, 4, 5, AND 7)

### A. Text of the Requests and Defendant's Responses

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Carol Price's ("Plaintiff") hereby requests that Defendant Converse Inc. ("Defendant") respond in writing to the following requests for documents and things and produce and permit the inspection and photocopying of documents and tangible things hereinafter designated at the offices of Plaintiff's counsel within thirty (30) days of service of these demands. In responding to these requests, Defendant is required by the Federal Rules of Civil Procedure to produce all responsive and non-privileged documents and tangible things in its possession, custody, or control, including those in the possession, custody, or control of its attorneys, agents, or other representatives.

**DEFINITIONS AND INSTRUCTIONS**

1. "YOU" or "YOUR" shall mean Defendant Converse Inc., and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents,

subsidiaries, agents or representatives.

2. The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3. The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded communication, representation or writing as defined by Rule 34 of the Federal Rules of Civil Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise). It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings, memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs, charts, screenplays, treatments, business records of all kinds, and similar writings, whether or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies, written memoranda, e-mail messages, message board postings, and face-to-face conversations.

5. The term "WEBSITE" shall mean and refer collectively to the website www.converse.com referenced in the operative complaint for this action. The term TIK TOK SOFTWARE shall mean and refer to the software referenced and described in the

operative complaint for this action.

6. The term "USER DATA" shall mean any and all identifying or potentially identifying information of users of your website, including, but not limited to, IP address, location, email address, first name and last name, address, title, device information, contact details, username, chat history, network information, purchase history, financial information (credit card details, account details, payment information); employment details (employer, job title); geo-location data, and any other data linked to a specific user.

7. "RELEVANT PERIOD" shall mean and refer to September 22, 2022, through the present.

8. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; the past tense shall include the present tense where the clear meaning is not distorted; the word "including" shall not be used to limit any general category description that precedes it; and the term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

9. If one email in a chain is response to a request then the entire email chain must be produced. Similarly, if a responsive DOCUMENT is an attachment to an email then the entire email chain must be produced. In addition, any DOCUMENT attached to another DOCUMENT must not be separated. All DOCUMENTS requested herein should be produced in the file, folder, envelope, or other container in which the DOCUMENTS are kept or maintained. This includes email foldering structure maintained by the original custodian. If for any reason the container cannot be produced, please produce copies of labels or other identifying markings.

10. The terms "RELATING TO" or "CONCERNING" shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting," "incorporating," "confirming," "listing," "evidencing,"

"setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS which refer to, evidence or reflect all agreements and/or contracts between YOU and TikTok for the WEBSITE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 1:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all agreements and/or contracts" between Converse and TikTok that are unrelated to the allegations in the Complaint. Converse further objects to this Request on the ground that the phrase "[a]ll DOCUMENTS which refer to, evidence or reflect all agreements and/or contracts" is overbroad, unduly burdensome, vague, ambiguous, and capable of various interpretations. Converse also objects to this Request on the ground that the terms "evidence" and "reflect" are undefined, vague, ambiguous, and subject to multiple meanings.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search for and produce responsive, non- privileged contracts between Converse and TikTok related to the use of the TikTok software on Converse's website.

**REQUEST FOR PRODUCTION NO. 2:**

All COMMUNICATIONS RELATED TO the installation of the TIKTOK SOFTWARE on YOUR site.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 2:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "[a]ll COMMUNICATIONS RELATED TO the installation of the TIKTOK SOFTWARE,"

including communications that are unrelated to the allegations in the Complaint. Converse further objects to this Request on the ground that the phrase "RELATED TO the installation" is vague, ambiguous, and capable of various interpretations. Converse further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged communications related to the installation of the TikTok software on Converse's website.

**REQUEST FOR PRODUCTION NO. 3:**

All COMMUNICATIONS between YOU and TIKTOK during the RELEVANT PERIOD related to USER DATA.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 3:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "[a]ll COMMUNICATIONS" "related to USER DATA" irrespective of whether the communications are related to any claims or defenses in the case. Converse further objects to the definition of "USER DATA" as overly broad to the extent it seeks information unrelated to the allegations in the Complaint. As defined, this term would necessarily capture an enormous volume of irrelevant material, and/or material of only marginal relevance and not proportional to the needs of the case. Converse further objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged communications between Converse and TikTok related to user data identified or gathered by the TikTok software on Converse's website and Converse's compliance with California privacy laws.

