Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CAROL PRICE, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

CONVERSE, INC., a Massachusetts company; DOES 1 through 25, inclusive

Defendant.

Case No. 2:24-cv-08091-FLA-E

**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**

**1. VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen of a different State or subject of a foreign state.

2. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to the Central District of California by regularly engaging with individuals in California through its website. Defendant's illegal conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

4. Plaintiff Carol Price ("Plaintiff") is, and at all times relevant to the allegations herein has been, a citizen of California located and residing within the Central District of California.

5. Defendant Converse, Inc. is a Massachusetts company that owns, operates, and/or controls www.converse.com.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to

Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## FACTUAL ALLEGATIONS

### A. Defendant's Website and the Tik Tok Software.

8. Defendant is a well-known American footwear brand. Defendant operates https://www.converse.com (the "Website"). Defendant has installed on its Website software created by TikTok in order to identify website visitors (the "TikTok Software"). Plaintiff visited Defendant's Website using a desktop computer on February 7, 2024, which was after the TikTok Software was installed.

9. The TikTok Software acts via a process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans. A detailed report prepared by an expert who reviewed the operation of the TikTok Software on converse.com is attached as **Exhibit A**.

10. The TikTok Software gathers data including device and browser information, geographic information, and referral tracking by running code or "scripts" on the Website to send user details to TikTok. The TikTok Software on Defendant's Website collects, tracks, or uses the following information below collected from the device of each visitor to the Website, including Plaintiff.

11. **Device and Browser Fingerprinting Data**. TikTok collects a comprehensive technical blueprint of each user's device:

- Operating system (e.g., "Mac OS X 10_15_7")
- Browser type and version (e.g., "Chrome/139.0.0.0")
- Platform type (e.g., "pc")
- Network type
- Complete User Agent string
- Device make and model information

12. When combined, these data points create a "device fingerprint" that can uniquely identify users with high probability even if they clear cookies, use private browsing modes, or never enter any form data. Research in digital fingerprinting demonstrates that the combination of browser version, operating system, screen resolution, installed fonts, and other technical parameters creates a unique signature for the vast majority of users.

13. **Behavioral and Interaction Data**. Behavioral patterns create a "behavioral fingerprint" that, when combined with device data and persistent identifiers, significantly increases the ability to identify and track individual users. The granular tracking of user interactions—including the precise location and timing of clicks—allows TikTok to build detailed behavioral profiles that can distinguish between different users on the same device or link the same user across different devices. The TikTok Software actively monitors specific user actions and browsing patterns:

- Page URL and referrer information
- Load progress and performance metrics
- Latency timings
- Event triggers (e.g., "Pageview," "Click")
- Timestamps for all interactions
- Session continuity markers
- Page metadata (titles, descriptions, meta tags)

- Click patterns and button interactions, including:
  - Element type (e.g., "BUTTON")
  - Element attributes and CSS classes
  - Precise XPath location within page structure
  - Click coordinates (x, y position)
  - Timestamp of interaction

14. **Advertising and Cross-Platform Tracking Infrastructure**. The "enabledAdTracking" flag confirms that data collection is intentionally configured for advertising surveillance. The integration with third-party platforms like Tealium extends tracking capabilities beyond TikTok alone, creating a networked surveillance system where user data is shared across multiple advertising technology vendors. The data collected on the TikTok Software on Defendant's explicitly confirms integration with advertising and tracking ecosystems:

- enabledAdTracking flag set to "true"
- Pixel code identifiers (e.g., "CKA4E93C77UFTHK72BLG")
- Ad IDs and creative IDs
- Partner integration identifiers (e.g., "Tealium")
- Variation IDs
- Session and page session IDs for deduplication

15. The TikTok Software begins to collect information the moment a user lands on the Website. Thus, even though the Website has a "cookie banner" the information has already been sent to TikTok regarding the user's visit.

//

//

//

//

//

//

16. The Converse website instantly sends communications to TikTok whenever a user lands on the Website and any time a user clicks on a page. In the example below, the right side of the image shows the various TikTok scripts being run by Defendant, and the electronic impulses being sent to TikTok to add to their collection of user behavior.




