LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
LENNETTE W. LEE (SBN 263023)
*llee@kslaw.com*
SAMUEL C. CORTINA (SBN 310778)
*scortina@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Attorneys for Defendant*
CONVERSE INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL PRICE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONVERSE INC., a Massachusetts company; DOES 1 through 25, inclusive,<br><br>Defendant. | Case No. 2:24-cv-08091-FLA-E<br><br>The Honorable Fernando L. Aenlle-Rocha<br><br>**DEFENDANT CONVERSE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date: December 5, 2025<br>Time: 1:30 p.m.<br>Location: Courtroom 6B |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 5, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Fernando L. Aenlle-Rocha of the above-entitled Court, located at United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Courtroom 6B, Defendant Converse Inc. ("Converse") will and hereby does move the Court to dismiss Plaintiff's Second Amended Complaint (the "SAC"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").

The grounds for the Motion are that Plaintiff's claim should be dismissed under Rule 12(b)(1) because Plaintiff's SAC cannot survive a facial challenge to Article III standing, as the SAC adds no new allegations that would cure the pleading defects the Court identified in dismissing the FAC. Moreover, Plaintiff cannot survive a factual challenge because, now that the parties have conducted discovery, the evidence shows that she has not sustained Article III injury in fact.

Plaintiff's claims should alternatively be dismissed under Rule 12(b)(6) because (1) the trap and trace provision of the California Invasion of Privacy Act ("CIPA") only applies to telephones, not the Internet; and (2) under the extraterritoriality principle, Plaintiff cannot state a CIPA claim for conduct exclusively occurring outside of California.

Because none of the deficiencies in the SAC can be cured, Converse moves for dismissal with prejudice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 on October 30, 2025. (Declaration of Samuel C. Cortina ¶ 2.)

///

///

///

///

///

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Samuel C. Cortina and exhibits thereto, the pleadings and records on file in this case, all matters of which the Court may take judicial notice, and such other or further material as may be presented at or before the hearing on the Motion.

Dated: November 4, 2025

KING & SPALDING LLP

By: */s/ Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
LENNETTE W. LEE
SAMUEL C. CORTINA

Attorneys for Defendant CONVERSE INC.

## TABLE OF CONTENTS


I. INTRODUCTION .......... 9

II. BACKGROUND .......... 10

A. The Court Dismissed Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction .......... 10

B. Plaintiff Offers No New Allegations Explaining How She Was Injured as a Result of Her Visit to the Converse Website .......... 11

C. Discovery Confirms that the TikTok Pixel on the Converse Website Did Not Identify Any of Plaintiff's Personal Information .......... 12

III. LEGAL STANDARD .......... 14

IV. PLAINTIFF DOES NOT HAVE ARTICLE III STANDING .......... 15

A. Plaintiff's SAC Fails to Cure the Pleading Deficiencies that Led the Court to Dismiss for Failure to Allege Injury In Fact .......... 15

B. As a Matter of Fact, Plaintiff Cannot Establish a Concrete Injury Because the Evidence Shows None of Her Personally Identifiable Information Was Collected .......... 19

V. PLAINTIFF CANNOT STATE A CIPA CLAIM AGAINST CONVERSE FOR ITS WEBSITE PRACTICES .......... 20

VI. PLAINTIFF CANNOT STATE A CIPA CLAIM FOR CONDUCT EXCLUSIVELY OCCURRING OUTSIDE OF CALIFORNIA .......... 24

A. California Presumes its Laws Do Not Apply Extraterritorially .......... 24

B. CIPA's Trap and Trace Provision Does Not Apply Extraterritorially .......... 25

C. Plaintiff Improperly Attempts to Extraterritorially Apply CIPA .......... 26

1. The Location of the Allegedly Offending Conduct Is the Converse Website Hosted Outside of California .......... 26

2. Converse's Website Is Not Located in California .......... 27

VII. THE DEFICIENCIES IN THE SAC CANNOT BE CURED .......... 29

VIII. CONCLUSION .......... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) .......... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 14, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 14, 15, 18

*Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850 (1996) .......... 26

*Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009) .......... 21

*Cody v. Ring LLC*, 718 F. Supp. 3d (N.D. Cal. 2024) .......... 22

*Dalfio v. Orlansky-Wax, LLC*, 2022 WL 3083323 (9th Cir. Aug. 3, 2022) .......... 14

*Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036 (1999) .......... 26, 27

*Earll v. eBay, Inc.*, 599 F. App'x 695 (9th Cir. 2015) .......... 28

*English v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658 (C.D. Cal. May 8, 2019), aff'd, 808 F. App'x 529 (9th Cir. 2020) .......... 27

*English v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529 (9th Cir. 2020) .......... 26

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 19

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 19

*Gutierrez v. Converse, Inc.*, 2025 WL 1895315 (9th Cir. 2025) (Bybee, J., concurring) .......... 21

*Hanley v. Int'l Ass'n of Machinists & Aerospace Workers*,
2022 WL 2117805 (C.D. Cal. June 1, 2022)........27

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. 2025)........15

*Jane Doe v. Eating Recovery Ctr., LLC*,
2025 WL 2971090 (N.D. Cal. 2025)........24

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994)........29

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022)........18

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. 2025)........9, 17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. 2025)........15, 17, 18

*Licea v. Hickory Farms LLC*,
2024 WL 1698147, No. 23STCV26148 (Cal. Super. Mar. 13, 2024)........21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........18

