Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Carol Price*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROL PRICE, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>CONVERSE, INC., a Massachusetts company; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-08091-FLA-E<br><br>**PLAINTIFF CAROL PRICE'S OPPOSITION TO DEFENDANT CONVERSE, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date: December 5, 2025<br>Time: 1:30 pm<br>Courtroom: 6B |

# TABLE OF CONTENTS

**I. INTRODUCTION ........ 6**

**II. RELEVANT FACTUAL BACKGROUND ........ 7**

**III. ARGUMENT ........ 8**

A. THE COURT MUST STRIKE AND IGNORE DEFENDANT'S FACTS FROM OUTSIDE THE SAC ........ 8

B. PLAINTIFF HAS ARTICLE III STANDING ........ 10

*1. The SAC's Allegations establish Article III Standing from Defendant's Privacy Violation ........ 11*

*2. Forcing Plaintiff to Share Information with TikTok Caused an Article III Injury 14*

*3. Defendant Profiting by Stealing an Asset From Plaintiff Caused an Article III Injury ........ 15*

C. FEDERAL COURTS HAVE UNIFORMLY REJECTED DEFENDANT'S ARGUMENTS ON THE MERITS OF THE CIPA CLAIM ........ 16

D. THERE ARE NO EXTRATERRITORIALITY CONCERNS ........ 18

**IV. CONCLUSION ........ 20**

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........ 22**

# TABLE OF AUTHORITIES

Page(s)

Cases

2025 WL 1430663 (C.D. Cal. May 15, 2025) .......... 12, 13

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) .......... 14

*Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 16

*Deivaprakash v. Conde Nast Digital*, No. 25-CV-04021-RFL, 2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) .......... 16

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) .......... 16

*Frasco v. Flo Health*, Inc., No. 21-CV-00757-JD, 2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 13, 14

*Gabrelli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......... 16

*Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 16

*Garon v. Keleops USA Inc.*, No. 25-CV-02124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) .......... 16

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. July 2023) .......... 16

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 11

*Heiting v. FKA Distrib. Co.*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 11, 12, 16

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................11
*In re: Google Inc. Cookie Placement Consumer Privacy Litigation*,
934 F.3d 316 (3d Cir. 2019)....................14
*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................13
*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006)....................19
*Keskinen*,
2025 WL 851074 (collecting cases)....................12
*Licea v. Cinmar*, LLC,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)....................12
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................6
*Moody v. C2 Educ. Sys. Inc.*,
No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024)..........6, 16
*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017)....................14
*NetChoice, LLC v. Bonta*,
113 F.4th 1101 (9th Cir. 2024)....................15
*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)....................18
*Popa v. Microsoft*,
2025 WL 2448824 (9th Cir. 2025)....................11
*Raffin v. Medicredit, Inc.*,
No. CV154912GHKPJWX, 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016)....................12
*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-CV-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025)....................16

*Safe Air for Everyone*,
373 F.3d ........................................................................................ 14

*Shah v. Fandom, Inc.*,
No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .................... 6, 16

*Smith v. Maryland*,
442 U.S. 735 (1979) ........................................................................ 13

*Wooley v. Maynard*,
430 U.S. 705 (1977) ........................................................................ 15

*Zarif v. Hwareh.com, Inc.*,
No. 23-CV-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ............ 17, 19

Statutes

California Penal Code § 638.51 .................................................... 6, 7, 17, 19

Rules

Fed. R. Civ. P. Rule 12(d) ................................................................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other Defendants before it, seek the Court's assistance to bail them out of their privacy collection practices in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same). However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of a prohibited "Trap and Trace" device in California Penal Code § 638.51 because of the way it is designed to collect information from Californians without their consent.

Defendant's arguments on Article III standing have also been fully addressed by the allegations in the SAC and its attached expert report which describe in detail all of the information that was extracted from Plaintiff's device and how that can be used to personally de-anonymize and personally identify Plaintiff's browsing activities across the

internet. Defendant's conclusion that federal courts are powerless to stop the pervasive tracking of everything someone does on the internet simply cannot be accepted.

