LIVIA M. KISER (SBN 285411)
*lkiser@kslaw.com*
MICHAEL D. ROTH (SBN 217464)
*mroth@kslaw.com*
LENNETTE W. LEE (SBN 263023)
*kperigoe@kslaw.com*
SAMUEL C. CORTINA (SBN 310778)
*scortina@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

*Attorneys for Defendant*
CONVERSE INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CAROL PRICE, an individual and on behalf of all others similarly situated,

Plaintiff,

v.

CONVERSE INC., a Massachusetts company; DOES 1 through 25, inclusive,

Defendant.

Case No. 2:24-cv-08091-FLA-E

The Honorable Fernando L. Aenlle-Rocha

**DEFENDANT CONVERSE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Date: December 5, 2025
Time: 1:30 p.m.
Location: Courtroom 6B

# TABLE OF CONTENTS


I. INTRODUCTION .......... 6

II. PLAINTIFF LACKS ARTICLE III STANDING .......... 7

A. Plaintiff Fails to Rebut Converse's Factual Challenge to Standing .......... 7

B. Plaintiff Fails to Rebut Converse's Facial Challenge to Standing .......... 9

i. As a Matter of Controlling Law, Collection of Device and Browser Information Does Not Amount to a Concrete Injury .......... 9

ii. Plaintiff Has Not Suffered an Economic Injury .......... 12

iii. Future Theoretical Harms by a Non-Party Cannot Establish Article III Standing .......... 13

iv. Plaintiff's Bald Reference to the First Amendment Fails to Create a Concrete Injury .......... 13

III. PLAINTIFF FAILS TO STATE A CIPA CLAIM .......... 14

A. Plaintiff's Allegations of Extraterritorial Conduct Precludes a CIPA Claim .......... 14

B. CIPA's Trap-and-Trace Provision Does Not Apply to the Internet .......... 16

IV. PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND .......... 18

V. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 15

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ........ 8

*Bradshaw v. Lowe's*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 11

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super., Los Angeles County Sept. 09, 2024) ........ 17

*Christian Legal Soc. v. Wu*,
626 F.3d 483 (9th Cir. 2010) ........ 17

*Dalfio v. Orlansky-Wax, LLC*,
2022 WL 3083323 (S.D. Cal. Aug. 3, 2022) ........ 7

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ........ 6, 15

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) ........ 10, 12

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 11

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3rd Cir. 2019) ........ 12

*Gutierrez v. Converse, Inc.*,
2025 WL 1895315 (9th Cir. 2025) (Bybee, J., concurring) ........ 18

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal., 2020) ........ 12

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ........ 12

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994) .......... 18

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) .......... 15

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 6, 11

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super., Los Angeles County March 13, 2024) .......... 16

*Lineberry v. AddShopper, Inc.*
2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025) .......... 15

*Mount v. PulsePoint, Inc.*,
684 Fed. Appx. 32 (2d Cir. 2017) .......... 12

*Oganyan v. Biolife Plasma Services L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 11

*People v. Blair*,
25 Cal. 3d 640 (1979) .......... 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 16

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 6, 9, 10

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 11

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Cal. Super., Los Angeles County Oct. 02, 2024) .......... 17

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 8

*Savage v. Glendale Union High School, Dist. No. 205, Maricopa Cty.*,
343 F.3d 1036 (9th Cir. 2003) .......... 8

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 13

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 15

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7, 8

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 15

## I. INTRODUCTION

Defendant Converse Inc.'s motion to dismiss explained that Plaintiff's Second Amended Complaint ("SAC"), like her First Amended Complaint, should be dismissed under Rule 12(b)(1) for lack of Article III standing, as well as under Rule 12(b)(6) for failure to state a claim. Plaintiff's Opposition cannot refute these arguments, and the case should be dismissed.

*First*, Converse presented both a factual and a facial challenge to Plaintiff's Article III standing under Rule 12(b)(1). As a factual matter, discovery has confirmed that Converse collected no information in which Plaintiff has a privacy interest. Plaintiff submits no evidence to dispute that fact, which ends the inquiry. The case should be dismissed.