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS RELATED TO YOUR decision to install the TIKTOK SOFTWARE on YOUR WEBSITE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 5:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse further objects to this Request as vague and ambiguous as to "YOUR decision to install." Converse also objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search for and produce non-privileged documents that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 6:**

All code YOU added to YOUR WEBSITE RELATED TO the TIKTOK SOFTWARE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 6:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse further objects to this Request on the ground that the phrases "[a]ll code" and "RELATED to the TIKTOK SOFTWARE" are overly broad, vague, ambiguous, and subject to multiple interpretations. Converse further objects to the extent that this Request seeks information not within Converse's possession, custody, or control. Converse further objects to the extent this Request seeks documents protected by the attorney-client and/or work product privileged.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce source code from the converse.com website that is in Converse's possession, custody, or control used to operate the TikTok software on converse.com, subject to the parties' agreement to appropriate protocols for the production of source code as required by the Protective Order.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATED TO the Plaintiff consenting to any of the actions described in the First Amended Complaint.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 7:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as unintelligible, compound, vague, ambiguous, and capable of various interpretations as to the term "consenting" and the phrase "any of the actions described in the First Amended Complaint." Converse also objects to this Request as it seeks information equally or exclusively in Plaintiff's or other third parties' possession, custody, or control. Converse further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged documents including the Converse's operative privacy policies.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS RELATED TO members of the proposed class consenting to any of the actions described in the First Amended Complaint.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 8:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as unintelligible, compound, vague, ambiguous, and capable of various interpretations as to the term "consenting" and the phrase "any of the actions described in the First Amended Complaint." Converse also objects to this Request as it seeks information equally or exclusively in Plaintiff's or other third parties' possession, custody, or control. Converse further objects to this Request to the extent it seeks documents or information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will

conduct a reasonably diligent search and produce responsive, non-privileged documents including the Converse's operative privacy policies.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to show which pages on YOUR WEBSITE contained the TIKTOK SOFTWARE.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 9:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as vague, ambiguous, and capable of various interpretations as to the undefined terms "pages" and "contained."

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show the location of the servers hosting YOUR WEBSITE during the RELEVANT PERIOD.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 10:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, not relevant, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse objects to the extent this Request seeks communications or documents protected by the attorney-client and/or work product privileged.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 11:**

ALL DOCUMENTS RELATED TO YOUR privacy policies, practices, and procedures for visitors to YOUR WEBSITE during the RELEVANT PERIOD, including

but not limited to DOCUMENTS such as any privacy policies or website terms of use.

**RESPONSE FOR REQUEST FOR PRODUCTION NO. 11:**

Converse incorporates its General Objections into its Response to this Request as if fully set forth herein. Converse objects to this Request as overly broad, unduly burdensome, not relevant, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse further objects to this Request as overly broad, vague, and ambiguous as it seeks documents "RELATED TO" Converse's "privacy practices, policies, and procedures." Converse further objects to this Request to the extent it seeks information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, Converse states that it will conduct a reasonably diligent search and produce responsive, non-privileged documents including Converse's operative privacy policies and terms of use for the converse.com website.

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Carol Price ("Plaintiff") hereby requests that Defendant Converse Inc. ("Defendant") respond in writing and under oath each of the following interrogatories, within the time provided by Rule 33.

**DEFINITIONS AND INSTRUCTIONS**

1. "YOU" or "YOUR" shall mean Defendant Converse Inc., and any other person or entities acting on its behalf, including, but not limited to, affiliated companies, parents, subsidiaries, agents or representatives.

2. The term "PERSON" or "PERSONS" shall include a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or entity of any sort.