17. The Software also assigns tracking labels to a user's browser and session, functioning as digital serial numbers that ensure activity can be consistently logged and linked over time. These persistent identifiers allow individuals to be matched and tracked across any other website that also uses the TikTok Software or any other software that can identify or collect any of these persistent identifiers. The anonymous_id, in particular, functions as a stable browser fingerprint that persists even without user interaction or form submission. The following **Persistent Identifiers** were found to be assigned or use by the TikTok Software on Defendant's website specifically:

anonymous_id: A persistent identifier (e.g., "01K34TKH8DWQTZWJ60Z9WTWY3E_.tt.1") assigned to the browser that remains constant across sessions

- session_id: Links all activity within a browsing session
- pageview_id: Tracks individual page interactions
- csid and page_csid: Additional session identifiers
- x-tt-logid, x-tt-trace-host, x-tt-trace-id, x-tt-trace-tag: TikTok's internal tracking identifiers
- userAgent: Detailed browser and system configuration string

18. None of the data identified that was

**B. <u>The TikTok Software is a Trap and Trace Device.</u>**

19. California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

20. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

21. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective and this is a part of TikTok's own explanation about the TikTok Software: https://ads.tiktok.com/help/article/using-cookies-with-tiktok-pixel?lang=en. Among the "Benefits" and "Key Concepts" TikTok itself identifies of using cookies with the TikTok Pixel are:

a. **Improve Ad Delivery and Decrease CPAs**: Identify and deliver ads to people who are more likely to take the desired action, increasing efficiency and reducing costs.

b. **Expand Your Reach**: Match your website visitors with people on TikTok, to expand audience sizes for solutions like web retargeting.

c. **Enhanced Matching Capabilities**: Advanced Matching, combined with first- and third-party cookies, ensures the best possible matching, especially as third-party cookies face deprecation.

d. **Third-Party Cookies**: Created and owned by TikTok via TikTok's server, third-party cookies extend beyond individual domains. They are used to recognize and match events across different websites and are enabled by default with the TikTok Pixel.

22. When TikTok uses the phrase "matching" it means using the TikTok Software to identify individuals who visited Defendant's Website by connecting information collected about that visitor from that visit with other information collected by TikTok from other sources. One of the reasons for this "matching" is to reduce Defendant's costs to advertise to those individuals. TikTok's own sanitized description of the cookies used by the TikTok Software are to "measure and improve the performance of advertising campaigns and to personalize the customer experience (including ads) on TikTok."

23. Because the TikTok pixel is deployed across thousands of websites, the same persistent identifiers (anonymous_id, device fingerprint) collected from a user on converse.com can be matched with data collected from that same user on other sites. This creates a comprehensive cross-website profile of browsing behavior, interests, and identity—regardless of whether the user ever provides personal information on any single site.

24. As an example, imagine a user visits converse.com and receives anonymous_id "01K34TKH8DWQTZWJ60Z9WTWY3E_.tt.1". Days later, the same user (on the same browser/device) visits another e-commerce site with the TikTok pixel. TikTok receives the same anonymous_id and can now link the user's activity across both domains. If that user eventually creates a TikTok account or enters an email address on

any site with the pixel, TikTok can retroactively link all prior anonymous activity to that identified individual.

25. Another way the TikTok Software can pervasively track visitors entire web browsing history across the internet is through **Cross-Site and Cross-Device Identification Without Form Data or TikTok Accounts**. The combination of data points collected creates multiple independent pathways for user identification and tracking that **do not require**:

a. **A TikTok account**: The persistent browser identifiers and device fingerprints enable tracking regardless of whether a user has ever created a TikTok account.

b. **Form submission or email entry**: Device fingerprinting and persistent cookies create unique identifiers before any form interaction occurs. Expert testing revealed six separate tracking events occurring immediately upon page load, before any user interaction.

c. **Specific cookie settings**: Even if third-party cookies are blocked, the combination of first-party cookies, device fingerprinting parameters, and behavioral data creates sufficient tracking capability.

26. Even without deterministic identifiers like hashed email addresses, TikTok can employ probabilistic matching techniques using the collected data to identify users with high confidence. Academic research and industry practice confirm that modern tracking technologies achieve identification accuracy rates exceeding 90% using such techniques, even without explicit PII collection. TikTok uses combinations of the following data points to create a multi-dimensional profile that can uniquely identify most Website visitors:

- Persistent anonymous_id
- Device fingerprint (browser, OS, screen resolution, fonts, etc.)
- IP address (transmitted with every request)

- Behavioral patterns
- Session continuity data
- Cross-site tracking via third-party cookies (where not blocked)

27. Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

28. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq.*, imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that TikTok Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication" and is not limited to telephone lines).

29. Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

30. The data extraction, tracking, and collection described above allows TikTok to track Plaintiff and Class Members across the internet and across devices without their knowledge, consent, or ability to opt-out. This tracking is pervasive and can include enormous amounts of personal data, virtually all details of a person's digital activities anywhere on the internet, no matter what lengths they may try to avoid such tracking and de-anonymization by major corporations for their own private commercial gain. When the government engages in the exact same tracking such conduct violates the Fourth Amendment. *Carpenter v. United States*, 585 U.S. 296, 309 (2018).

31. The TikTok Software allows TikTok and Defendant to engage in individualized data tracking and collection practices cause harm or a material risk of harm to Plaintiff and Class Members' interest in controlling their own personal information.

TikTok and Defendant's tracking practices allow them to amass a great degree of personalized information. Analyzing the collected information in conjunction with matched or linked data reveals enormous amounts of information about an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives. This type of tracking interferes with Plaintiff and Class Members seclusion and reveals facts to their lives in manners that are both highly offensive to any reasonable person.

## <u>CLASS ALLEGATIONS</u>

32. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California whose identifying information was sent to TikTok as a result of visiting converse.com**

33. <u>NUMEROSITY</u>: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

34. <u>COMMONALITY</u>: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a. Whether Defendant installed the TikTok Software on the Website;
b. Whether the TikTok Software is a trap and trace process as defined by California law;
c. Whether Plaintiff and Class Members are entitled to statutory damages;
d. Whether Class Members are entitled to injunctive relief; and

e. Whether Class Members are entitled to disgorgement of unlawfully obtained data.

35. TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by TikTok, Plaintiff is asserting claims that are typical of the Class.

36. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper can be excluded.

37. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

38. Defendant's actions inflicted direct and tangible harm upon Plaintiff and the Class, which is concrete and not speculative. An individual's data constitutes a form of personal property, and Defendant effectively stole this property. The detailed digital profile that Defendant assembled possesses a quantifiable market value, with estimates ranging from $0.10 to $0.50 for a basic consumer profile and exceeding $5.00 for a B2B prospect interested in high-value professional services. Defendant stole this valuable asset from Plaintiff's device and property for its own commercial enrichment.

39. Most importantly, Plaintiff and the Class were harmed because the information was used to fingerprint and identify the needle of an individual's visit from the haystack of all other anonymous internet traffic. Plaintiff did not intend to share this information with Defendant or TikTok, and neither of them had the right to attempt to uncover or disclose anything about Plaintiff and the Class's anonymous visits to Defendant's Website. This information did not belong to them and was not for sale.

**FIRST CAUSE OF ACTION**

**Violations of the California Trap and Trace Law**

**Cal. Penal Code § 638.51**

40. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

41. California's Trap and Trace Law is part of the California Invasion of Privacy Act ("CIPA") codified at Cal. Penal Code 630, *et. seq*.

42. CIPA was enacted due to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

43. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

44. California Penal Code §638.51 (the "California Trap and Trace Law") provides that "a person may not install or use…a trap and trace device without first obtaining a court order[.]"

45. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website.

46. Defendant did not obtain consent from Plaintiff or any of the Class Members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

47. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

48. Therefore, Plaintiff is entitled to injunctive relief and statutory damages under California Penal Code § 637.2 and the equitable relief prayed for herein.

**PRAYER**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;
2. An order declaring Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;
5. Statutory damages pursuant to CIPA;
6. Punitive damages;
7. Prejudgment interest;
8. Reasonable attorneys' fees and costs; and
9. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: October 21, 2025 TAULER SMITH LLP

By: */s/ Narain Kumar*
Narain Kumar, Esq.
*Attorney for Plaintiff*
*Carol Price*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: October 21, 2025

TAULER SMITH LLP

By: *<u>/s/ Narain Kumar</u>*

Narain Kumar, Esq.
*Attorney for Plaintiff*
*Carol Price*