*Mejia v. Reed*,
31 Cal. 4th 657 (2003)........22

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)........16

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. 2025)........17

*Morrison v. Nat'l Australia Bank*,
130 S. Ct. 2869 (2010)........25

*N. Alaska Salmon Co. v. A.J Pillsbury, et al.*,
174 Cal. 1 (1916)........24

*Norwest Mortg., Inc. v. Super. Ct.*,
72 Cal. App. 4th 214 (1999)........27

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014)........24

*People v. Blair*,
25 Cal. 3d 640 (1979)........23

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 28

*Perfect 10, Inc. v. Yandex N.V.*,
962 F. Supp. 2d 1146 (N.D. Cal. 2013) .......... 28

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... *passim*

*Russo v. APL Marine Servs., Ltd.*,
135 F. Supp. 3d 1089 (C.D. Cal. 2015), aff'd, 694 F. App'x 585 (9th Cir. 2017) .......... 25

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 14

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) .......... 21

*Savage v. Glendale Union High School, Dist. No. 205, Maricopa Cty.*,
343 F.3d 1036 (9th Cir. 2003) .......... 9, 14, 19

*Sexton v. Spirit Airlines, Inc.*,
2023 WL 1823487 (E.D. Cal. Feb. 8, 2023) .......... 26, 28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 14, 15, 16, 20

*Steinmeyer v. Am. Assoc. of Blood Banks*,
715 F. Supp. 3d 1302 (S.D. Cal. 2024) .......... 18

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .......... 10, 24, 26

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 15, 16

*Tumampos v. Cathay Pac. Airways Ltd.*,
2017 WL 10446824 (N.D. Cal. Apr. 25, 2017) .......... 28

*Vita v. New England Baptist Hospital*,
494 Mass. 824 (Mass., 2024) .......... 21

*Wooten v. Biolife Plasma Services L.P.*,
2025 WL 2979619 (E.D. Cal. 2025) .......... 18

*Wright v. Adventures Rolling Cross Country, Inc.*,
2012 WL 12942824 (N.D. Cal. May 3, 2012) .......... 24, 27

**Statutes**


18 U.S.C. § 3123(b) .......... 23

Cal. Civ. Code § 1798.100 .......... 9, 22

Cal. Penal Code § 630 .......... *passim*

Cal. Penal Code § 632.01 .......... 22

Cal. Penal Code § 638.50 .......... 17

Cal. Penal Code § 638.50(c) .......... 10, 22

Cal. Penal Code § 638.51 .......... *passim*

Cal. Penal Code § 638.52 .......... 25

Cal. Penal Code § 638.52(b) .......... 25, 26

Cal. Penal Code § 638.52(d)(3) .......... 23


**Other Authorities**


Fed. R. Civ. P. 12(b)(1) .......... 9, 14

Fed. R. Civ. P. 12(b)(6) .......... 10, 14, 20

# I. INTRODUCTION

Plaintiff Carol Price's Second Amended Complaint ("SAC") should be dismissed for the same reason the Court dismissed her First Amended Complaint ("FAC")—she fails to plausibly allege Article III standing. (*See* ECF No. 53.) And because this is Plaintiff's *third* failed attempt to allege a claim against Converse, the SAC should be dismissed without leave to amend.

In the SAC, Plaintiff continues to allege a single claim asserting that (a) Converse installed and used on its website certain TikTok software that operates as a "trap and trace device" in violation of California Penal Code Section 638.51, part of the California Invasion of Privacy Act ("CIPA"); and, (b) in turn, TikTok employs statistical and "probabilistic" analysis to try to identify when the same device may visit different websites that also have the TikTok Pixel installed, which Plaintiff calls "fingerprinting." But this is precisely the type of information that the Ninth Circuit held is insufficient to allege an Article III injury in *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025), and the same information this Court previously found insufficient to confer standing (ECF No. 53). Because such practices do not involve the disclosure of "embarrassing, invasive, or otherwise private information," they do not create a concrete injury and do not suffice under Article III. *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. 2025).

Moreover, now that the parties have conducted discovery, Converse mounts a factual challenge in addition to its facial challenge to Plaintiff's Article III standing. On a factual challenge, the court may go beyond the pleadings to weigh evidence. S*avage v. Glendale Union High School, Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003). The evidence here conclusively establishes that Converse collected *no private information* from Plaintiff (she did not even provide such information). This means Plaintiff cannot survive Converse's factual challenge and cannot in good faith amend to overcome Converse's facial challenge either. Her claim thus should be dismissed for lack of standing under Fed. R. Civ. P. 12(b)(1).

Her claim should also be dismissed under Fed. R. Civ. P. 12(b)(6) because she cannot state a claim for relief: (1) the text and legislative history of CIPA make clear that the trap and trace provision is limited to devices or processes installed on telephones to capture incoming telephone numbers not at issue here; and (2) Plaintiff improperly asserts a CIPA claim against Converse for its out-of-state conduct in violation of the principle of extraterritoriality. *See, e.g.*, *Sullivan v. Oracle Corp*., 51 Cal. 4th 1191, 1209 (2011) (presumption against extraterritoriality prohibited application of California law to out-of-state conduct). Plaintiff has not attempted to cure either of these defects in the SAC; nor could she.

Even after conducting months of discovery, this is Plaintiff's third failed attempt at pleading a claim against Converse. Respectfully, it must be her last.