## II. RELEVANT FACTUAL BACKGROUND

Defendant is a well-known footwear brand that operates a website at converse.com. ("Website"). SAC ¶ 8. On that website Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff, without their consent. *Id.* ¶¶ 8, 19-21, 27-29. This was because the code acted as an illegal "Trap and Trace" device, in violation of California Penal Code § 638.51 (California's "Trap and Trace Law), part of the California Invasion of Privacy Act, § 630 *et seq*. Defendant's purpose in violating the privacy rights of Plaintiff and countless others was because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data. *E.g.*, SAC ¶¶ 9-10, 16, 35. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or "fingerprinting." *Id.* ¶ 9. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. *Id.* ¶¶ 11-13. And in exchange for contributing to TikTok's massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors' privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly

personalized and universally unwanted marketing efforts. *E.g.*, SAC ¶¶ 9, 29, 33-35. If people like Plaintiff actually wanted Defendant's marketing and advertising to be more aggressive, personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. SAC ¶ 21.

## III. ARGUMENT

### A. <u>The Court Must Strike and Ignore Defendant's Facts from Outside the SAC</u>

Defendant's Motion relies on a myriad of facts entirely absent from the SAC. *See* Roth Decl. ¶¶ 1-5. None of these documents or the facts therein can be considered in relation to a motion dismiss unless the Court chooses to convert it to a motion for summary judgment. Fed. R. Civ. P. Rule 12(d). Defendant asserts that it can introduce these facts as part of a factual challenge to the Court's subject matter jurisdiction, but Defendant does not make a factual challenge. The Court should therefore strike and ignore both of the declarations attached to the Motion.[1]

[1] Defendant's Cortina Declaration contains many facts and assertions which are misleading and bordering on outright false. The entire declaration is only relevant to a single issue – whether Defendant's failure to meet and confer on this Motion to Dismiss five days before it was filed instead of seven justifies denying it under Local Rule 7-3.

Defendant instead attacks the allegations as insufficient and then misleadingly describes irrelevant evidence obtained through discovery in this case as insufficient to satisfy a standard it just made up. That simply is not a factual challenge, it's a motion for summary judgment masquerading as a motion to dismiss that Defendant hopes will mislead and confuse the Court to Defendant's attempt to bypass the rules of civil procedure which Defendant finds too inconvenient to follow. As an example of the fabricated and made-up argument Defendant treats as a "factual" challenge to subject matter jurisdiction, Defendant relies on three key facts:

> (i) she did not provide Converse any of her personal information or input any information during her visit to the website;
> (ii) she has no knowledge of any data that was collected from her visit; and
> (iii) she has not received any communications from Converse since her visit to its website.

Mot. at 19. None of these facts are relevant to Plaintiff's claim or Article III standing, and it's obvious that Defendant is just making up and misstating the facts and law because Defendant does not cite a single case in support of the relevance of any of these facts to the merits of the claim or Article III standing.

By definition a trap and trace claim will not involve information Plaintiff input into the Website, and the FAC doesn't allege that she did. Similarly, Plaintiff's knowledge of how Defendant secretly and illegally violated her privacy is entirely irrelevant to Article

---

Should the Court conclude such action is unnecessary then the Declaration can and should be struck from the docket and removed in its entirety. Plaintiff however declines to follow Defendant's lead and proactively disparage Defendant's counsel in public court filings on a wide number of entirely unrelated topics, but Plaintiff will have no difficulty in doing providing ample factual details should the Court request such information.

III standing or the merits of the claim. And the fact that Defendant has not received any communications from Converse after visiting the Website has no connection to anything at issue. Defendant's argument may as well be that someone who stole your medical records hasn't violated your privacy or caused you an injury because you didn't type the information in yourself, you never knew it happened, and they didn't use it to send you an email trying to sell you Viagra or something similar. Defendant also asserts that Plaintiff later voluntarily gave information to TikTok but that does not excuse Defendant's own illegal violations of her privacy, nor is it relevant to the fact that Defendant's illegal activities gave TikTok more information than Plaintiff did, including the fact that she visited the Converse Website months prior.

Simply put, none of the facts Defendant relies on from outside the SAC have any relevance to the merits of the claim or Article III standing, Defendant introduces them solely to try to bias the Court against Plaintiff's legitimate and meritorious grievance. The Court must therefore strike and ignore them.