Should the Court go beyond Plaintiff's complete failure to confront the factual challenge, as a pleading matter, Plaintiff's SAC merely reiterates the allegations the Court already held were insufficient to plausibly allege a concrete injury under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). The only allegations Plaintiff added allege that the data collected *could* be sold for money—but not that Plaintiff was injured as a result. Plaintiff's opposition instead argues that the Court, in previously analyzing *Popa* "*sua sponte*," got its analysis wrong. But while Plaintiff relies only on pre-*Popa* cases, the vast majority of courts to apply *Popa* have done so in the exact same way. *See*, *e.g.*, *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025).

*Second*, although the Court need not reach Converse's Rule 12(b)(6) arguments, they too require dismissal. CIPA does not apply extraterritorially, *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *3 (N.D. Cal. Oct. 30, 2025), and Plaintiff does not attempt to meet her burden to allege conduct occurring in California. The plain language of CIPA's trap-and-trace provision makes clear that it does not apply to the Internet, but to the extent there was any ambiguity in that regard, the rule of lenity compels that interpretation.

Plaintiff has had the opportunity to conduct discovery and to file three iterations of her baseless claim. Her repeated inability to satisfy Article III and her failure to state a claim both dictate that the SAC should be dismissed without leave to amend.

## II. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff acknowledges that to establish standing under Article III, she must show: (1) a "concrete, particularized, and actual or imminent" injury; (2) caused by Converse's challenged conduct; (3) that could be redressed through her trap-and-trace claim against Converse. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Merely alleging a statutory violation is insufficient to satisfy Article III. *Id.* at 430-31.

Following this Court's determination that Plaintiff's FAC failed to establish standing, Plaintiff amended a third time, simply regurgitating the same theories she previously alleged—*i.e.*, that (i) the TikTok Pixel collects a visitor's device and browsing information, *see, e.g.*, SAC ¶¶ 11, 13; and (ii) TikTok is capable of digital fingerprinting from data amassed across numerous websites, *id.* ¶¶ 9-13, 17, 22-26. *Compare* ECF No. 53 (noting Plaintiff alleged that "the TikTok Software gathers data including device and browser information, geographic information, and referral tracking," and that "Defendant used this information to fingerprint the data and deanonymize Plaintiff by matching it 'with existing data TikTok has acquired and accumulated about hundreds of millions of Americans[.]") (citation omitted). As explained in Converse's Motion—which Plaintiff's Opposition fails to refute—the evidence and allegations still fail to establish Article III standing.

### *A. Plaintiff Fails to Rebut Converse's Factual Challenge to Standing*

Converse showed that regardless of whether Plaintiff pled facts sufficient to establish Article III standing, ample evidence wholly negates such jurisdictional allegations. (Mot. at 12-14, 19-20.) Converse therefore properly raised a factual Rule 12(b)(1) challenge, submitting undisputed evidence that the Court may consider. *See Dalfio v. Orlansky-Wax, LLC*, 2022 WL 3083323, at *1 (S.D. Cal. Aug. 3, 2022).

Converse's evidence—including the sworn testimony of Plaintiff and Converse—establishes that Plaintiff *did not disclose* and Converse *did not collect any of Plaintiff's personal information* through its implementation of the TikTok Pixel on the Converse website. (Mot. at 12-14.) Indeed, a year into this case and after deposing Converse, Plaintiff conceded she has no basis to believe that the TikTok Pixel collected any of her information and has not been contacted by Converse at all since her website visit. (*Id.*) Further negating any of Plaintiff's supposed "privacy" concerns, she admits that she willingly and independently provided numerous pieces of personal information—including her contact information and birth date—to TikTok when she created a public TikTok account. (*Id.*) Put simply, the evidence confirms that Plaintiff suffered no "concrete, particularized, and actual or imminent" injury that is necessary for Article III standing. *TransUnion*, 594 U.S. at 423.