3. The term "DOCUMENT" or "DOCUMENTS" shall mean any recorded

communication, representation or writing as defined by Rule 34 of the Federal Rules of Civil Procedure, including originals and duplicates, whether in draft or otherwise, and copies and non-identical copies (whether different from the original because of notes or marks made on or attached to said copies, or otherwise). It specifically includes all written, typewritten, printed or graphic materials of whatever kind or nature, including, but not limited to, any and all purchase orders, inventories, invoices, receipts, drawings, memoranda, letters, notes, telegrams, publications, contracts, records, papers, books, recordings on tape, magnetic discs, wire or drums, checks, computer files, electronic mail, drafts, money orders, worksheets, working papers, notebooks, diaries, calendars, graphs, charts, screenplays, treatments, business records of all kinds, and similar writings, whether or not in YOUR possession or under YOUR control, no matter how prepared, or by whom, which relate to or pertain in any manner to the subject matter of the request, and all drafts or copies (including non-identical copies) prepared in connection with such documents, whether used or not.

4. "COMMUNICATION" or "COMMUNICATIONS" shall mean any transmission of information of any sort whatsoever by one or more PERSONS to one or more PERSONS and/or between one or more PERSONS, by any means whatsoever, including but not limited to telephone conversations, letters, documents, telegrams, teletypes, telecopies, written memoranda, e-mail messages, message board postings, and face-to-face conversations.

7. The term "IDENTIFY" means to state:

1. in the case of a natural person, his or her name, business address, telephone number, cellphone number, all known email addresses, employer, and job title or position;

2. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer;

3. in the case of a communication, its date, type (e.g., telephone

conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person present when it was made, and the subject matter discussed; and

4. in the case of a DOCUMENT, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, its number of pages, it's bates number (if any), the geographic location where it is physically or electronically stored, and IDENTITY of the person who presently has custody of the DOCUMENT.

8. To DESCRIBE means to state all the relevant facts, characteristics, qualities, or events including what occurred, when it occurred, the location of all individuals, files, and objects involved, the IDENTITY of the person who presently has custody over any related DOCUMENTS, the type of information involved, and the purpose or goal.

7. The term "WEBSITE" shall mean and refer collectively to the website www. converse.com referenced in the operative complaint for this action. The term TIK TOK SOFTWARE shall mean and refer to the software referenced and described in the operative complaint for this action.

8. The tern "USER DATA" shall mean any and all identifying or potentially identifying information of users of your website, including, but not limited to, IP address, location, email address, first name and last name, address, title, device information, contact details, username, chat history, network information, purchase history, financial information (credit card details, account details, payment information); employment details (employer, job title); geo-location data, and any other data linked to a specific user.

9. "RELEVANT PERIOD" shall mean and refer to September 22, 2022, through the present.

10. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; the past tense shall include

the present tense where the clear meaning is not distorted; the word "including" shall not be used to limit any general category description that precedes it; and the term "or" shall mean "and" and vice-versa, as necessary to bring within the scope of the following interrogatories all information or documents that would be excluded absent this definition.

**SPECIAL INTERROGATORY NO. 1:**

IDENTIFY all PERSONS with the ability to access, monitor, or install the TIKTOK SOFTWARE on YOUR WEBSITE.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 1:**

Converse incorporates its General Objections into its Response to this Interrogatory as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, not relevant, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint and to the extent it purports to request the identity of all individual persons capable of accessing the TikTok software in the converse.com website at any time. Converse further objects to this Interrogatory on the ground that the phrase "the ability to access, monitor, or install" is vague, ambiguous, and capable of various interpretations.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**SPECIAL INTERROGATORY NO. 4:**

State the number of known sales you made through or as a result of TIKTOK during the RELEVANT PERIOD.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 4:**

Converse incorporates its General Objections into its Response to this Interrogatory as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks

information unrelated to the allegations in the Complaint. Converse further objects to this Interrogatory on the ground that the phrase "made through or as a result of TIKTOK" and is overly broad, vague, ambiguous, and subject to multiple interpretations. Converse objects on the ground that the burden or expense of responding to this Interrogatory would substantially outweigh its likely benefit.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY all employees and third parties who have knowledge about the number of known sales you made through or as a result of TIKTOK during the RELEVANT PERIOD.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 5:**

Converse incorporates its General Objections into its Response to this Interrogatory as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse further objects to this Interrogatory on the ground that the phrase "made through or as a result of TIKTOK" is overly broad, vague, ambiguous, and subject to multiple interpretations. Converse objects on the ground that the burden or expense of responding to this Interrogatory would substantially outweigh its likely benefit. Converse further objects to the extent the Interrogatory seeks information not in Converse's possession, custody, or control, including but not limited to identification of third parties.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY all employees and third parties who have knowledge about databases or other electronic storage containing USER DATA of people within California that visited the WEBSITE during the RELEVANT PERIOD.