## II. BACKGROUND

Every iteration of Plaintiff's complaint has asserted a single claim against Converse for an alleged violation of CIPA's trap and trace provision. Typically, a trap and trace device is a device that law enforcement attaches to a telephone line to record the incoming "impulses" or electronic signals sent to that phone, such as the incoming phone number, but not the contents of the communications like the words exchanged on the call as a tape recorder would. *See* Cal. Penal Code § 638.50(c); Trap-and-Trace Device, Black's Law Dictionary (12th ed. 2024) ("An electronic device that police sometimes use to record certain facts about wire and electronic communications, such as dialing, routing, and signaling information, but not the contents of the communications themselves."). CIPA prohibits the installation or use of trap and trace devices absent a court order or other enumerated exception. Cal. Penal Code § 638.51.

### A. The Court Dismissed Plaintiff's First Amended Complaint for Lack of Subject Matter Jurisdiction

On September 30, 2025, the Court granted Converse's Motion to Dismiss the First Amended Complaint. (ECF No. 53.) Relying on the Ninth Circuit's *Popa*

decision, the Court held that Plaintiff did not sufficiently allege facts in the FAC "establish[ing] a 'concrete injury,' as required to establish standing." (*Id.* at 5.) The Court rejected as insufficient Plaintiff's allegations that the TikTok Pixel collects "device and browser information, geographic information, and referral tracking," that Converse "used this information to fingerprint the data and deanonymize Plaintiff by matching it 'with existing data TikTok has acquired and accumulated about hundreds of millions of Americans,'" and that this conduct violated "visitors' privacy by 'turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted marketing efforts.'" (*Id.*) (quoting Plaintiff Opposition Br. at 8, 10.) The Court held that notwithstanding these allegations, Plaintiff had failed to plead that the TikTok Pixel "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law under the common-law privacy torts of intrusion upon seclusion and public disclosure of private facts, or identify otherwise how she suffered an injury with a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." (ECF No. 53 at 5) (cleaned up). Plaintiff was given leave to amend to attempt to cure the absence of standing apparent in her FAC.

### B. Plaintiff Offers No New Allegations Explaining How She Was Injured as a Result of Her Visit to the Converse Website

On October 21, 2025, Plaintiff filed the SAC. The SAC, however, alleges hardly any information about Plaintiff's single visit to the Converse website—and certainly no cognizable injury that she personally suffered as a result of that visit.

The only allegation in the SAC discussing the events giving rise to Plaintiff's action—i.e., Plaintiff's visit to the Converse website—is in paragraph 8: "Plaintiff visited Defendant's Website using a desktop computer on February 7, 2024, which was after the TikTok Software was installed." (SAC ¶ 8.) Plaintiff offers no other details about her single visit to Converse's website, such as what pages she visited,

what information of hers she disclosed, or what personal data the TikTok Pixel supposedly collected from her. Nor does Plaintiff specify any injury she allegedly suffered, such as whether her information was deanonymized, whether she received any marketing communications from Converse, or whether she lost any opportunities to monetize her data.

Instead, Plaintiff doubles down on the same theories this Court has already rejected as insufficient to establish Article III standing, adding more allegations of the TikTok Pixel's supposed collection of device and browser-level information, and how that information can theoretically be amassed over time across numerous Internet interactions to create a "digital fingerprint" of a device. (*See* SAC ¶¶ 9-13, 17, 22-26.) Although Plaintiff attached an expert report to her Complaint (*see* SAC, Ex. A), neither that report nor Plaintiff's SAC states that the TikTok Pixel as implemented on *Converse's* website collected any private information from *Plaintiff* during her single visit to the Converse website. And Plaintiff offers no allegations explaining how she was injured as a result of her visit to the website.

### C. Discovery Confirms that the TikTok Pixel on the Converse Website Did Not Identify Any of Plaintiff's Personal Information

No such allegations could be made in good faith here. Pursuant to this Court's Scheduling Order (ECF No. 33), discovery has proceeded in this case, including a deposition of Plaintiff on September 30, 2025. At her deposition, Plaintiff testified that:

- As "a tester," she visited the Converse website by typing www.converse.com into her Internet browser (as opposed to being directed to the Converse website from other websites) (Declaration of Michael D. Roth ("Roth Decl."), Ex. 1 ("Plaintiff Depo. Tr.") at 72:10-11; 73:2-17; 90:15-91:5.)
- On that one visit to the Converse website, Plaintiff did not enter any text into any forms on the Converse website (*id.* at 74:23-25), attempt to

make a purchase (*id.* at 68:13:25), or provide Converse with her name, email address, phone number, physical address, credit card information, or any other personally identifiable information (*id*. at 74:23-75:13, 102:16-103:10).

- She does not know what information of hers was collected, if any, during that visit. (*Id*. at 26:3-24, 113:3-117:1.)
- She did not see the Complaint in this case before it was filed (*id.* at 29:11-30:8, 109:24-110:7, 120:15-121:8; *see also id.* at 118:22-119:19), and does not understand and did not have any involvement in obtaining the graphic included in it, *see* FAC ¶ 12; SAC ¶ 16, which was not taken in connection with her single visit to the Converse website (Plaintiff Depo. Tr. at 51:10-52:25, 109:7-9).
- Since then, Plaintiff has never received any ads or communications from Converse, and has had no further interactions with Converse, at all. (*Id*. at 75:14-25.)
- A few months after her visit to the Converse website, Plaintiff created her own TikTok account so she could watch TikTok videos, and she *voluntarily* provided TikTok her full name, personal email address, profile picture of herself, a description of her work and hobbies, and her date of birth (which she considered more personal than her other information).[1] (*Id*. at 56:11-57:22; 157:9-166:23; 169:13-20.)