**B. <u>Plaintiff has Article III Standing</u>**

Defendant starts its Article III arguments asserting that "neither that report nor Plaintiff's SAC states that the TikTok Pixel as implemented on *Converse's* website collected any private information from Plaintiff during her single visit to the Converse website." Mot. at 12 (emphasis in original). This is simply incorrect. Plaintiff's expert report and the SAC unequivocally describe what Converse's website collected from ***every single visitor*** while the pixel was installed. SAC ¶ 10 ("The TikTok Software on

Defendant's Website collects, tracks, or uses the following information below collected from the device of each visitor to the Website, including Plaintiff."). The SAC then spends a page and a half listing an extensive number of pieces of personal information related to Plaintiff that were collected. SAC ¶¶ 10-14. This is exactly what the Court required in its previous ruling.

**1. <u>The SAC's Allegations establish Article III Standing from Defendant's Privacy Violation</u>**

These additional facts demonstrate what specific pieces information was extracted from Plaintiff and how they allow for the pervasive tracking of all of Plaintiff's browsing history across the internet. That alone makes Defendant's conduct highly offensive. *See e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012) (concluding Article III standing existing for tracking of "Plaintiffs' home and workplace locations, gender, age, zip code, terms searched, Plaintiff's app ID and password for specific app accounts, etc., through each of the downloaded apps."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1192 (N.D. Cal. 2020) (collection of geographic location sufficient for Article III standing where it exceeded mere collection of an IP address).

This must be sufficient to establish an Article III injury because that's exactly what the Ninth Circuit held in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020) (holding that "tracking of browsing activities, including an individual's likes, dislikes, interests, and habits over a significant amount of time" sufficient to establish an Article III injury"). The Court's previous order distinguished *In re Facebook* based on

*Popa v. Microsoft*, 2025 WL 2448824, at *3 (9th Cir. 2025) (Order at 2, 5-6 n.3) but its reading of the case was entirely *sua sponte* and made without the benefit of any briefing by the parties. Moreover, Plaintiff's additional allegations very clearly establish the concreteness and injury required for Article III standing under any standard that may be required by *Poppas* because the relevant portion of the decision in *Poppas* relied on by the Court was addressing the argument adopted by many other courts that simply alleging a violation of CIPA was itself sufficient to establish an Article III injury.[2] And most importantly, *Poppas* expressly held that the conclusions Plaintiff relies on from *In re Facebook* are still good law (and *Poppas* could not have changed that because one panel of the Ninth Circuit cannot overrule a prior panel's decision).

When faced with allegations quite similar to the FAC, Judge Vera also ruled that the plaintiff had not alleged facts sufficient to establish an Article III injury. *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Defendant even cites to that opinion in its brief. Mot. at 10. Defendant however failed to recognize that decision gave leave to amend and that upon review of the additional allegations in the SAC Judge Vera concluded that plaintiff had established Article III standing. *Id.*, 2025 WL 1430663, at *2

---

[2] Such decisions held that "violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights." *Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) (citation omitted); *accord Keskinen*, 2025 WL 851074, at *5 (collecting cases). *Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute.").

(C.D. Cal. May 15, 2025). He explained that "Plaintiff's SAC now alleges that the software effectively de-anonymizes the website user and has collected tracking information on her irrespective of her lack of a TikTok account. Accepting Plaintiff's plausible allegations as true—as the Court must at this stage—Plaintiff's allegations suffice to establish a concrete injury." *Id.* (citation omitted). Substantially similar factual allegations were also added to the SAC in this case, and so the Court should reach the same conclusion.

Plaintiff's argument that the privacy harms from combining lots of "less personalized" data are the exact privacy harm that motivated the creation of trap and trace laws, as Justice Stewart presciently noted in his dissent in *Smith v. Maryland*, 442 U.S. 735 (1979). He noted that most people had no problem sharing their own phone number in the phone book, "but I doubt there are any who would be happy to have broadcast to the world a list of the local or long distance numbers they have called" because even though it wouldn't be incriminating "it easily could reveal the identities of the persons and the places called, and thus reveal the most intimate details of a person's life. *Id.* at 748 (Stewart, J., dissenting).

Defendant's focus on individual pieces of information collected has been repeatedly rejected by courts as necessary for Article III standing. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) ("the Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing."); *Frasco v. Flo Health*, Inc., No. 21-CV-00757-JD, 2025 WL 1433825, at *11 (N.D. Cal. May 19, 2025) (concluding theft of anonymized data is just as much an Article

III injury for intruding upon seclusion because "[t]he fact that misappropriated information might be laundered in some way to hide the owner's identity is of no moment to the commission of the tort."). Moreover, two other federal circuits have also found Article III standing where defendants installed trackers on plaintiffs' computers that allowed them to monitor their web browsing across multiple websites and build detailed profiles based on their internet activity. *In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017).