Plaintiff offers no evidence at all to meet her burden to show an injury in fact. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) ("Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."). The facts confirming that Plaintiff suffered no injury in fact are thus undisputed.

Instead, Plaintiff asserts—without support—that the Court cannot consider Converse's evidence. (Opp. at 8-10). That is wrong. The Court can consider *undisputed* evidence under Rule 12(b)(1)—regardless of whether it is intertwined with the merits. *Cf. Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145 (9th Cir. 2024) ("Because the standing issue and substantive issues are so intertwined, resolution of *genuinely disputed facts* is inappropriate.") (emphasis added) (cleaned up); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (finding it is improper to make a "jurisdictional finding of *genuinely disputed* facts … when the jurisdictional issue and substantive issues are so intertwined that the question of

jurisdiction is dependent on the resolution of factual issues going to the merits of an action.") (emphasis added) (cleaned up).

Plaintiff's complete failure to rebut the overwhelming evidence confirming she suffered no injury ends the inquiry. The Court should dismiss the SAC without leave to amend.

***B. Plaintiff Fails to Rebut Converse's Facial Challenge to Standing***

Although the Court needs to go no further than the factual challenge, Plaintiff's attempts at disputing Converse's facial challenge to her standing are wholly insufficient. Plaintiff has no authority for her (incorrect) argument that this Court's straightforward application of *Popa* was incorrect. (Opp. at 11-13). Nor do her arguments—*i.e.*, that her personal information has "quantifiable market value" (*id.* at 16); that there is privacy harm "from combining lots of 'less personalized' data" (*id.* at 13); and that there is privacy harm for "forc[ing] Plaintiff to unknowingly give her personal information to TikTok" (*id.* at 15)—plausibly allege Article III injury under *Popa*.

**i. As a Matter of Controlling Law, Collection of Device and Browser Information Does Not Amount to a Concrete Injury**

As this Court already held, the Ninth Circuit's *Popa* decision compels the conclusion that allegations that the TikTok Pixel on Converse's website gathers device and browser information that is then used by TikTok to fingerprint and deanonymize Plaintiff's data "*are insufficient to establish a 'concrete injury'* as required to establish standing." (ECF No. 53 at 5 (emphasis added).) Because Plaintiff's SAC only recycles these already-rejected theories, it likewise fails to allege a concrete injury. (Mot. at 15-19.) Under *Popa*, there is no generalized right to privacy in visiting Converse's website, and Converse did not collect or disclose any of Plaintiff's "embarrassing, invasive, or otherwise private information." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Converse's alleged conduct did not cause Plaintiff "to experience any kind of harm that is remotely similar to the

'highly offensive' interference or disclosures that were actionable at common law." *Id.*

Notwithstanding the direct applicability of *Popa* to this case, Plaintiff contends that the alleged invasion of privacy is "exactly" the same as in *In re Facebook*, and that this Court erred in applying *Popa* and *TransUnion* to dismiss the FAC. (Opp. at 11-12.) She is wrong.

As an initial matter, as this Court previously observed, the Ninth Circuit noted in *Popa* that *In re Facebook* predated *TransUnion* and "the question of concreteness under *TransUnion* was not clearly presented in that case." 153 F.4th 793. The Ninth Circuit explained that the court "might analyze [the statute at issue] differently today, especially after the Supreme Court's decision in *TransUnion*." *Id.* at 794. The Ninth Circuit then distinguished *In re Facebook*, in the same ways that this case is distinguishable. Unlike here and in *Popa*, the platform in *In re Facebook* allegedly installed a plug-in on user's browsers that followed users long after they logged off of Facebook; Facebook also correlated users' full browsing history with their Facebook profiles that included their personal employment history and political and religious affiliations; and Facebook created a "cradle-to-grave profile" of the users. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598-99 (9th Cir. 2020). As *Popa* noted, Facebook's pervasive tracking "occurred 'no matter how sensitive' or personal users' browsing histories were." *Id.* at 599. Plaintiff makes no effort to explain how her allegations that Converse's use of the TikTok Pixel captures certain (non-personal) device and browser-level information, SAC ¶ 10— information in which Plaintiff has no protected privacy interests—are remotely similar to those in *In re Facebook.* They are not. Indeed, the device and browser-level data allegedly collected by Converse's implementation of the TikTok Pixel is even *narrower* than the type of data *Popa* found insufficient to demonstrate a concrete injury. Mot. at 16-17.