**RESPONSE FOR SPECIAL INTERROGATORY NO. 7:**

Converse incorporates its General Objections into its Response to this Interrogatory as if fully set forth herein. Converse objects to this Interrogatory as overly broad, unduly burdensome, unintelligible, and not proportionate to the needs of the case to the extent it seeks information unrelated to the allegations in the Complaint. Converse objects to the defined term "USER DATA" as overbroad and ambiguous in scope. Converse further objects to this Interrogatory on the grounds that the undefined phrases "databases or other electronic storage" and "containing USER DATA of people within California" are vague, ambiguous, and capable of various interpretations. Converse objects on the ground that the burden or expense of responding to this Interrogatory would outweigh its likely benefit, as there is no readily available mechanism to determine the location of any individual that engages with Converse's website.

Subject to and without waiving the foregoing objections, Converse responds as follows:

Converse is unable to respond to the Interrogatory as phrased, but is available to meet and confer with Plaintiff's counsel to determine a reasonable scope for this Interrogatory.

**B. Plaintiff Carol Price's Position**

In Defendant's responses to these RFP and Interrogatory Responses Defendant includes a "Preliminary Statement" along with "General Objections" that contain numerous general objections to the Discovery Requests. Each of these responses incorporating general objections and preliminary statements are improper and invalid under Rules 33 and 34.

The Federal Rules of Civil Procedure have long stated that "the grounds for objecting to an interrogatory must be stated with specificity" and, since December 1, 2015,

the Federal Rules also state that, with regard to document requests, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B). On this basis courts in the Central District have concluded that the grounds for a party's general objections are waived except to the extent that objection has also been made in response to an individual Request. *Del Fierro v. DynCorp Int'l LLC*, No. 2:19-CV-07091-DDP-JC, 2022 WL 2189531, at *4 (C.D. Cal. Mar. 8, 2022) ("Defendant argues that its inclusion of such objections in its original/initial General Objections preserved such objections whereas Plaintiff argues such objections were waived. This Court agrees with Plaintiff.") (citation and footnote omitted).

Defendant has also interposed boilerplate and unsupported objections to virtually every single one of Plaintiff's Requests as "as overly broad, unduly burdensome, and not proportionate to the needs of the case." However, even where an objection addresses specific language in a request Defendant has not provided any legal or factual basis for its boilerplate and unsupported objections based on burden, relevance, and proportionality. Defendant has therefore waived these objections. *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-644 L (KSC), 2016 WL 4097521, at *2 (S.D. Cal. May 26, 2016) ("Boilerplate and unsupported objections, stated without further clarification or reason, are ineffective and deemed waived by this Court."). Defendant's boilerplate and unsupported objections are even more clearly insufficient and waived "following the 2015 amendments to Rule 26, courts have also rejected boilerplate assertions that a discovery request is "disproportionate" and require that "objections based on proportionality" be "explained with specificity." *Bragel Int'l, Inc. v. Kohl's Dep't Stores*, No. CV 17-7414 RGK (SSX), 2018 WL 7890682, at *5 (C.D. Cal. Nov. 14, 2018) (citations omitted); *see also* Fed. R. Civ. P. 26 advisory committee notes (2015 amendments) (restoration of the "proportionality calculation to Rule 26(b)(1)" was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional"). Court has therefore almost universally concluded that "[b]oilerplate and

general objections, with an open-ended promise to produce responsive documents if and when they may be found, are no longer allowed." *Happy Place, Inc. v. Hofesh*, LLC, No. 218CV6915ODWSKX, 2019 WL 4221400, at *1 (C.D. Cal. May 17, 2019) (citing Fed. R. Civ. P. 34(b)(2)(B)-(C) & 2015 Adv. Comm. Note). Similarly, Defendant's failure to provide any explanation or factual substantiation for any of its objections is also necessarily fatal to those objections. "General or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *Fed. Trade Comm'n v. Student Advocs. Team*, LLC, No. 819CV01728JWHJDEX, 2020 WL 7094082, at *2 (C.D. Cal. Oct. 28, 2020) (cleaned up).