When asked directly in written interrogatories to identify the information she claims Converse collected, Plaintiff was unable to do so. (Roth Decl., Ex. 3 (Interrogatory Nos. 8 & 9), Ex. 4 (Interrogatory Nos. 16 & 17).) Instead, she claimed this would be the subject of "expert testimony" (*id.* at Ex. 4 (Interrogatory Nos. 16 &

---

[1] Plaintiff disputed during her deposition that she provided her date of birth to TikTok. However, since April 2019, an FTC Consent Decree has required all TikTok account holders to provide their date of birth to TikTok to maintain an account. (Roth Decl. ¶ 6.)

17), but her expert also did not identify any of *Plaintiff's* information that Converse collected (SAC, Ex. A).

Furthermore, as Plaintiff knows from taking Converse's deposition in this case, Converse's implementation of the TikTok Pixel *does not capture any personal information of any website visitor*; Converse specifically configured the TikTok Pixel on its website *not* to collect any phone numbers, emails, addresses, locations, or any other information, personal or otherwise, that a visitor might provide to Converse during their visit. (Roth Decl., Ex. 2 ("Q. Lam Depo. Tr.") at 203:12-204:18.). Thus, Converse's implementation of the TikTok Pixel could not (and did not) collect any information specific to Plaintiff or anyone else. (*Id.*)

**III. LEGAL STANDARD**

To survive a Rule 12(b)(1) motion to dismiss, Plaintiff must establish all elements to support Article III standing, including injury in fact. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Rule 12(b)(1) jurisdictional challenges can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the complaint fails to allege facts sufficient to invoke federal jurisdiction pursuant to the pleading standards in *Twombly* and *Iqbal*, a facial challenge of the pled allegations is appropriate. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). If a complaint purports to allege Article III standing, but the evidence does not support those allegations, then the court may review extrinsic evidence and pierce the pleadings to evaluate the jurisdictional challenge. *Savage*, 343 F.3d at 1039 n. 2 (9th Cir. 2003); *see also Dalfio v. Orlansky-Wax, LLC*, 2022 WL 3083323, at *1 (9th Cir. Aug. 3, 2022) ("A district court may properly consider extrinsic evidence on a 'factual' motion to dismiss under Rule 12(b)(1)."). Converse moves to dismiss Plaintiff's single claim for lack of subject matter jurisdiction under each avenue: facial and factual.

Converse also challenges Plaintiff's ability to state a claim for relief. Pursuant to Rule 12(b)(6), the Court should dismiss a complaint that does not "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. PLAINTIFF DOES NOT HAVE ARTICLE III STANDING

To establish the constitutional minimum for Article III standing, "a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). It is the "plaintiff['s] … burden of establishing these elements." *Id*. Injury in fact requires the plaintiff "to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan*, 504 U.S. at 560). A particularized injury "must affect the plaintiff in a personal and individual way" and a concrete injury must be "real"—not "abstract"—and "actually exist." *Id.* at 339-40. Statutory violations do not themselves create concrete injuries for purposes of Article III standing. *See Popa*, 153 F.4th at 792 (relying on *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021) and *Spokeo*, 578 U.S. at 341).

### A. Plaintiff's SAC Fails to Cure the Pleading Deficiencies that Led the Court to Dismiss for Failure to Allege Injury In Fact

Despite being given leave to amend for the purpose of asserting factual allegations sufficient to establish Article III standing, Plaintiff still fails to identify *any* specific information of hers that was collected or shared from her visit to the Converse website that could give rise to any injury. Her anemic pleading is reason to dismiss her claim outright. *See Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. 2025) ("Plaintiff's bare allegation that she visited Defendant's website is

insufficient to establish injury in fact, and therefore insufficient to establish standing."); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. 2025) (dismissing CIPA claim for lack of standing where "Plaintiff alleges only that Defendant invaded his privacy by impermissibly collecting Plaintiff's 'data' and 'information.'"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (dismissing a serial plaintiff's CIPA claim for lack of standing because the plaintiff's conclusory allegations failed to "identify the specific personal information she disclosed that implicates a protectable privacy interest.").

Indeed, Plaintiff's standing allegations in her SAC are not meaningfully different from the ones the Court already held were insufficient in the FAC: (i) the TikTok Pixel collects a visitor's device and browsing information, SAC ¶¶ 11, 13; (ii) TikTok is capable of digital fingerprinting from data amassed across numerous websites, *id.* ¶¶ 9-13, 17, 22-26; and (iii) Plaintiff's data has economic value, *id.* ¶ 38. Courts have squarely rejected that these types of allegations are sufficient to allege an Article III injury.

***First***, controlling Ninth Circuit authority, *Popa v. Microsoft Corporation*, 153 F.4th 784, 792 (9th Cir. 2025), has already conclusively rejected Plaintiff's theory that collection of her device, browser, and "behavioral" information on the Converse website creates a cognizable injury.

Indeed, based on the Supreme Court's guidance in *Spokeo* and *TransUnion*, *Popa* rejected even more robust allegations than Plaintiff includes here. In *Popa*, the plaintiff alleged that a website operator used Microsoft's tracking technology to "capture over 30 different categories" of information of website visitors. *Id.* at 786. These included the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, and the country where the user accessed the website from. *Id.* The plaintiff also alleged the collection of information not at issue here: "a user's mouse movements, a user's screen swipes, text inputted by the user on

the website, and how far down a webpage a user scrolls." *Id.* The Ninth Circuit affirmed dismissal of the plaintiff's claim after finding that the collection and sharing of this information with a third party did not create a cognizable injury for purposes of Article III standing. *Id.* at 794.