Moreover, to the degree Defendant's arguments rely on the lack of personally identifiable data this is the key merits question of the case – whether the collective information is "reasonably likely" to identify an individual, and when "the [standing] issue and substantive issues are so intertwined," which makes the resolution of "genuinely disputed facts is inappropriate." *See Safe Air for Everyone*, 373 F.3d at 1039; *Flo Health*, 2025 WL 1433825, at *11 ("If anything, this tactic simply underscored that defendants' standing arguments are inextricably intertwined with the merits for determination later in the case."). But to obtain the judgement Defendant seeks based on the evidence it provides going to the merits of disputed factual issues the Court "must assess Defendants motion as we would a motion for summary judgment, and leave the resolution of material factual disputes regarding Article III standing to the trier of fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145–46 (9th Cir. 2024) (cleaned up).

### 2. <u>**Forcing Plaintiff to Share Information with TikTok Caused an Article III Injury**</u>

Defendant caused a separate Article III injury when it effectively forced Plaintiff to unknowingly give her personal information to TikTok without her consent because Defendant took away Plaintiff's right to choose for herself whether to do business or share her personal information with TikTok. In numerous analogous circumstances to the SAC where individuals are prevented choosing for themselves who they will and will not do business with or share their personal information undisputedly suffer a cognizable Article III injury when the conduct is done by a government actor. For example, "[i]t is also well-established that the forced disclosure of information, even purely commercial information, triggers First Amendment scrutiny." *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024). Similarly, "[i]t is well-established that the First Amendment protects 'the right to refrain from speaking at all.'" *Id.* (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). It stands to reason that when a private business does the same thing that injury, while not a constitutional violation, *is at least constitutionally cognizable.* This is particularly true in the context of companies like TikTok and its perceived potential for collaboration with foreign governments, other highly controversial and very political social media companies like Truth Social or X, or boycotting a company for political reasons like the BDS movement or Target's rollback of DEI policies. The fact that Plaintiff may have later chosen to sign up with TikTok (a fact not alleged in the complaint) is irrelevant because Plaintiff hadn't made that choice when Defendant made it for her.

### 3. <u>Defendant Profiting by Stealing an Asset From Plaintiff Caused an Article III Injury</u>

The SAC also alleges that the personal information on her devices had "a quantifiable market value" which Defendant stole when it secretly and illegally extracted that data and shared it with TikTok. SAC ¶ 29. "The detailed digital profile that Defendant assembled possesses a quantifiable market value, with estimates ranging from $0.10 to $0.50 for a basic consumer profile and exceeding $5.00 for a B2B prospect interested in high-value professional services." SAC ¶ 29. As the Ninth Circuit explained, "[b]ecause California law recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing. Plaintiffs allege that their browsing histories carry financial value." *In re Facebook*, 956 F.3d at 600 (identifying studies and research panels paying for browsing history). These are detailed nonconclusory factual allegations establishing that the information taken from Plaintiff has a quantified and concrete monetary value that therefore must give rise to a cognizable Article III injury. "For standing purposes, a loss of even a small amount of money is ordinarily an injury." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 767 (9th Cir. 2018) (citation omitted).

### C. Federal Courts Have Uniformly Rejected Defendant's Arguments on the Merits of the CIPA Claim

Defendant makes a hodgepodge of unrelated arguments on the merits of Plaintiff's CIPA claim which have no basis in the relevant statutory language and have been

uniformly rejected by federal courts.[3] The chorus of opinions rejecting Defendant's exact arguments was overwhelming enough for one court to conclude that "Defendant's contention is not well-taken." *Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025). Plaintiff is happy to go into further detail on each of the arguments and provide even more authorities on Defendant's arguments, but frankly after the first ten there seems to be little point beyond explaining the legal analysis conclusively demonstrating that this provision of CIPA applies to the internet.