Since *Popa* issued, courts repeatedly have distinguished *In re Facebook* on the

same grounds, dismissing plaintiffs' trap-and-trace claims for lack of standing. *See Bradshaw v. Lowe's*, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (holding there was no concrete injury from defendants' alleged installation and use of the TikTok Pixel on their own websites and rejecting plaintiffs' reliance on *In re Facebook* because defendants "only collect[ed] information from Defendants' website, … not other websites" and only collected metadata and browsing information); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) ("Rodriguez lacks a privacy interest in the data at issue," which included "IP address, … operating system name, operating system version number, browser name, browser version number, bowser language, screen resolution, geolocation data, email address, mobile ad IDs, embedded social media identities, customer and/or loyalty IDs, cookies and device signature – as well as the connections between them.") (quotation marks omitted); *Oganyan v. Biolife Plasma Services L.P.,* 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025) ("Plaintiffs have failed to establish that defendants' one-time collection and dissemination of plaintiffs' IP and email addresses, through the third-party trackers, sufficiently impacts plaintiffs' privacy interests to give rise to a concrete injury."); *Khamooshi*, 2025 WL 2822879, at *3 ("*Popa* controls the analysis in this case"). As in *Popa*, Plaintiff identifies 'no embarrassing, invasive, or otherwise private information collected.' Plaintiffs' allegations regarding device type, browser type, and 'device fingerprints' are even less specific that the 30 different categories of information alleged in *Popa¸* which also included the device type, browser type, and metadata akin to fingerprinting.") (citation omitted).

Not only does Plaintiff ignore this overwhelming authority, but *all* of the cases on which Plaintiff relies pre-date *Popa.*[1]

---

[1] Moreover, they allege different privacy claims on materially different facts. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 568-70 (N.D. Cal. 2025) (involving the

As it did with the First Amended Complaint, pursuant to *Popa*, the Court should dismiss the SAC for lack of Article III injury. (*See* ECF No. 53 at 5 & n.3).

**ii. Plaintiff Has Not Suffered an Economic Injury**

Plaintiff has not successfully pled an Article III injury based on the conclusory allegation that Converse "stole" a "detailed digital profile … that possesses a quantifiable market value." (SAC ¶ 38.) As set forth in the Motion, Plaintiff's cursory theory fails because she (i) does not identify what particular information or data forms the "detailed digital profile," as she must under *Twombly* and *Iqbal*; and (ii) does not plead that she lost any personal financial interest in that data. (Mot. at 18-19.) Plaintiff fails to address, much less refute, either point.

Instead, Plaintiff again resorts to *In re Facebook*, arguing that the plaintiffs there had Article III standing because they alleged their entitlement to unjustly earned profits from the defendant's wrongful conduct. 956 F.3d at 599-600. That holding has no relevance here. Plaintiff does not assert the causes of action at issue in the analysis, all of which permitted disgorgement of profits as a remedy, nor does she plead any facts that support a claim that Converse unjustly profited from her single visit to the Converse website (it did not). *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1191 (N.D. Cal., 2020) ("Article III standing for this claim is also undercut by the scarcity of facts plausibly demonstrating how Facebook's profits were unjustly