Most significantly, none of Defendant's objections in its General Objections or in response to specific RFPs states whether any documents are being withheld on that basis. "Rule 34(b)(2)(C) requires that an objection must state whether any responsive materials are being withheld on the basis of an objection." *Clark v. City of Los Angeles*, No. CV-20-10768-CAS (PVCx), 2021 WL 4731353, at *12 (C.D. Cal. Aug. 23, 2021). Defendant was apprised of this deficiency and has still chosen not to do anything about it. If Defendant cannot be bothered to identify documents connected to an objections then the objection is irrelevant and effectively meaningless posturing for the sake of posturing that interferes with the discovery process.

Finally, Defendant may also assert that it objects to or otherwise cannot make a particular production provide a compliant Interrogatory response because no protective order has been issued in this case. That is squarely Defendant's own fault. Plaintiff anticipated this might be a tactic Defendant would use to delay producing documents (and indeed, Defendant expressly asserts that it will not be able to produce any documents by the May 15 or June 15 dates for "substantial compliance" absent entry of a protective order. Ex. 14 at 8. This is a problem entirely of Defendant's own making. Plaintiff first provided Defendant with a draft of a proposed protective order all the way back on January 23, 2025. Exs. 19-20. Defendant did not respond until the night before it was required to meet and

confer under Local Rule 37-1, March 26, 2025. Plaintiff then provided a draft in response to Defendant's edits just days later on April 1, 2025. Exs. 23-24. Defendant has acknowledged it has been sitting on Plaintiff's draft since then, Ex. 25, and Plaintiff provided a substantive response to additional concerns related to Defendant's desired protective order on April 11, Ex. 26, but despite Plaintiff's extensive efforts Defendant has sat on Plaintiff's draft protective orders for *months* and has only ever substantively addressed the issue once, all the way back on March 26. If Defendant wanted or needed a protective order it had the burden to obtain one and it should have sought one out, or at the very least not sat silently and non-compliantly while Plaintiff actively tried to repeatedly address the issue.

Defendant cannot use its own failure to obtain satisfactory protections for its own documents as an excuse to intentionally breach its discovery obligations by simply withholding information and documents responsive to Plaintiff's Discovery Requests until its conditions are satisfied or someone else obtains the protective order that Defendant has made no effort to get for itself. As noted in *Wright v. Covarrubias*, "The Court reminds [Defendant] that to the extent [it] is refusing to disclose documents because such documents are not subject to an existing protective order, the burden is on [Defendant] to affirmatively seek a protective order." No. 2:19-CV-4227 (JLS) GJSx, 2020 WL 8767707, at *2 (C.D. Cal. Dec. 30, 2020) (citing Fed. R. Civ. P. 26(c)). Defendant "may not simply withhold information responsive to a discovery request for months and months" based on any conditions, particularly those that have no established legal basis or are directly prohibited by the Federal Rules of Civil Procedure and case law. *See id*. Most egregiously, Defendant's self-help stay is clearly a demand that the District Court first rule on its pending motion to dismiss before Defendant will provide valid or substantive responses. Defendant doesn't get to make such demands, nor does it get to misuse objections or assertions of confidential documents to get its self-help stay through bad faith delay.

Defendant cannot make generic objections, unsupported boilerplate objections, or feign needing a protective order to simply ignore its discovery obligations. And yet that is

exactly what it is trying to do. Plaintiff has done as much as can possibly be expected and yet been stymied by issues raised in emails being ignored, entire emails being ignored, and Defendant flagrantly refusing to comply with any of its discovery obligations until its conditions and demands met and it is satisfied that Plaintiff should be able to engage in discovery. The Court should therefore overrule all of Defendant's objections on the issues described above issues because they lack merit, require Defendant to provide complete and compliant supplemental responses consistent with that decision, pay Plaintiff's attorneys' fees as required by Rule 37, and any other relief the Court deems appropriate.