As a matter of controlling law, collection of browsing and device data is thus insufficient to establish an injury in fact. *Id.*; *see also Byars*, 2023 WL 2996686, at *3 (dismissing CIPA claim because "[p]laintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest"); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413 (N.D. Cal. 2025) (same). District courts have followed *Popa* to dismiss trap and trace claims applied to website technology for failure to plead a concrete injury. *See, e.g.*, *Khamooshi*, 2025 WL 2822879, at *3 (relying on *Popa* to dismiss complaint because "Plaintiffs' allegations regarding device type, browser type, and 'device fingerprints' are even less specific that the 30 different categories of information alleged in *Popa*").

Even before they were bound to do so by *Popa*, district courts were dismissing trap and trace claims for lack of Article III standing. *See, e.g.*, *Kishnani*, 2025 WL 1745726, at *3 (pre-*Popa* case (brought by Plaintiff's counsel) dismissing trap and trace claim because "If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply.")

***Second***, Plaintiff's theory that TikTok can engage in "probabilistic matching" of device and browser information across different websites necessarily fails because it only addresses the alleged independent acts of a third-party (TikTok). *See, e.g.*, SAC ¶ 13 (tracking "allows TikTok to build detailed behavior profiles"), ¶ 24

("TikTok can retroactively link" activity). That alleged conduct has nothing to do with Converse, and Plaintiff offers no allegations to demonstrate otherwise. "[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up).

Moreover, to satisfy Article III's particularity requirement, "the injury must affect the plaintiff in a personal and individual way." *Id*. at 560 n. 1. Plaintiff notably does not allege that *her* device was fingerprinted, tracked across different websites, or that she received any targeted advertising. Absent any cognizable injury that she personally suffered, Plaintiff has no standing. *See Wooten v. Biolife Plasma Services L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. 2025) ("Plaintiffs also do not sufficiently allege any *actual* injury. Rather, they allege that the third-party trackers have the *capability* to use these pieces of information to engage in ID bridging, which could then result in targeted advertising and could contribute to defendants' marketing, advertising, and data analytics efforts.") (emphasis in original); *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (dismissing CIPA claim because "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court").

***Finally***, Plaintiff's allegation that Converse took her personal property—a "detailed digital profile that Defendant assembled [that] possesses a quantifiable market value," (SAC ¶ 38)—fares no better. As a threshold matter, Plaintiff does not identify any particular information or data that forms the supposed "detailed digital profile." Her generalized description fails to satisfy basic pleading requirements under *Twombly* and *Iqbal*. *Iqbal*, 556 U.S. at 678-79; *see also Kishnani*, 2025 WL 1745726, at *3 (dismissing trap and trace claim for lack of standing where plaintiff relied on vague descriptions of the alleged collection of his "data" and "information"); *Steinmeyer v. Am. Assoc. of Blood Banks*, 715 F. Supp. 3d 1302, 1318 (S.D. Cal.

2024) ("even at the pleading stage, … conclusory and speculative allegations [of injury] are insufficient").

Additionally, Plaintiff does not allege any facts showing that she lost the opportunity to monetize her non-descript data—a failure that is fatal to her claim because "courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). In one case, the plaintiffs' claim was dismissed because they had not "shown, for the purposes of Article III standing, that they personally lost the opportunity to sell their information or that the value of their information was somehow diminished after it was collected by [the defendant.]" *Id.* (collecting cases). In another case with the same result, "[t]he plaintiffs [did] not plausibly allege that they intended to sell their non-disclosed personal information to someone else. Nor, in any event, do they plausibly allege that someone else would have bought it as a stand-alone product. The plaintiffs' economic-loss theory is therefore purely hypothetical and does not give rise to standing." *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Plaintiff fails in this same regard.

**B. As a Matter of Fact, Plaintiff Cannot Establish a Concrete Injury Because the Evidence Shows None of Her Personally Identifiable Information Was Collected**

Even if the SAC sufficiently *alleged* Article III standing (and it does not), the evidence shows that Plaintiff actually has suffered no injury in fact. *Savage*, 343 F.3d at 1039 n. 2. Plaintiff's sworn testimony in this case is that: (i) she did *not* provide Converse any of her personal information or input any information during her visit to the website; (ii) she has *no* knowledge of any data that was collected from her visit; and (iii) she has *not* received any communications from Converse since her visit to its website. (Plaintiff Depo. Tr. at 26:3-24, 75:14-25, 113:3-117:1.). And Plaintiff knows from her deposition of Converse that Converse configured the TikTok Pixel *to*

*not collect any personal information* from any website visitors, and thus the TikTok Pixel collected *no information* specific to her. *See* Lam Depo. Tr. at 203:12-204:18.

In any event, Plaintiff hardly considers her contact information (which Converse does not even collect) to be private or demonstrated an intent to monetize it—just months after her visit to the Converse website, she voluntarily provided this information to TikTok without compensation to create a public TikTok account. *See* Plaintiff Depo. Tr. at 166:5-23. That voluntary disclosure to TikTok forecloses any possibility that Plaintiff will ever be able to prove that some unspecified (and unknown) injury "was likely caused by [Converse]" as opposed to her own actions. *Spokeo*, 578 U.S. at 338. The undisputed evidence in this case, which the Court may consider to adjudicate Converse's factual challenge to Plaintiff's Article III standing, conclusively demonstrates that Plaintiff cannot establish an injury in fact required to proceed with this case.

Because controlling law, Plaintiff's admissions, and other incontrovertible evidence in this case confirm that *no* allegations are available (and certainly none have been pled) to establish Plaintiff's Article III standing in this case, the SAC must be dismissed for lack of jurisdiction without leave to amend.