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows: "(a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Thus, to state a claim under § 638.51, a plaintiff must allege, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. California law defines a "trap and trace device" as:

[3] *E.g.*, *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367 (C.D. Cal. July 25, 2024); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025*); Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. July 2023); *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *11 (N.D. Cal. July 18, 2025); *Deivaprakash v. Conde Nast Digital*, No. 25-CV-04021-RFL, 2025 WL 2541952, at *1 (N.D. Cal. Sept. 4, 2025); *Gabrelli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *1 (N.D. Cal. Aug. 29, 2025); *Garon v. Keleops USA Inc.*, No. 25-CV-02124-DMR, 2025 WL 2522374, at *1 (N.D. Cal. Sept. 2, 2025).

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information ["DRAS"] reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

*Id.* § 638.50(c). And § 638.50(a) instructs that the terms "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51" where the definition for "electronic communication" in § 629.51(a)(2) is: "Electronic communication" means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." There is simply no way to read the expansive language of the statutory definition of trap and trace devices and conclude that the California Legislature meant to cover telephone communications and nothing else.

**D. <u>There Are No Extraterritoriality Concerns</u>**

Defendant's final arguments involving extraterritoriality similarly lack merit. As an initial matter it is based entirely on Defendant's counsel's unsworn factual representations in its brief about the locations of its servers, none of which is in the complaint. Mot. at 29 ("the servers hosting Converse's website are not located in California." It is also based on the unsupported assertion that for extraterritoriality purpose a website is "located" wherever its servers are located. Defendant argues that "[f]or purposes of determining

where a website itself is located, courts thus look to where the servers hosting the website are physically located" and cites to the Ninth Circuit's decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, but Defendant cites to a page in the background section of the opinion and nothing on that page supports Defendant's argument. Mot. at 28 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007)). The suggestion that Defendant can evade all liability from the laws of a state in which it conducts business and causes injuries to consumers by invading their privacy merely by storing some code on a server in a different state is ludicrous, particularly because even if Defendant's assertions about server locations are true, those servers were actively communicating with Plaintiff in California.

Similar extraterritoriality arguments for Section 631 of CIPA were rejected in *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *11 (S.D. Cal. Feb. 13, 2025). There the defendant argued CIPA does not apply to extraterritorial conduct, and Plaintiff "fails to allege that the challenged conduct occurred in California." The court rejected the argument, concluding that any extraterritoriality concerns were not compelling because the plaintiff sufficiently alleged that the intercepted communications were sent from within the California. Although this concerned a different provision of CIPA, that provision had an explicit requirement for a geographic nexus to California meaning that the extraterritoriality arguments were stronger there than with Section 638.51 which the legislature chose to not expressly require such a nexus. These same concerns were also rejected by the California Supreme Court in *Kearney v. Salomon Smith Barney, Inc.*, 39

Cal. 4th 95, 104–05 (2006). There it concluded that "California clearly has an interest in protecting the privacy of telephone conversations of California residents while they are in California sufficient to permit this state, as a constitutional matter, to exercise legislative jurisdiction over such activity." *Id.*

Defendant's suggestion that Plaintiff was obligated to plead the location of Defendant's servers to avoid dismissal due to "territorial silence" is similarly absurd and has no basis in the Federal Rules of Civil Procedure. Moreover, there is no way for Plaintiff to obtain this information except through discovery, and such a requirement would make it virtually impossible to file lawsuits over internet transactions. Mot. at 28. Defendant improperly seeks to conflate extraterritoriality, choice of law, and personal jurisdiction to justify its conclusion that it can only be held accountable for its online activities in the jurisdiction where its servers are physically located. Notably, at this stage there are no facts helpful to Defendant regarding extraterritoriality, and the only relevant location known to Plaintiff is their own location during the relevant events which is already clearly alleged. FAC ¶ 4. Defendant is therefore not seeking dismissal because the cognizable facts before the Court establish there would be any extraterritorial application of California law. Defendant instead seeks dismissal because of Plaintiff's purported "territorial silence," that is, Plaintiff's failure to allege facts *disproving* extraterritoriality.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss. In the alternative, the Court should permit Plaintiff leave to amend to

add more facts should the Court find the Complaint deficient because, unless the Court rules that all trap and trace laws (including the federal version, which is identical in relevant part) cannot cause an Article III injury, it is possible that Plaintiff can amend to add even further factual details as required by the Court, just as Plaintiff submitted an entire expert report with the SAC addressing the factual deficiencies identified by the Court.

DATED: November 14, 2025 **TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorney for Plaintiff
Carol Price

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Carol Price, certifies that this brief contains 4,040 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 14, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorney for Plaintiff
Carol Price