---

collection of women's health information, such as the timing of menstrual cycles, preferred birth control methods, and details about users' sexual activity); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) (wiretapping claim involving the collection of communications and "personal information" such as "search terms entered, and purchase behavior"); *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 320, 325 (3rd Cir. 2019) (pre-*TransUnion* case involving installation of cookies that "track[] an internet user's data (think following the trail of cookie crumbs) … in violation of the third party's promises not to do so"); *Mount v. PulsePoint, Inc.*, 684 Fed. Appx. 32, 34 (2d Cir. 2017) (pre-*TransUnion* case involving installation of "tracking cookies on plaintiffs' computers" in "circumvention of web-browser privacy features").

earned, [citation], given that the only factual allegations are that Facebook collected, stored, and used plaintiffs' IP address information, as to which they had no legally protected privacy interest.").

Plaintiff's cursory allusion to economic injury falls woefully short of plausibly alleging Article III standing.

**iii. Future Theoretical Harms by a Non-Party Cannot Establish Article III Standing**

Plaintiff next relies on the dissent in *Smith v. Maryland*, 442 U.S. 735 (1979)—a case that predated the existence of the Internet by several decades—to argue that "privacy harms from combining lots of 'less personalized' data" suffices to establish an Article III injury. (Opp. at 13.) Converse is unaware of any authority that suggests, much less stands for such a principle—especially in light of *Popa*'s controlling holding—and Plaintiff identifies none.

Regardless, the argument would still fall short of plausibly alleging an Article III injury here. The supposed "combining" of data to create a digital "fingerprint" that Plaintiff alleges would be performed by *TikTok*—a nonparty—not Converse. (SAC ¶¶ 9-13.) And nowhere does the SAC allege that *TikTok* created a fingerprint for *Plaintiff*. Plaintiff merely speculates that TikTok *can* create a digital fingerprint *if* an individual visits enough different websites that each implement the TikTok Pixel. (*See id*. at ¶¶ 9-13, 17, 22-26.) Furthermore, even if the device-level data she alleges Converse collected were sufficient for concrete injury, it would not satisfy Article III causation or be redressable by Converse. (Mot. at 17-18.)

Plaintiff's wholly unsupported theory does not pertain to her actual experience on the Converse website and is irrelevant to establishing an actual injury necessary to confer Article III standing to sue Converse.

**iv. Plaintiff's Bald Reference to the First Amendment Fails to Create a Concrete Injury**

Even more absurd is Plaintiff's assertion that "Defendant caused a separate

Article III injury" because it "took away Plaintiff's right to choose for herself whether to do business or share her personal information with TikTok." (Opp. at 15.) Plaintiff's cursory reference to the First Amendment misses the mark badly, as Plaintiff does not even explain its relevance to Article III standing—a distinctly separate provision of the Constitution. Plaintiff points to *no* authority from any jurisdiction recognizing this manufactured "injury."

In any event, nowhere does the SAC allege that Plaintiff was injured because she was deprived of any subjective right to do business and share information with TikTok. Nor *could* Plaintiff make any such allegations without violating Rule 11; her sworn testimony is that she freely chose to share her personal information with TikTok shortly after she visited the Converse website. (Mot. at 20.)

Plaintiff's unrecognized, unpled, and counterfactual theory of "injury" arising from a supposed deprivation of a right to do business with TikTok should be swiftly rejected. Plaintiff lacks standing and the case should be dismissed.

## III. PLAINTIFF FAILS TO STATE A CIPA CLAIM

Plaintiff's CIPA claim also fails as a matter of law because (i) the SAC does not and cannot allege that Converse's allegedly violative conduct occurred in California; and (ii) CIPA's trap-and-trace prohibition does not apply to the Internet. (Mot. at 20-27.) The SAC must be dismissed without leave to amend.

### *A. Plaintiff's Allegations of Extraterritorial Conduct Precludes a CIPA Claim*

To state a claim under CIPA's trap-and-trace provision, Plaintiff had to allege that Converse's alleged wrongful conduct—*i.e.*, its installation or use of a trap-and-trace device on its own website, SAC ¶¶ 8, 10-16, 34(a)—took place in California. (Mot. at 24-27.) There are no such allegations in the SAC and no such argument in her Opposition. Plaintiff's continued silence on a critical element of her CIPA claim requires dismissal.