**C. Defendant Converse Inc.'s Position**

Plaintiff's Issue 5—complaining of unspecified General Objections (which were not reproduced or identified in the Joint Stipulation), unidentified "boilerplate" objections, and a hypothetical concern that Converse's document production will be delayed while the parties negotiate a protective order—is frivolous and should be denied.

*First*, Plaintiff's mere dislike of the form of Converse's general objections to Plaintiff's Special Interrogatories and Requests for Production of Documents does not create a dispute for the Court to resolve. Converse was well-within its rights to assert these objections, particularly as Plaintiff's instructions and definitions were improper and exceeded the bounds of permissible discovery under the Federal Rules. In any event, it is apparent from each individual discovery response that Converse has articulated specific objections, and is not withholding any response or document on the basis of a general objection.

*Second*, Plaintiff's generalized complaint of "boilerplate and unsupported objections to virtually every single one of Plaintiff's Requests" is improper for a motion to compel. "Specification of the issues in dispute" is required, L.R. 37-2.1, and Plaintiff has failed to do so here. If Plaintiff cannot be bothered to identify *which* specific objections she finds unsupportable in a particular discovery request (to say nothing of attempting to meet and confer about her perceived concerns), the Court should not be expected to conduct this futile exercise for her. The problem with Plaintiff's approach is easily demonstrated by

examining Converse's objections to RFP 3:

> Converse objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "[a]ll COMMUNICATIONS" "related to USER DATA" irrespective of whether the communications are related to any claims or defenses in the case. Converse further objects to the definition of "USER DATA" as overly broad to the extent it seeks information unrelated to the allegations in the Complaint. As defined, this term would necessarily capture an enormous volume of irrelevant material, and/or material of only marginal relevance and not proportional to the needs of the case.

Contrary to Plaintiff's argument, Converse did not simply assert boilerplate objections with no explanation. Rather, it stated the grounds for the objection, identified the defined terms that rendered the request impermissible, and explained that those definitions encompassed irrelevant information that rendered the requests not proportional to the needs of the case.

*Third*, Plaintiff's carping over Converse's objections stated in RFPs is nonsensical—Converse *agreed* to produce non-privileged documents responsive to these requests. And Converse's asserted objections to Special Interrogatories 1, 4, 5, 7 are wholly justified, as set forth in Section VI.C of this Joint Stipulation. Plaintiff's fails to demonstrate how any objection to these unworkable and irrelevant requests is "boilerplate" or unsupported.

*Finally*, Plaintiff's concern that Converse will drag out negotiations of the protective order to delay document production is pure conjecture and not a ripe dispute. Indeed, Converse sent its final proposed edits to the protective order to Plaintiff on April 21, 2025. Cortina Decl., Ex. A. While Converse expects that the protective order can be finalized imminently, that timing is largely in Plaintiff's control. And, this issue is important—in litigation with a related company, Plaintiff's counsel repeatedly sought to disclose the company's confidential information, but lost multiple motions to unseal confidential records. A protective order provides key protections against a Plaintiff's attorney who has

unabashedly and repeatedly sought to disclose the company's confidential information.[3] Cortina Decl., ¶ 14, Ex. D.

Converse has engaged in discovery in this action in good faith, and Plaintiff's motion fails to suggest otherwise. The same, however, cannot be said of Plaintiff.

DATED: April 30, 2025

TAULER SMITH LLP

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Carol Price

Dated: May 1, 2025

KING & SPALDING LLP

By: */s/Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
LENNETTE W. LEE
SAMUEL C. CORTINA

Attorneys for Defendant CONVERSE, INC.

---

[3] In any event, Plaintiff fails to disclose that the first production of documents, which Converse anticipate substantially completing by May 15, includes non-confidential materials. Finalization of the protective order is irrelevant to the timing of the production of these records.