## V. PLAINTIFF CANNOT STATE A CIPA CLAIM AGAINST CONVERSE FOR ITS WEBSITE PRACTICES

Even if Plaintiff could successfully establish her Article III standing (she cannot), her attempt to convert an everyday occurrence—the use of a pixel on a commercial website—into a CIPA claim necessarily fails as a matter of law and must be dismissed pursuant to Rule 12(b)(6). The tactic of suing website owners under criminal wiretapping statutes has become a nationwide practice and Plaintiff has done it more than ten times. (Plaintiff's Depo. Tr. at 76:6-87:25, 127:3-155:25.) These decades-old statutes carry stiff statutory penalties—not to mention criminal exposure—so ambitious plaintiffs have weaponized them against ubiquitous Internet practices. The Court should faithfully interpret the language of CIPA's trap and trace

provision, as well as its legislative history, and find that it does not apply to the Internet-conduct at issue here.

***First***, multiple courts have already rejected the attempt by serial plaintiffs to apply the trap and trace provision to website practices. In *Licea v. Hickory Farms LLC*, the Los Angeles Superior Court found that "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider." 2024 WL 1698147, at *4 (Cal. Super., Los Angeles County Mar. 13, 2024). In *Sanchez v. Cars.com Inc.*, the Los Angeles Superior Court reviewed "the legislative history of the CIPA" and determined that "'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites." 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025). With respect to CIPA's federal counterpart, the Wiretap Act, another court observed that "[i]f [the Wiretap Act] did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009); *see also Vita v. New England Baptist Hospital*, 494 Mass. 824, 840 (Mass., 2024) ("[W]e cannot conclude that the [Massachusetts] wiretap act unambiguously prohibits and, indeed, criminalizes the interception of web browsing activity, because there appears to be a difference in kind and not degree between interactions on a website available to the public and private conversations in your house or on your telephone.").

***Second***, courts need not expand CIPA to regulate Internet conduct because another statute already does. *See Gutierrez v. Converse, Inc.*, 2025 WL 1895315 (9th Cir. 2025) (Bybee, J., concurring) (explaining in another CIPA case brought by Plaintiff's counsel against Converse that a different provision of CIPA "does not apply to internet communications" and the California Consumer Privacy Act of 2018

(the "CCPA") provides recourse). The CCPA created a fulsome statutory framework setting forth how third parties may access or process online data, what disclosures to consumers are required, and what specific rights consumers have with respect to accessing and disclosing their online personal information. *See* Cal. Civ. Code §§ 1798.100 (obligations of businesses), 1798.135 (permissible uses of consumer information), 1798.105 (consumer right to delete), 1798.106 (consumer right to correct), 1798.110 (consumer right to know), 1798.120 (consumer right to opt out of sale or sharing of personal information), 1798.121 (consumer right to limit use and disclosure of personal information), 1798.125 (consumer right of no retaliation). Plaintiff's demand that this Court expand CIPA to the Internet and nullify the carefully crafted CCPA should be rejected.

***Third***, the Legislature has amended CIPA multiple times, including since it enacted the CCPA, and has declined to expand CIPA's trap and trace provision to apply to the transmission of data between computers. *Cody v. Ring LLC*, 718 F. Supp. 3d, 993, 999 (N.D. Cal. 2024) (finding "[the plaintiff] fails to account for CIPA's multiple amendments" when arguing "that CIPA should be interpreted to apply to new technologies"). Indeed, other provisions of CIPA's statutory scheme *do expressly* address the Internet. *See* Cal. Penal Code § 632.01 (addressing disclosures and distributions "in any forum, including, but not limited to, Internet Web sites and social media"). The absence of similar specific language in Section 638.51 counsels in favor of construing "trap and trace" devices in line with their traditional meaning: devices that are attached to a telephone line.

***Finally***, the terms of CIPA's trap and trace provision, when "construed with reference to the whole system of law of which it is a part," *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003), shows it only applies to tracking telephone numbers.

The definition of a "trap and trace" device in Penal Code § 638.50(c) refers to capturing "the *originating number* or *other* dialing, routing, addressing, or signaling information." (emphasis added). The term "originating number" both qualifies the

remainder of this clause and plainly refers to a telephone number. Indeed, the California Supreme Court defined the related pen register as follows: "A pen register is a mechanical device which records the numbers dialed from a telephone, but it does not overhear oral communications or indicate whether the call was completed." *People v. Blair*, 25 Cal. 3d 640, 654 n. 11 (1979).

As further evidence that the statute may only be read as extending to telephone surveillance, Section 638.52(d)(3) requires any court order authorizing the installation or use of a trap and trace device to "specify … *[t]he number* and, if known, physical location of the *telephone line* to which the … trap and trace device is to be attached[.]" (emphasis added). This is a clear indication of the Legislature's view that trap and trace devices can only be attached to *telephone lines*—*i.e.*, lines or wires associated with telephone numbers—and not to computers accessing the Internet.

Plaintiff's reading of Sections 638.50, 638.51, and 638.52 creates an absurdity. Under her reading: (1) Section 638.50's statutory definition of a "trap and trace" device applies to the Internet, even though it refers to "originating numbers"; and (2) Section 638.52(a)(3) prohibits law enforcement from ever obtaining a warrant to use a trap and trace device on a website because law enforcement could never identify the "telephone line" to which the device would be attached, a requirement to obtain a court order authorizing installation or use of a trap and trace device.