Multiple courts have dismissed CIPA claims on this very basis. In *DellaSala*

*v. Samba TV, Inc.*, the court found that CIPA does not apply extraterritorially because section 630 "contains language demonstrating the legislature's intent for the statute[] not to apply outside of California." 2025 WL 3034069, at *3. The court dismissed plaintiffs' CIPA claims because the allegedly violative interception of the plaintiffs' data occurred outside of California. *Id.* Likewise, in *Lineberry v. AddShopper, Inc.*, the court dismissed the CIPA claim because the "complaint contain[ed] no allegations that any of the unlawful conduct occurred in California." 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025). The same is true of Plaintiff's SAC, which also fails to allege that Converse's alleged conduct occurred in California.

Unable to credibly make this allegation, Plaintiff offers meritless rationales for her failure to do so.

*First*, neither *Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 898 (S.D. Cal. 2025), nor *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 104-05 (2006), addressed CIPA's trap-and-trace provision, much less held that it applies to extraterritorial conduct. Rather, they involved claims for wiretapping under CIPA section 631 (*Zarif*) and eavesdropping under section 632 (*Kearney*). The courts unsurprisingly observed that CIPA's wiretapping and eavesdropping prohibitions expressly "protect against the secret recording of any confidential communication that is sent from or received at any place within California." *Kearney*, 39 Cal. 4th at 119; *Zarif*, 789 F. Supp. 3d at 898. That irrelevant observation does nothing to establish that CIPA's wholly separate trap-and-trace provision applies extraterritorially.

*Second*, Plaintiff's unsupported contention that it is not her burden to "*disprove* extraterritoriality" is incorrect. (Opp. at 20.) It is axiomatic that Plaintiff bears the burden of alleging facts sufficient to state a viable claim—including the statute's applicability to the defendant's conduct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (pleadings must "provide the grounds of . . . entitlement to relief"). And it is not "enough that the complaint is 'factually neutral''; it must be 'factually suggestive.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting

*Twombly,* 550 U.S. at 557 n.5). Plaintiff's continued silence on this indispensable component of her claim mandates dismissal. (*See* Mot. at 28.)

*Third*, Plaintiff objects that Converse's extraterritoriality argument is based on "counsel's unsworn factual representations about the location of its servers, none of which is in the complaint." (Opp. at 18.) But this is a red herring. The burden is Plaintiff's—not Converse's—to plausibly allege that Converse's unlawful conduct occurred within California. Moreover, Converse's explanation that its website and host servers are not located in California (which the evidence in this case has indisputably proven) is entirely consistent with Plaintiff's admission that Converse is a Massachusetts-based company. (SAC ¶ 5.)

*Fourth*, Plaintiff's mere disagreement with the principle that a website's location is determined by the location of the host servers is negated by controlling law. *Perfect 10, Inc. v. Amazon.com, Inc.* applied this very "server test" to determine the location of alleged copyright infringement for jurisdictional purposes. 508 F.3d 1146, 1159 (9th Cir. 2007). In any event, Plaintiff offers no alternative standards for determining a website's location. Under any conceivable test—the location of the server, Converse's principal place of business, or Converse's place of incorporation—none of the allegedly unlawful conduct occurred in California.

Because Plaintiff fails to meet her burden of alleging that Converse's installation and use of the TikTok Pixel on its website occurred in California, her claim must be dismissed.