The Central District of California long ago construed the substantively identical language of 18 U.S.C. § 3123(b)—the federal "trap and trace" law requiring that a court order specify "the number … and if known, the location of the *telephone line* to which the … trap and trace device is to be attached"—as limiting "trap and trace" devices to "only devices that are 'attached' to a telephone line," despite the absence of a specific limitation in the statutory definition of a "trap and trace device." *Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995).

CIPA's language, purpose, and legislative history are clear that Section 638.51

is limited to telephones. To the extent there is any ambiguity, the Court must apply the rule of lenity to resolve it in defendants' favor. *See Jane Doe v. Eating Recovery Ctr., LLC*, 2025 WL 2971090, at *1 (N.D. Cal. 2025) (applying the rule of lenity to a different provision of CIPA while remarking that "[t]he language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies.").

## VI. PLAINTIFF CANNOT STATE A CIPA CLAIM FOR CONDUCT EXCLUSIVELY OCCURRING OUTSIDE OF CALIFORNIA

Plaintiff also improperly attempts to apply CIPA's trap and trace provision to Converse's alleged out-of-state conduct.

### A. California Presumes its Laws Do Not Apply Extraterritorially

California, like many other states, has a "presumption against extraterritorial application" of its own laws that dates "as far back as 1916." *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 WL 12942824, at *4 (N.D. Cal. May 3, 2012); *see Sullivan*, 51 Cal. 4th at 1207 (stating presumption against extraterritoriality). To overcome this longstanding presumption, "[t]he [California legislature's] intention to make [an] act operative with respect to occurrences outside the state" must be "clearly expressed or reasonably … inferred 'from the language of the act or from its purpose, subject-matter, or history.'" *N. Alaska Salmon Co. v. A.J Pillsbury, et al.*, 174 Cal. 1, 4 (1916) (citation omitted).

Courts have applied this rule to hold that many California statutes do not reach extraterritorially. *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1007 (N.D. Cal. 2014) (the UCL does not apply extraterritorially); *Sullivan*, 51 Cal. 4th at 1209 (UCL "does not apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs in the circumstances of this case"); *Wright*, 2012 WL 12942824, at *3–4; *see O'Connor*, 58 F. Supp. 3d at 1006-07 (collecting cases and concluding "the Labor Code violations upon which Plaintiffs rely do not apply

extraterritorially"); *Russo v. APL Marine Servs., Ltd.*, 135 F. Supp. 3d 1089, 1095 (C.D. Cal. 2015), aff'd, 694 F. App'x 585 (9th Cir. 2017) (the California Fair Employment and Housing does not apply extraterritorially).

**B. CIPA's Trap and Trace Provision Does Not Apply Extraterritorially**

The same rule applies to CIPA. Indeed, no court has concluded that CIPA's trap and trace provision applies extraterritorially, and there is no indication from either the statute's express language, or by implication, that the Legislature intended that provision to criminalize conduct occurring entirely outside the California border.

There is no express language in CIPA stating the statute is meant to reach into other states. *See* Cal. Penal Code § 638.51; *see also Morrison v. Nat'l Australia Bank*, 130 S. Ct. 2869, 2873 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

Nor is there anything in CIPA to indicate that the Legislature implicitly intended for it to reach extraterritorial conduct. Instead, the Legislature expressly stated that "it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter." Cal. Penal Code § 630. Reading CIPA as having extraterritorial application would severely restrict law enforcement investigations occurring *outside* of California, in contravention of the Legislature's intent.

More specifically, CIPA requires "obtaining a court order pursuant to Section 638.52 or 638.53" to use or install a trap and trace device. Cal. Penal Code § 638.51. There is a specific list of offenses that can justify issuance of a court order, including enumerated provisions of California statutes like the California Fish and Game Code. Cal. Penal Code § 638.52(b). But no other state's laws are listed. *See id.* Thus, if CIPA applied extraterritorially, then a Florida law enforcement officer could never obtain authorization from a court to install a trap and trace device to investigate a potential violation of Florida's Fish and Game Code because CIPA does not identify

Florida's Fish and Game Code as one of the laws justifying a court order. *See* Cal. Penal Code § 638.52(b) (no Florida laws listed). The California Legislature did not intend such an absurd result. *See* Cal. Penal Code § 630.

Because "[n]either the language of" CIPA "nor its legislative history provides any basis for concluding the Legislature intended" CIPA "to operate extraterritorially," the presumption against extraterritoriality applies to CIPA "in full force." *Sullivan*, 51 Cal. 4th at 1207. CIPA's trap and trace provision thus cannot be interpreted to criminalize the installation and use of trap and trace devices outside of California. As set forth below, that means CIPA cannot apply to Converse's website.

### C. Plaintiff Improperly Attempts to Extraterritorially Apply CIPA

#### 1. The Location of the Allegedly Offending Conduct Is the Converse Website Hosted Outside of California

Plaintiff continues to allege that Converse's installation and/or use of the TikTok Pixel occurred *on* Converse's website. (*See e.g.*, SAC ¶ 8) ("Defendant has installed on its Website software created by TikTok in order to identify website visitors."). Plaintiff does not plead that Converse's website is located in California—nor could she, as discovery has confirmed that the servers hosting the website are located *outside of* California.

An offense is committed in the location where "the conduct which gives rise to liability" occurs. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999); *see also Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850, 1852 (1996) (California statutes do not "apply to nonresidents where … the tortious conduct took place out of this state's territorial boundaries."). "To avoid an impermissible extraterritorial application of state law, a 'crucial element' of [the plaintiff's] claim must have occurred in California." *English v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. 2020); *Sexton v. Spirit Airlines, Inc.*, 2023 WL 1823487, at *1 (E.D. Cal. Feb. 8, 2023) (finding that "material elements of the cause of action" must take place in California, and dismissing claim brought by California resident

where material conduct occurred outside of California).