***B. CIPA's Trap-and-Trace Provision Does Not Apply to the Internet***

Plaintiff's allegations also fail to state a claim because the statute's plain language, legislative history, and courts' interpretation of identical language in CIPA's federal counterpart make clear that it only applies to *telephone* surveillance, not Internet or website activities. (Mot. at 20-24.) To find otherwise—*i.e.*, to expand the trap-and-trace provision to criminalize the identification of IP addresses—would outlaw operation of the Internet at large, *Licea v. Hickory Farms LLC*, 2024 WL

1698147, at *4 (Cal. Super., Los Angeles County March 13, 2024) ("[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability"), and would create the absurdity of criminalizing the use of trap-and-trace devices on the Internet with no available avenue for law enforcement to obtain a court order. (Mot. at 20-24); *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super., Los Angeles County Sept. 09, 2024) ("The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them."); *Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Super., Los Angeles County Oct. 02, 2024) (dismissing trap-and-trace claim applied to Internet communications).

Instead of responding to Converse's arguments or authority, Plaintiff relies on section 638.50(a)'s definition of "electronic communication," to conclude "[t]here is simply no way to read the expansive language of the statutory definition of trap-and-trace devices and conclude that the California Legislature meant to cover telephone communications and nothing else." (Opp. at 18.) But the term "electronic communication" merely describes the *type* of signals that may be sent to a trap-and-trace device (*i.e.*, those sent over a wire or electronically), Penal Code § 629.51(a)(2); it does not modify the definition of what constitutes a trap-and-trace device.

Similarly lacking in analysis is Plaintiff's reliance on a string cite of district court cases in a footnote. (Opp. at n.3.) As a threshold matter, the Court need not perform Plaintiff's work for her and hunt for unarticulated arguments within these cases. *See, e.g.*, *Christian Legal Soc. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs."). In any event, these cases—none of which control—only prove Converse's argument. As the district court in *Doe v. Eating Recovery Center LLC* explained:

> The state of affairs with CIPA is untenable. Courts are issuing conflicting rulings, and companies have no way of telling whether their

> online business activities will subject them to liability. . . . But CIPA imposes criminal liability and punitive civil penalties. Under these circumstances, it is imperative for the Legislature to bring CIPA into the modern age and to speak clearly about how the kinds of activities at issue in this case should be treated. Until that happens, courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation.

-- F. Supp. 3d. --, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025); *cf Gutierrez v. Converse, Inc.*, 2025 WL 1895315, at *1 (9th Cir. 2025) (Bybee, J., concurring) (explaining in another CIPA case brought by Plaintiff's counsel against Converse that a different provision of CIPA "does not apply to internet communications"). That reasoning, though made in the context of a wiretapping claim, should apply equally—if not more forcefully—to the trap-and-trace provision, which has historically and generally been understood to apply to the collection of telephone numbers. *E.g.*, *People v. Blair*, 25 Cal. 3d 640, 654 n.11 (1979) (describing a pen register as "a mechanical device which records the numbers dialed from a telephone").

The Court should not expand the application of CIPA, particularly here, where Plaintiff seeks to criminalize a ubiquitous online practice that caused no injury.

## IV. PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Plaintiff has now attempted *three times* to articulate Article III standing and state a viable claim. After nearly a year to conduct discovery, she has failed on every attempt—an unsurprising outcome given that: (i) Converse collected no personal information of hers through the TikTok Pixel; (ii) Converse's alleged conduct occurred outside of California; and (iii) CIPA's trap-and-trace provision does not apply to the Internet. Giving Plaintiff a fourth bite at the apple would be wasteful and futile. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).

## V. CONCLUSION

For the foregoing reasons, Converse respectfully requests that this Court grant its motion without leave to amend and enter judgment in Converse's favor.

Dated: November 21, 2025

Respectfully submitted,

KING & SPALDING LLP

By: */s/ Michael D. Roth*
LIVIA KISER
MICHAEL D. ROTH
LENNETTE W. LEE
SAMUEL C. CORTINA

Attorneys for Defendant CONVERSE INC.

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Converse Inc., certifies that this brief contains 4,120 words, which complies with the word limit of L.R. 11-6.2.

Dated: November 21, 2025

KING & SPALDING LLP

By: */s/ Michael D. Roth*
MICHAEL D. ROTH

Attorneys for Defendant CONVERSE INC.