The crucial elements of Plaintiff's trap and trace claim are the *installation or use* of a trap and trace device. *See* Cal. Penal Code § 638.51. Thus, the "conduct which gives rise to liability" is wherever Converse installed or used the alleged trap and trace device. *Diamond Multimedia Sys.*, 19 Cal. 4th at 1059. Plaintiff alleges that Converse installed or used the TikTok Pixel "on" its own website. SAC ¶¶ 8, 10, 15, 16 (alleging that Converse installed and used the TikTok Pixel "on" the Converse website). The location of the website is the only place that matters for purposes of considering whether CIPA can apply.

To be clear, it is not enough that a plaintiff is in California during the offense. In *Wright v. Adventures Rolling Cross Country, Inc.*, the court dismissed the plaintiffs' California Labor Code claims as impermissibly attempting to reach extraterritorial conduct, even though the plaintiffs were "California residents and the employer [was] based in California (such that presumably payments [were] made in California) but the work [was] performed principally outside of California." 2012 WL 12942824, at *4. Despite these California connections, the extraterritoriality principle barred the claims because no crucial element of the claims occurred in California. *See also English v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019), aff'd, 808 F. App'x 529 (9th Cir. 2020) (dismissing claims even though the plaintiff was a "California resident, received her pay in California, paid California income taxes, performed a significant amount of her work assignments in California, was terminated in California, and her HR representative was based in California") (cleaned up); *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 224–25 (1999) (same result); *Hanley v. Int'l Ass'n of Machinists & Aerospace Workers*, 2022 WL 2117805, at *7 (C.D. Cal. June 1, 2022) (same result).

**2. Converse's Website Is Not Located in California**

A website is physically located where the servers that host it are located. "The Internet is a world-wide network of networks … all sharing a common

communications technology." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007) (quotation marks omitted). Although they are accessible anywhere via a web browser, webpages are not themselves physical locations, *Earll v. eBay, Inc.*, 599 F. App'x 695, 696 (9th Cir. 2015) (web services are not "an actual physical place"), and, as the Ninth Circuit explained, "[n]o images are stored on a webpage; rather, the HTML instructions on the webpage provide an address for where the images are stored, whether in the webpage publisher's computer or some other computer." *Perfect 10*, 508 F.3d at 1155. The location of the computers that run the HTML instructions—i.e., that "host" the website—is where the website is. *Id.*

For instance, with respect to the Copyright Act, courts have dismissed claims for improper extraterritorial application where the servers hosting the webpage displaying an infringing work were not located in the United States even though the infringing content on the webpage was displayed and viewed in the United States. *E.g.*, *Perfect 10*, *Inc. v. Yandex N.V.*, 962 F. Supp. 2d 1146, 1153 (N.D. Cal. 2013), as amended (Sept. 6, 2013) ("Perfect 10 does not demonstrate that Yandex in fact stored or displayed full-sized copies of the Perfect 10 images on Yandex's United States *servers*.") (emphasis added). The same is true here: Converse's website is hosted outside of California and all of the alleged conduct by Converse thus occurred outside of California.

Even if the Court did not adopt, at this time, the view that a website is located where its servers are located, Plaintiff's claim must still be dismissed, because she fails to allege where any of Converse's supposedly offending conduct occurred. She cannot rely on her territorial silence to avoid dismissal. *Sexton*, 2023 WL 1823487, at *1 (noting "void" in plaintiff's allegations regarding the location of the alleged conduct and dismissing claims); *Tumampos v. Cathay Pac. Airways Ltd.*, 2017 WL 10446824, at *7 (N.D. Cal. Apr. 25, 2017) ("Because Plaintiffs have not alleged facts sufficient to establish that they worked principally in California or that Defendant is a California employer, the Court finds that their claims for meal and rest period

violations fail as to the work performed outside of California.”).

## VII. THE DEFICIENCIES IN THE SAC CANNOT BE CURED

The Court should grant this motion and dismiss Plaintiff's claim without leave to amend because Plaintiff has had multiple opportunities to cure these fatal deficiencies, failed to do so, and cannot cure them through further amendment. *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (leave to amend “need not be granted where the amendment of the complaint would … constitute[] an exercise in futility”) (citation omitted). First, Plaintiff cannot cure her standing deficiency because she provided no personal information to Converse that could implicate any protected privacy interests. Second, Plaintiff cannot amend to state a claim because, as a matter of law, CIPA's trap and trace provision does not apply to the Internet. Third, Plaintiff's extraterritoriality problem cannot be cured because to the extent Converse installed or ran any software “on” its website, the servers hosting Converse's website are not located in California.

## VIII. CONCLUSION

For the foregoing reasons, Converse respectfully requests that this Court grant this motion without leave to amend, and enter judgment in Converse's favor.

Dated: November 4, 2025

KING & SPALDING LLP

By: */s/ Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
LENNETTE W. LEE
SAMUEL C. CORTINA

Attorneys for Defendant CONVERSE INC.

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Converse Inc., certifies that this brief contains 6,987 words, which complies with the word limit of L.R. 11-6.2.

Dated: November 4, 2025

KING & SPALDING LLP

By: */s/ Michael D. Roth*
MICHAEL D. ROTH

Attorneys for Defendant CONVERSE INC.